**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | | |
|---|---|---|
| TIMOTHY M. BROWDER, | ) | |
| | ) | 1:05cv10464 |
| Plaintiff, | ) | |
| | ) | Judge Saris |
| v. | ) | |
| | ) | |
| NATIONAL FINANCIAL SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION**

Plaintiff Timothy Browder has requested that this Court enter an order

determining that Plaintiff's Fair Debt Collection Practices Act ("FDCPA") claim may proceed on

a class basis. This memorandum is submitted in support of that motion.

I.    **NATURE OF THE CASE**

This case concerns a standard form collection letter (<u>Exhibit A</u>) that National

Financial Systems, Inc. ("NFS") uses to collect debts.  <u>Exhibit A</u> states on the reverse side,  "any

indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to

Internal Revenue Code 6050(p) and related federal law."

In fact, NFS does not report the existence of indebtedness over $600

to the IRS as taxable income. (Responses of Defendant National Financial System, Inc. to

Plaintiff's Requests for Admissions, Response to Request No. 15 [<u>Exhibit B</u>])  In short, the

representation that "any indebtedness of $600.00 or more may be reported to the IRS as taxable

income" is false.

II.    **THE FAIR DEBT COLLECTION PRACTICES ACT**

The FDCPA states that its purpose, in part, is "to eliminate abusive debt

collection practices by debt collectors."  15 U.S.C. §1692(e).  It is designed to protect

consumers from unscrupulous collectors, whether or not there is a valid debt.  <u>Mace v. Van Ru</u>

1

Credit Corp., 109 F.3d 338 (7th Cir. 1997); Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998);

Baker v. G.C. Services Corp., 677 F.2d 775, 777 (9th Cir. 1982); McCartney v. First City Bank,

970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable

collection methods;  conduct which harasses, oppresses or abuses any debtor; and any false,

deceptive or misleading statements, in connection with the collection of a debt; it also requires

debt collectors to give debtors certain information.  15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

> In enacting the FDCPA, Congress recognized the  --
>
> > universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule [sic].  .  .  .   [T]he vast majority of consumers who obtain credit fully intend to repay their debts.  When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.

S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), reprinted in 1977 USCCAN 1695, 1697.

> The Seventh Circuit has held that whether a debt collector's conduct violates the

FDCPA should be judged from the standpoint of an "unsophisticated consumer." Avila v.

Rubin, 84 F.3d 222 (7th Cir. 1996); Gammon v. GC Services, LP, 27 F.3d 1254 (7th Cir. 1994).

The standard is an objective one  --  whether the plaintiff or any class member was misled is not

an element of a cause of action.  "The question is not whether these plaintiffs were deceived or

misled, but rather whether an unsophisticated consumer would have been misled." Beattie v.

D.M. Collections, Inc., 754 F.Supp. 383, 392 (D.Del. 1991).

> Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§1601 et

seq., the FDCPA should be liberally construed in favor of the consumer to effectuate its

purposes.  Cirkot v. Diversified Fin. Services, Inc., 839 F.Supp. 941 (D. Conn. 1993).

> > The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation.  Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

N.C. Freed Co. v. Board of Governors, 473 F.2d 1210, 1214 (2d Cir. 1973).

> Statutory damages are recoverable for violations, whether or not the consumer

proves actual damages.  Bartlett v. Heibl, 128 F.3d 497, 499  (7th Cir.1997); Baker, 677 F.2d at 780-1; Woolfolk v. Van Ru Credit Corp., 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); Cacace v. Lucas, 775 F. Supp. 502 (D. Conn. 1990); Riveria v. MAB Collections, Inc., 682 F. Supp. 174, 177 (W.D.N.Y. 1988); Kuhn v. Account Control Technol., 865 F. Supp. 1443, 1450 (D.Nev. 1994); In re Scrimpsher, 17 B.R. 999, 1016-7 (Bankr.N.D.N.Y. 1982); In re Littles, 90 B.R. 669, 680 (Bankr. E.D.Pa. 1988), aff'd as modified sub nom. Crossley v. Lieberman, 90 B.R. 682 (E.D.Pa. 1988), aff'd, 868 F.2d 566 (3d Cir. 1989).

The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies expressed therein.  Crabill v. Trans Union, L.L.C., 259 F.3d 662, 666 (7th Cir. 2001);  Baker, 677 F.2d at 780; Whatley v. Universal Collection Bureau, 525 F. Supp. 1204, 1206 (N.D.Ga. 1981).  "Congress intended the Act to be enforced primarily by consumers . . . ." FTC v. Shaffner, 626 F.2d 32, 35 (7th Cir. 1980).  "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly comprehends them . . . ." Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir. 1989).

Plaintiff need not prove intent, bad faith or negligence in an FDCPA case.  The "FDCPA is a strict liability statute," and "proof of one violation is sufficient to support summary judgment for the plaintiff." Cacace v. Lucas, 775 F. Supp. at 505. Accord, Turner v. J.V.D.B. & Associates, Inc., 330 F.3d 991, 995  (7th Cir. 2003); Gearing v. Check Brokerage Corp., 233 F.3d 469, 472 (7th Cir.2000).

## III.    STANDARD FOR CLASS CERTIFICATION

Class actions are essential to enforce laws protecting consumers.  As the court stated in Eshaghi v. Hanley Dawson Cadillac Co., 214 Ill.App.3d 995, 574 N.E.2d 760 (1st Dist. 1991):

> In a large and impersonal society, class actions are often the last barricade of consumer protection.  . . . To consumerists, the consumer class action is an

3

inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action -- private suits or governmental actions -- have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer. (574 N.E.2d at 764, 766)

Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. §§1692k(a) and (b) for FDCPA class action cases. As a result, numerous FDCPA class actions have been certified. Shea v. Codilis, 99 C 57, 2000 WL 336537, 2000 U.S. Dist. LEXIS 4131 (N.D. Ill. Mar. 27, 2000); Roe v. Publishers Clearing House, 98 C 330, 1999 WL 966977, 1999 U.S. Dist. LEXIS 16249 (N.D. Ill. Sept. 30, 1999); Vines v. Sands, 188 F.R.D. 302 (N.D. Ill. 1999); Nielsen v. Dickerson, 98 C 5909, 1999 WL 350694, 1999 U.S. Dist. LEXIS 8334 (N.D. Ill. May 19, 1999); Sledge v. Sands, 182 F.R.D. 255 (N.D. Ill. 1998); Shaver v. Trauner, C.A. 97-1309, 1998 U.S. Dist. LEXIS 19648 (C.D. Ill. July 31, 1998); Davis v. Suran, 98 C 656, 1998 WL 474105, 1998 U.S. Dist. LEXIS 12233 (N.D. Ill. July 31, 1998); Francisco v. Doctors & Merchants Credit Service, Inc., 98 C 716, 1998 WL 474107, 1998 U.S. Dist. LEXIS 12234 (N.D. Ill., July 29, 1998);Keele v. Wexler & Wexler, 95 C 3483, 1996 WL 124452, 1996 U.S. Dist. LEXIS 3253 (N.D. Ill., March 18, 1996), aff'd, 149 F.3d 589 (7th Cir. 1998); Wells v. McDonough, 97 C 3288, 1998 WL 160876, 1998 U.S. Dist. LEXIS 4441 (N.D. Ill. Mar. 23, 1998); Miller v. Wexler & Wexler, 97 C 6593, 1998 WL 60798, 1998 U.S. Dist. LEXIS 1382 (N.D. Ill. Feb. 5, 1998); Wilborn v. Dun & Bradstreet, 180 F.R.D. 347 (N.D. Ill. 1998); Arango v. GC Services LP, 97 C 7912, 1998 WL 325257, 1998 U.S. Dist. LEXIS 9124 (N.D. Ill. 1998) (misleading collection letters); Avila v Van Ru Credit Corp.,94 C 3234, 1995 WL 683775, 1995 U.S. Dist. LEXIS 461 (N.D. Ill. 1995), aff'd, Avila v. Rubin, supra, 84 F.3d 222; Carr v. Trans Union Corp., C.A. 94-22, 1995 WL 20865, 1995 U.S. Dist. LEXIS 567 (E.D. Pa. 1995) (FDCPA class certified regarding defendant Trans Union's transmission of misleading collection notices to consumers); Colbert v. Trans

4

Union Corp., C.A. 93-6106, 1995 WL 20821, 1995 U.S. Dist. LEXIS 578 (E.D. Pa. 1995) (same); Gammon v. GC Services, L.P., 162 F.R.D. 313 (N.D. Ill. 1995) (similar); Zanni v. Lippold, 119 F.R.D. 32, 35 (C.D. Ill. 1988); West v. Costen, 558 F. Supp. 564, 572-573 (W.D. Va. 1983) (FDCPA class certified regarding alleged failure to provide required "validation" notices and addition of unauthorized fees); Cheqnet Systems, Inc. v. Montgomery, 322 Ark. 742, 911 S.W.2d 956 (1995) (class certified in FDCPA action challenging bad check charges); Brewer v. Friedman, 152 F.R.D. 142 (N.D. Ill. 1993) (FDCPA class certified regarding transmission of misleading collection demands to consumers), earlier opinion, 833 F. Supp. 697 (N.D. Ill. 1993); Duran v. Credit Bureau of Yuma, Inc., 93 F.R.D. 607 (D. Ariz. 1982) (class certified in action complaining of unauthorized charges).

## IV.    THE PROPOSED CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION

### A.    Rule 23(a)(1)  --  Numerosity

Fed.R.Civ.P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  "When the class is large, numbers alone are dispositive . . . ." Riordan v. Smith Barney, 113 F.R.D. 60, 62 (N.D.Ill.1986).  Where the class numbers at least 40, joinder is generally considered impracticable.  Cypress v. Newport News General & Nonsectarian Hosp. Ass'n, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); Swanson v. American Consumer Industries, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 sufficient); Riordan, 113 F.R.D. 60 (10-29 sufficient); Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452, 463 (E.D.Pa. 1968) (25 sufficient); Sala v. National R. Pass. Corp., 120 F.R.D. 494, 497 (E.D.Pa. 1988) (40-50 sufficient); Scholes v. Stone, McGuire & Benjamin, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (about 70).

In this case, there at least 2,000 class members.  (Supplemental Response to Interrogatory 8 from Plaintiff's First Discovery Requests, [Exhibit C]) Clearly, the numerosity requirement is met.

**B.    Rule 23(a)(2)  --  Commonality; and
<u>Rule 23(b)(3) --  Common Questions of Law or Fact Predominate</u>**

Fed.R.Civ.P. 23(a)(2) requires that there be a common question of law or fact.
Rule 23(b)(3) requires that the questions of law or fact common to all members of the class
predominate over questions pertaining to individual members.

These requirements are normally satisfied when there is an essential common
factual link between all class members and the defendant for which the law provides a remedy.
<u>Halverson v. Convenient Food Mart, Inc.</u>, 69 F.R.D. 331 (N.D. Ill. 1974).  Where a question of
law involves "standardized conduct of the defendants toward members of the proposed class, a
common nucleus of operative facts is typically presented, and the commonality requirement . . .
is usually met." <u>Franklin v. City of Chicago</u>, 102 F.R.D. 944, 949 (N.D.Ill. 1984); <u>Patrykus v.
Gomilla</u>, 121 F.R.D. 357, 361 (N.D.Ill. 1988).   The authorities hold that cases dealing with the
legality of standardized  conduct are generally appropriate for resolution by means of a class
action because the document or conduct is the focal point of the analysis.  <u>Halverson</u>, 69 F.R.D.
331; <u>Haroco v. American Nat'l Bank</u>, 121 F.R.D. 664, 669 (N.D. Ill. 1988) (improper
computation of interest); <u>Kleiner v. First Nat'l Bank</u>, 97 F.R.D. 683 (N.D.Ga. 1983) (same);
<u>Heastie</u>, 125 F.R.D. 669  (execution of home improvement financing documents in sequence that
evaded consumers' rescission rights).  This is true even though the nature and amount of
damages may differ among the members of the class.  <u>Id.</u>

In this case, the "common nucleus of operative fact," <u>Halverson</u>, 69 F.R.D. at
335, is that NFS' sent standard form letters. The dispositive issue -- indeed, the <u>only</u> issue -- is
whether the letters are false or misleading, given the content of the letters and the fact that NFS
does not report indebtedness of $600 or more to the IRS. (Responses of Defendant National
Financial System, Inc. to  Plaintiff's Requests for Admissions, Response to Request No. 15
[<u>Exhibit B</u>])

The only individual issue is the identification of the consumers who were sent the
letters.  Since NFS was able to prove a count of class members, they are obviously identifiable.

6

Since only statutory damages are sought, damages issues are common to the class.

C.    **Rule 23(a)(3) -- Typicality**

The rule requires that the claims of the named plaintiff be typical of the claims of the class:

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.

De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).

In the instant case, typicality is inherent in the class definition. By definition, each of the class members has been subjected to the same practice as the named plaintiff: all were sent the same letters stating that "any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law." (Exhibit A)

D.    **Rule 23(a)(4) -- Adequacy of Representation**

The rule also requires that the named plaintiff provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992); accord, Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975); In re Alcoholic Beverages Litigation, 95 F.R.D. 321.

Plaintiff understands the obligations of a class representative, and has retained experienced counsel, as is indicated by Exhibit D, which sets forth counsel's qualifications.

The second relevant consideration under Rule 23(a)(4) is whether the interests of the named plaintiff are coincident with the general interests of the class. Here, both plaintiff and the class members seek money damages as the result of NFS' unlawful collection letters. Given the identity of claims between plaintiff and the class members, there is no potential for

conflicting interests in this action.  There is no antagonism between the interests of the named

plaintiff and those of the class.

      **E.**      **Rule 23(b)(3)  --  Class Action Is Superior to Other Available Methods of
Resolving This Controversy**

       Efficiency is the primary focus in determining whether the class action is the

superior method for resolving the controversy presented.  Eovaldi v. First Nat'l Bank, 57 F.R.D.

545 (N.D. Ill. 1972).  The Court is required to determine the best available method for resolving

the controversy in keeping with judicial integrity, convenience, and economy.  Scholes, 143

F.R.D. at 189; Hurwitz v. R.B. Jones Corp., 76 F.R.D. 149 (W.D.Mo. 1977).  It is proper for a

court, in deciding the "best" available method, to consider the ". . . inability of the poor or

uninformed to enforce their rights, and the improbability that large numbers of class members

would possess the initiative to litigate individually."  Haynes v. Logan Furniture Mart, Inc., 503

F.2d 1161, 1165 (7th Cir. 1974).

       In this case there is no better method available for the adjudication of the claims

which might be brought by each individual debtor.  The vast majority of debtors are undoubtedly

unaware that their rights are being violated.  In addition, persons from whom NFS is attempting

to collect allegedly delinquent debts are, by definition, unlikely to be able to pay to retain

counsel to protect their rights on an individual basis.

       The fact that there are large numbers of class members "is no argument at all"

against certification.  Carnegie v. Household Int'l, Inc., 376 F.3d 656, 660-61 (7th Cir.  2004).

"The more claimants there are, the more likely a class action is to yield substantial economies in

litigation.  It would hardly be an improvement to have in lieu of this single class action 17

million suits each seeking damages of $15 to $30. . . . The realistic alternative to a class action is

not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for

$30.  But a class action has to be unwieldy indeed before it can be pronounced an inferior

alternative  –  no matter how massive the fraud or other wrongdoing that will go unpunished if

class treatment is denied  – to no litigation at all."  Id.

8

The special efficacy of the consumer class action has been noted by the courts and

is applicable to this case:

> A class action permits a large group of claimants to have their claims adjudicated
> in a single lawsuit.  This is particularly important where, as here, a large number
> of small and medium sized claimants may be involved.  In light of the awesome
> costs of discovery and trial, many of them would not be able to secure relief if
> class certification were denied . . . .

In re Folding Carton Antitrust Litigation, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted).

Another court noted:

> Given the relatively small amount recoverable by each potential litigant, it is
> unlikely that, absent the class action mechanism, any one individual would pursue
> his claim, or even be able to retain an attorney willing to bring the action.  As
> Professors Wright, Miller and Kane have discussed, in analyzing consumer
> protection class actions such as the instant one, 'typically the individual claims are
> for small amounts, which means that the injured parties would not be able to bear
> the significant litigation expenses involved in suing a large corporation on an
> individual basis.  These financial barriers may be overcome by permitting the suit
> to be brought by one or more consumers on behalf of others who are similarly
> situated.'  7B Wright et al., §1778, at 59; see e.g., Phillips Petroleum Co. v.
> Shutts, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiff to
> pool claims which would be uneconomical to litigate individually.')  The public
> interest in seeing that the rights of consumers are vindicated favors the disposition
> of the instant claims in a class action form.

Lake v. First Nationwide Bank, 156 F.R.D. 615, 628-629 (E.D.Pa 1994).

Class certification will provide an efficient and appropriate resolution of the

controversy.  Zanni, 119 F.R.D. 32.

## V.  CONCLUSION

The proposed class meets the requirements of Rules 23(a) and (b)(3).  Plaintiff

respectfully requests that this Court certify this action as a class action.

Respectfully submitted,


s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

10

## CERTIFICATE OF SERVICE

I, Daniel A Edelman, hereby certify that on February 14 , 2006, a copy of the foregoing **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Steven S. Broadley
sbroadley@pbl.com
POSTERNAK, BLANKSTEIN & LUND, LLP

Albert E. Fowerbaugh, Jr., Esquire
afowerbaugh@lordbissell.com
Michael G. Salemi, Esquire
msalemi@lordbissell.com
LORD, BISSEL & BROOK LLP

s/ Daniel A. Edelman
Daniel A. Edelman

T:\12528\Pleading\Our Memo in Support Class Cert_Pleading.wp

# EXHIBIT A

*FROM:*
600 W JOHN ST
P.O. BOX 9041
HICKSVILLE NY 11802-9041          3 3 69
                                  229698

Return Service Requested

 47890799-3-6M

||||||,,||,,|,||,,|,||,,|,||,,,,||,||,,|,||,,,,||,,||,,|,||
***************AUTO**MIXED AADC 117
BROWDER, TIMOTHY M
163 GERRY RD
CHESTNUT HILL MA 02467-3185



NATIONAL
FINANCIAL
SYSTEMS, INC.

5230 WASHINGTON STREET, WEST ROXBURY, MA 02132
Phone: (800) 568-2733/(516) 932-1400    Fax: (516) 932-8828
Date: JULY 9, 2004
AMOUNT DUE: $9731.63

||||||,||,||,,||,||,|,||,|,|,|| 47890799-3-6M
|,,||,,,||,,||,,|,|,,,,||,,,|,||,,,|,|,||,|,|,,||,||
NATIONAL FINANCIAL SYSTEMS
600 W JOHN ST
P.O. BOX 9041
HICKSVILLE NY 11802-9041

**Please detach and return with payment.**

THIS ACCOUNT HAS BEEN PLACED WITH OUR OFFICE FOR THE PURPOSE OF COLLECTING THE AMOUNT
LISTED BELOW.

UNLESS YOU NOTIFY THIS OFFICE WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE
THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THE DEBT IS
VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30 DAYS FROM RECEIVING THIS NOTICE,
THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGMENT AND MAIL
YOU A COPY OF SUCH JUDGMENT OR VERIFICATION. IF YOU REQUEST THIS OFFICE IN WRITING WITHIN
30 DAYS AFTER RECEIVING THIS NOTICE, THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND
ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

IF YOU WISH TO DISCUSS THIS DEMAND FOR PAYMENT.

NOTICE OF IMPORTANT RIGHTS
YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING
YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE
VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST
POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST YOU MAY TERMINATE THIS
REQUEST BY WRITING THE COLLECTION AGENCY.

*NATIONAL FINANCIAL SYSTEMS, INC. 600 W JOHN ST, P.O. BOX 9046 / HICKSVILLE, NY 11801-1040*
5230 WASHINGTON STREET, WEST ROXBURY, MA 02132
CALL TOLL FREE 1 (800) 411-1332
MON THRU THUR 8:00AM TO 9:00PM/FRI 8:00AM TO 5:00PM/SAT 8:00AM TO NOON EST
**THIS IS A DEBT COLLECTION AGENCY**
*PLEASE SEE OTHER SIDE FOR IMPORTANT INFORMATION*
**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.**

7/9/04

FOR: BANK NNBF

BP    DER, TIMOTHY M
16.    RRY RD
CHESTNUT HILL MA 02467-3185

Re: YOUR ACCOUNT WITH OUR CLIENT:
CITICORP MASTERCARD
ACCT# :5424180377946972
PRINCIPAL :$9731.63

CHARGES :$.00
AMOUNT DUE :$9731.63

NFS01
229698

To Residents in:

COLORADO:
FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE
WWW.AGO.STAT.CO.US/CAB.HTM.

MINNESOTA:
This collection agency is licensed by the Minnesota Department of Commerce.

NEW YORK CITY:
New York City Department of Consumer Affairs license number 0808844.

NORTH CAROLINA:
North Carolina collection agency permit number 3254.

THIS INFORMATION IS NOT INTENDED AS LEGAL ADVICE AND SHOULD NOT BE USED TO REPLACE THE
ADVISE OF YOUR OWN LEGAL COUNSEL. ANY INFORMATION CONTAINED IN THIS TRANSMISSION IS BASED
ON THE SENDER'S RESEARCH AND EXPERIENCE IN WORKING WITH THESE ISSUES.

Collection agencies must comply with a federal law that provides you with certain rights,
including the right to have us stop communicating with you, if you make the request in
writing to: National Financial Systems, Inc. This law is administered by the Federal
Trade Commission, One Bowling Green, Third Floor, New York, NY 10004.

For inquiries, call 1-866-463-5443 1:00 pm - 3:00 pm est Monday - Thursday.

Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant
to Internal Revenue Code 6050 (P) and related federal law.

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

Docket No. 05-CV-10464PBS

TIMOTHY M. BROWDER,
    Plaintiff

v.

NATIONAL FINANCIAL SYSTEMS,
INC.,
    Defendant

## RESPONSES OF DEFENDANT NATIONAL FINANCIAL SYSTEMS, INC. TO PLAINTIFF'S REQUESTS FOR ADMISSIONS

The defendant National Financial Systems, Inc. ("NFS") hereby responds to the

plaintiff's First Requests for Admissions as follows:

**REQUEST NO. 1:**

Plaintiff Timothy M. Browder is a resident of Chestnut Hill, MA.

**RESPONSE TO REQUEST NO. 1:**

NFS states that even though it has conducted a reasonable inquiry, the
information known to, or readily obtainable by, NFS is insufficient to enable it to either
admit or deny this request.

**REQUEST NO. 2:**

Defendant National Financial Systems, Inc. ("NFS") is a corporation with offices
at 600 W. John Street, Hicksville, NY 11801.

**RESPONSE TO REQUEST NO. 2:**

Admit.

1

**REQUEST NO. 3:**

NFS operates a collection agency.

**RESPONSE TO REQUEST NO. 3:**

Admit.

**REQUEST NO. 4:**

NFS is a debt collector as defined in the FDCPA.

**RESPONSE TO REQUEST NO. 4:**

Admit.

**REQUEST NO. 5:**

NFS does business in Massachusetts. It maintains offices at 5230 Washington Street, West Roxbury, MA 02132.

**RESPONSE TO REQUEST NO. 5:**

Admit.

**REQUEST NO. 6:**

NFS is the same entity involved in United States v. National Financial Systems, Inc., Civil Action No. CV-990-7874 (E.D.N.Y.). [sic]

**RESPONSE TO REQUEST NO. 6:**

Admit.

**REQUEST NO. 7:**

On or about July 9, 2004, NFS mailed plaintiff a collection letter, attached as Exhibit A.

**RESPONSE TO REQUEST NO. 7:**

NFS admits only that a collection letter was sent to plaintiffs, but cannot verify the authenticity of Exhibit A and therefore denies the remainder of this request.

2

**REQUEST NO. 8:**

Exhibit A sought to collect a credit card debt allegedly owed to Citicorp.

**RESPONSE TO REQUEST NO. 8:**

Admit.

**REQUEST NO. 9:**

Exhibit A is a form letter.

**RESPONSE TO REQUEST NO. 9:**

NFS admits only that Exhibit A appears to be a copy of a collection letter that is no longer used by NFS, but cannot verify the authenticity of Exhibit A and therefore denies the remainder of this request.

**REQUEST NO. 10:**

Exhibit A states on the reverse: "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law."

**RESPONSE TO REQUEST NO. 10:**

Admit.

**REQUEST NO. 11:**

In fact, certain financial institutions are required to file a 1099 information return with the IRS if they *discharge* indebtedness in the principal amount of $600 or more.

**RESPONSE TO REQUEST NO. 11:**

NFS objects to this question on the grounds that it asks for NFS to draw a legal conclusion.

**REQUEST NO. 12:**

Under no circumstances is the existence of a consumer debt something that requires the filing of an information return with the IRS.

**RESPONSE TO REQUEST NO. 12:**

3

NFS objects to this question on the grounds that it asks for NFS to draw a legal conclusion.

## REQUEST NO. 13:

The requirement that the discharge of indebtedness must be reported does not necessarily mean that the amount discharged represents income.

## RESPONSE TO REQUEST NO. 13:

NFS objects to this question on the grounds that it asks for NFS to draw a legal conclusion.

## REQUEST NO. 14:

NFS sent Exhibit A about 5 weeks after it had been sued in the Northern District of Illinois for the same violation, on May 28, 2004, and served with process in that action, on June 2, 2004.

## RESPONSE TO REQUEST NO. 14:

NFS objects to this request on the grounds that it implies that NFS had a duty to Plaintiff after being served with a different lawsuit. Not withstanding the foregoing objection and without waiving same, NFS admits that a collection letter was sent to Plaintiff containing the IRS language quoted above, but cannot verify the authenticity of Exhibit A and therefore denies the remainder of this request.

## REQUEST NO. 15:

NFS does not in fact report the existence (as opposed to the discharge) of indebtedness over $600 to the IRS as taxable income. Neither do NFS' clients.

## RESPONSE TO REQUEST NO. 15:

NFS admits the first sentence. As to the second sentence, NFS states that even though it has conducted a reasonable inquiry, the information known to, or readily obtainable by, NFS is insufficient to enable it to either admit or deny this request.

## REQUEST NO. 16:

There are more than 40 (i) natural persons with Massachusetts addresses, (ii) to whom NFS sent a letter stating "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law", (iii) on or after March 10, 2004, (iv) and before March 30, 2005.

4

**RESPONSE TO REQUEST NO. 16:**

NFS states that even though it has conducted a reasonable inquiry, the information known to, or readily obtainable by, NFS is insufficient to enable it to either admit or deny this request.

**REQUEST NO. 17:**

There are more than 40 (i) natural persons with Massachusetts addresses, (ii) to whom NFS sent a letter stating "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law", (iii) on or after March 10, 2001, (iv) and before March 30, 2005.

**RESPONSE TO REQUEST NO. 17:**

NFS states that even though it has conducted a reasonable inquiry, the information known to, or readily obtainable by, NFS is insufficient to enable it to either admit or deny this request.

**REQUEST NO. 18:**

There are more than 100 (i) natural persons with Massachusetts addresses, (ii) to whom NFS sent a letter stating "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law", (iii) on or after March 10, 2004, (iv) and before March 30, 2005.

**RESPONSE TO REQUEST NO. 18:**

NFS states the even though it has conducted a reasonable inquiry, the information known to, or readily obtainable by, NFS is insufficient to enable it to either admit or deny this request.

**REQUEST NO. 19:**

There are more than 100 (i) natural persons with Massachusetts addresses, (ii) to whom NFS sent a letter stating "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law", (iii) on or after March 10, 2001, (iv) and before March 30, 2005.

**RESPONSE TO REQUEST NO. 19:**

NFS states that even though it has conducted a reasonable inquiry, the information known to, or readily obtainable by, NFS is insufficient to enable it to either admit or deny this request.

5

**REQUEST NO. 20:**

There are more than 500 (i) natural persons with Massachusetts addresses, (ii) to whom NFS sent a letter stating "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law", (iii) on or after March 10, 2004, (iv) and before March 30, 2005.

**RESPONSE TO REQUEST NO. 20:**

NFS states that even though it has conducted a reasonable inquiry, the information known to, or readily obtainable by, NFS is insufficient to enable it to either admit or deny this request.

**REQUEST NO. 21:**

There are more than 500 (i) natural persons with Massachusetts addresses, (ii) to whom NFS sent a letter stating "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law", (iii) on or after March 10, 2001, (iv) and before March 30, 2005.

**RESPONSE TO REQUEST NO. 21:**

NFS states that even though it has conducted a reasonable inquiry, the information known to, or readily obtainable by, NFS is insufficient to enable it to either admit or deny this request.

**REQUEST NO. 22:**

There are more than 1000 (i) natural persons with Massachusetts addresses, (ii) to whom NFS sent a letter stating "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law", (iii) on or after March 10, 2004, (iv) and before March 30, 2005.

**RESPONSE TO REQUEST NO. 22:**

NFS states that even though it has conducted a reasonable inquiry, the information known to, or readily obtainable by, NFS is insufficient to enable it to either admit or deny this request.

**REQUEST NO. 23:**

There are more than 1000 (i) natural persons with Massachusetts addresses, (ii) to whom NFS sent a letter stating "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law", (iii) on or after March 10, 2001, (iv) and before March 30, 2005.

6

**RESPONSE TO REQUEST NO. 23:**

NFS states that even though it has conducted a reasonable inquiry, the information known to, or readily obtainable by, NFS is insufficient to enable it to either admit or deny this request.

**REQUEST NO. 24:**

Defendant has a net worth exceeding $1 million.

**RESPONSE TO REQUEST NO. 24:**

Admit.

**REQUEST NO. 25:**

Defendant has a net worth exceeding $2 million.

**RESPONSE TO REQUEST NO. 25:**

Deny.

**REQUEST NO. 26:**

Defendant has a net worth exceeding $5 million.

**RESPONSE TO REQUEST NO. 26:**

Deny.

**REQUEST NO. 27:**

Defendant has a net worth exceeding $10 million.

**RESPONSE TO REQUEST NO. 27:**

Deny.

**REQUEST NO. 28:**

Defendant has a net worth exceeding $20 million.

**RESPONSE TO REQUEST NO. 28:**

ID # 438203v01/14528-2/ 08.17.2005

Deny.

## REQUEST NO. 29:

Defendant has a net worth exceeding $50 million.

## RESPONSE TO REQUEST NO. 29:

Deny.

Signed under the penalties of perjury this _17_ day of _August_, 2005.

NATIONAL FINANCIAL SYSTEMS, INC.

By: _____
One of its Attorneys

As to Objections:

_____
Steven S. Broadley, BBO #542305
Posternak Blankstein & Lund, LLP
Prudential Tower
800 Boylston Street, 32nd Floor
Boston, MA  02199-8004
617-973-6100

_____
Albert E. Fowerbaugh, Jr., Esquire
Michael G. Salemi, Esquire
Lord, Bissell & Brook LLP
115 South LaSalle Street
Chicago, IL  60603
312-443-1871

8

## CERTIFICATE OF SERVICE

I, Steven S. Broadley, Esquire of Posternak, Blankstein & Lund, LLP, hereby certify that on this $\underline{17}$ day of August, 2005, I caused a copy of the above **Responses of Defendant National Financial Systems, Inc.'s to Requests for Admissions** to be mailed to:

Daniel A. Edelman, Esquire
Edelman, Combs, Latturner & Goodwin, LLC
120 S. LaSalle Street, 18th Floor
Chicago, IL  60603-3403

Albert E. Fowerbaugh, Jr., Esquire
Michael G. Salemi, Esquire
Lord, Bissell & Brook LLP
115 South LaSalle Street
Chicago, IL  60603

Christopher M. Lefebvre, Esquire
Law Offices of Claude Lefebvre & Sons
Two Dexter Street
Pawtucket, RI  02860


_____
Steven S. Broadley

9

# EXHIBIT C



LORD BISSELL ✔ BROOK LLP
ATTORNEYS AT LAW

115 S. LASALLE STREET I CHICAGO, ILLINOIS 60603-3901
312 443 0700 I 312 443 0336 FAX I WWW.LORDBISSELL.COM

September 21, 2005

Michael G. Salemi

312 443 0323
Fax: 312 896 6323
msalemi@lordbissell.com

**VIA E-MAIL**

Francis R. Greene
Edelman, Combs, Latturner & Goodwin LLC.
120 South LaSalle Street, Suite 1800
Chicago, Illinois 60603
e-mail: fgreene@edcombs.com

Re:   *Browder v. National Financial Systems, Inc.*, 05-CV-10464PBS
      Supplemental Interrogatory Response

Dear Mr. Greene:

This letter will serve as a supplemental response to Interrogatory 8 from Plaintiff's First Discovery Requests. NFS' response to Interrogatory 8 is supplemented as follows:

> Between March 2004 and March 30, 2005, NFS sent approximately two-thousand (2,000) letters stating "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050 (p) and related federal law" to natural persons with Massachusetts addresses.

> NFS' investigation into the total number of letters sent on or after March 10, 2001 and before March 30, 2005 continues.

Sincerely,

LORD, BISSELL & BROOK LLP

Michael G. Salemi

MGS:mgs

cc:   Steve Broadley (via e-mail)
      Albert E. Fowerbaugh, Jr. (via e-mail)

ATLANTA    |    CHICAGO    |    LONDON    |    LOS ANGELES    |    NEW YORK    |    WASHINGTON

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY M. BROWDER, | ) | |
| | ) | 1:05cv10464 |
| Plaintiff, | ) | |
| | ) | Judge Saris |
| v. | ) | |
| | ) | |
| NATIONAL FINANCIAL SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF DANIEL A. EDELMAN

Daniel A. Edelman declares under penalty of perjury, as provided for by the laws of the United States (28 U.S.C. §1746), that the following statements are true:

**1.** Edelman, Combs, Latturner & Goodwin, LLC, has 5 principals, Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Tara L. Goodwin, and Michelle R. Teggelaar and 9 associates.

**2. Daniel A. Edelman** is a 1976 graduate of the University of Chicago Law School. From 1976 to 1981 he was an associate at the Chicago office of Kirkland & Ellis with heavy involvement in the defense of consumer class action litigation (such as the General Motors Engine Interchange cases). In 1981 he became an associate at Reuben & Proctor, a medium-sized firm formed by some former Kirkland & Ellis lawyers, and was made a partner there in 1982. From the end of 1985 he has been in private practice in downtown Chicago. Virtually all of his practice involves litigation on behalf of consumers, mostly through class actions. He is the co-author of Rosmarin & Edelman, Consumer Class Action Manual (2d-4th editions, National Consumer Law Center 1990, 1995 and 1999); author of Payday Loans: Big Interest Rates and Little Regulation, 11 Loy.Consumer L.Rptr. 174 (1999); author of Consumer Fraud and Insurance Claims, in Bad Faith and Extracontractual Damage Claims in Insurance Litigation, Chicago Bar Ass'n 1992; co-author of Chapter 8, "Fair Debt Collection Practices Act," Ohio Consumer Law (1995 ed.); co-author of Fair Debt Collection: The Need for Private Enforcement, 7 Loy.Consumer L.Rptr. 89 (1995); author of An Overview of The Fair Debt Collection Practices Act, in Financial Services Litigation, Practicing Law Institute (1999); co-author of Residential Mortgage Litigation, in Financial Services Litigation, Practicing Law Institute (1996); author of Automobile Leasing: Problems and Solutions, 7 Loy.Consumer L.Rptr. 14 (1994); author of Current Trends in Residential Mortgage Litigation, 12 Rev. of Banking & Financial Services 71 (April 24, 1996); author of Applicability of Illinois Consumer Fraud Act in Favor of Out-of-State Consumers, 8 Loy.Consumer L.Rptr. 27 (1996); co-author of

1

Illinois Consumer Law (Chicago Bar Ass'n 1996); co-author of D. Edelman and M. A. Weinberg, Attorney Liability Under the Fair Debt Collection Practices Act (Chicago Bar Ass'n 1996); author of The Fair Debt Collection Practices Act: Recent Developments, 8 Loy.Consumer L. Rptr. 303 (1996); author of Second Mortgage Frauds, Nat'l Consumer Rights Litigation Conference 67 (Oct. 19-20, 1992); and author of Compulsory Arbitration of Consumer Disputes, Nat'l Consumer Rights Litigation Conference 54, 67 (1994). He is a member of the Illinois bar and admitted to practice in the following courts: United States Supreme Court, Seventh Circuit Court of Appeals, First Circuit Court of Appeals, Second Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Eighth Circuit Court of Appeals, Ninth Circuit Court of Appeals, Tenth Circuit Court of Appeals, Eleventh Circuit Court of Appeals, United States District Courts for the Northern and Southern Districts of Indiana, United States District Courts for the Northern, Central, and Southern Districts of Illinois, United States District Court for the District of Arizona, United States District Court for the District of Connecticut, and the Supreme Court of Illinois. He is a member of the Northern District of Illinois trial bar.

     **3.**     **Cathleen M. Combs** is a 1976 graduate of Loyola University Law School. She formerly supervised the Northwest office of the Legal Assistance Foundation of Chicago, where she was lead or co-counsel in class actions in the areas of unemployment compensation, prison law, social security law, and consumer law. She joined what is now Edelman, Combs & Latturner in early 1991. Decisions in which she was involved prior to joining the firm include: Johnson v. Heckler, 607 F.Supp. 875 (N.D.Ill. 1984), and 100 F.R.D. 70 (N.D. Ill. 1983); Sanders v. Shephard, 185 Ill.App.3d 719, 541 N.E.2d 1150 (1st Dist. 1989); Maller v. Cohen, 176 Ill.App.3d 987, 531 N.E.2d 1029 (1st Dist. 1988); Wright v. Department of Labor, 166 Ill.App.3d 438, 519 N.E.2d 1054 (1st Dist. 1988); Barron v. Ward, 165 Ill.App.3d 653, 517 N.E.2d 591 (1st Dist. 1987); City of Chicago v. Leviton, 137 Ill.App.3d 126, 484 N.E.2d 438 (1st Dist. 1985); Jude v. Morrissey, 117 Ill.App.3d 782, 454 N.E.2d 24 (1st Dist. 1983). She is a member of the Northern District of Illinois trial bar.

     **4.**     **James O. Latturner** is a 1962 graduate of the University of Chicago Law School. Until 1969, he was an associate and then a partner at the Chicago law firm of Berchem, Schwanes & Thuma. From 1969 to 1995 he was Deputy Director of the Legal Assistance Foundation of Chicago, where he specialized in consumer law, including acting as lead counsel in over 30 class actions. His publications include Chapter 8 ("Defendants") in Federal Practice Manual for Legal Services Attorneys (M. Masinter, Ed., National Legal Aid and Defender Association 1989); Governmental Tort Immunity in Illinois, 55 Ill.B.J. 29 (1966); Illinois Should Explicitly Adopt the Per Se Rule for Consumer Fraud Act Violations, 2 Loy.Consumer L.Rep. 64 (1990), and Illinois Consumer Law (Chicago Bar Ass'n 1996). He has taught in a nationwide series of 18 Federal Practice courses sponsored by the Legal Services Corporation, each lasting four days and designed for attorneys with federal litigation experience. He has argued some 30 appeals, including two cases in the United States Supreme Court and two in the Illinois Supreme Court. Mr. Latturner was involved in many of the significant decisions establishing the rights of Illinois consumers. He is a member of the Northern District of Illinois trial bar.

**5.**    **Tara L. Goodwin** is a graduate of the University of Chicago (B.A., with general honors, 1988)and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., with high honors,1991). She has been with the firm since her graduation and has participated in many of the cases described below. **Reported Cases.** Williams v. Chartwell Financial Services, LTD, 204 F.3d 748 (7th Cir. 2000); Hillenbrand v. Meyer Medical Group, 682 N.E.2d 101 (Ill.1st Dist. 1997), 720 N.E.2d 287 (Ill.1st Dist. 1999); Bessette v. Avco Fin. Servs., 230 F.3d 439 (1st Cir. 2000); Large v. Conseco Fin. Servicing Co., 292 F.3d 49 (1st Cir. 2002);; Carbajal v. Capital One, 219 F.R.D. 437 (N.D.Ill. 2004); Russo v. B&B Catering, 209 F.Supp.2d 857 (N.D.IL 2002); Garcia v. Village of Bensenville, 2002 U.S.Dist. LEXIS 3803 (N.D.Ill.); Romaker v. Crossland Mtg. Co., 1996 U.S.Dist. LEXIS 6490 (N.D.IL); Mount v. LaSalle Bank Lake View, 926 F.Supp. 759 (N.D.Ill 1996). She is a member of the Northern District of Illinois trial bar.

**6.**    **Michelle R. Teggelaar** is a graduate of the University of Illinois (B.A., 1993) and Chicago-Kent College of Law, Illinois Institute of Technology (J.D., with honors, 1997). **Reported Cases:** Johnson v. Revenue Management, Inc., 169 F.3d 1057 (7th Cir.1999); Coelho v. Park Ridge Oldsmobile, Inc., 247 F. Supp. 2d 1004 (N.D. Ill. 2003); Dominguez v. Alliance Mtge., Co., 226 F. Supp. 2d 907 (N.D. Ill. 2002); Watson v. CBSK Financial Group, Inc., 197 F. Supp. 2d 1118 (N.D. Ill. 2002); Van Jackson v. Check 'N Go of Illinois, Inc. 123 F. Supp. 2d 1085 (N.D. Ill. 2000), Van Jackson v. Check 'N Go of Illinois, Inc., 123 F. Supp. 2d 1079, Van Jackson v. Check 'N Go of Illinois, Inc., 114 F. Supp. 2d 731 (N.D. Ill. 2000); Van Jackson v. Check 'N Go of Illinois, Inc., 193 F.R.D. 544 (N.D. Ill. 2000); Vines v. Sands, 188 F.R.D. 302 (N.D. Ill. 1999); Veillard v. Mednick, 24 F. Supp. 2d 863 (N.D. Ill.1998); Sledge v. Sands, 182 F.R.D. 255 (N.D. Ill. 1998), Vines v. Sands, 188 F.R.D. 203 (N.D. Ill. 1999), Livingston v. Fast Cash USA, Inc., 753 N.E.2d 572 (Ind. 2001); Carroll v. Butterfield Heath Care, Inc., 2003 WL 22462604 (N.D. Ill. 2003); Payton v. New Century Mtge., Inc., 2003 WL 22349118 (N.D. Ill. 2003); Seidat v. Allied Interstate, Inc., 2003 WL 2146825 (N.D. Ill. 2003) (Report and Recommendation); Michalowski v. Flagstar Bank, FSB, 2002 WL 112905 (N.D. Ill. 2002); Bigalke v. Creditrust Corp., 2001 WL 1098047 (N.D. Ill 2001) (Report and Recommendation); Donnelly v. Illini Cash Advance, 2000 WL 1161076 (N.D. Ill. 2000); Mitchem v. Paycheck Advance Express, 2000 WL 419992 (N.D. Ill 2000); Pinkett v. Moolah Loan Co., 1999 WL 1080596 (N.D. Ill. 1999); Farley v. Diversified Collection Serv., 1999 WL 965496 (N.D. Ill. 1999); Davis v. Commercial Check Control, 1999 WL 965496 (N.D. Ill. 1999); Sledge v. Sands, 1999 WL 261745 (N.D. Ill. 1999); Slater v. Credit Sciences, Inc., 1998 WL 341631 (N.D. Ill. 1998); Slater v. Credit Sciences, Inc., 1998 WL 299803 (N.D. Ill. 1998).

**7.**    **Associates**

**a.**    **Francis R. Greene** is a graduate of Johns Hopkins University (B.A., with honors, May 1984), Rutgers University (Ph.D., October 1991), and Northwestern University Law School (J.D., 2000). **Reported Cases:** Johnson v. Thomas, 342 Ill. App.3d 382, 794 N.E.2d 919 (1st Dist. 2003); Jolly v. Shapiro & Kreisman, 237 F. Supp. 2d 888 (N.D. Ill. 2002); Parker v. 1-800 Bar None, a Financial Corp., Inc. 2002 WL 215530 (N.D. Ill. 2002); Jiang

v. Allstate Ins. Co. (199 F.R.D. 267); Hill v. AMOCO Oil Co. 2003 WL 262424, 2001 WL 293628 (N.D. Ill. 2003); Roquet v. Arthur Anderson LLP 2002 WL 1900768 (N.D. Ill. 2002); White v. Financial Credit, Corp. 2001 WL 1665386 (N.D. Ill.); Ransom v. Gurnee Volkswagen 2001 WL 1241297 (N.D. Ill. 2001) and 2002 WL 449703 (N.D. Ill 2002); Doxie v. Impac Funding Corp. 2002 WL 31045387 (N.D. Ill. 2002); Levin v. Kluever & Platt LLC 2003 WL 22757763 and 2003 WL 22757764 (N.D. Ill. 2003); Pleasant v. Risk Management Alternatives 2003 WL 22175390 (N.D. Ill. 2003); Jenkins v. Mercantile Mortgage 231 F. Supp. 2d 737 (N.D. Ill. 2002); Hobson v. Lincoln Ins. Agency, Inc. 2001 WL 55528, 2001 WL 648958 (N.D. Ill. 2001), Anderson v. Lincoln Ins. Agency 2003 WL 291928, Hobson v. Lincoln Ins. Agency 2003 WL 338161 (N.D. Ill. 2003). He is a member of the Northern District of Illinois trial bar.

      **b.**    **Julie Clark** is a graduate of Northern Illinois University (B.A., 1997) and DePaul University College of Law (J.D., 2000). **Reported Cases:** Qualkenbush v. Harris Trust & Savings Bank 219 F.Supp.2d 935 (N.D.Ill.,2002); Covington-McIntosh v. Mount Glenwood Memory Gardens 2002 WL 31369747 (N.D.Ill.,2002), 2003 WL 22359626 (N.D. Ill. 2003).

      **c.**    **Heather A. Piccirilli** is a graduate of DePaul University (B.S. *cum laude,* 1997), and Roger Williams University School of Law (J.D., 2002).

      **d.**    **Albert F. Hofeld Jr.** is a graduate of Reed College (B.A., 1990), the University of Chicago Divinity School (M. Div., 1994), and Northwestern University Law School (J.D., 2000).

      **e.**    **Thomas E. Soule** is a graduate of Stanford University (B.A., 2000), and the University of Wisconsin Law School (J.D., 2003)

      **f.**    **Alexander H. Burke** is a graduate of Colgate University (B.A., 1997), and Loyola University of Chicago School of Law (J.D., 2003).

      **g.**    **Jeremy P. Monteiro** is a graduate of St. John's University (B.A., 1999) and DePaul University College of Law (J.D., 2003).

      **h.**    **Derek B. Rieman** is a graduate of Indiana University (B.A., 2000) and University of Oregon Law School (J.D., 2004).

      **i.**    **Curtis C. Warner** is a graduate of Grand Valley State University (B.S. 1993), Wayne State University (M. Ed. 1998), and Michigan State University College of Law (J.D., *cum laude,* 2002). He is a member of the Northern District of Illinois trial bar.

      **8.**    The firm also has 15 legal assistants, as well as other support staff.

      **9.**    Since its inception, the firm has recovered more than $500 million for

consumers.

   **10.** The types of cases handled by the firm are illustrated by the following:

   **11.** <u>Mortgage charges and servicing practices</u>: The firm has been involved in dozens of cases, mostly class actions, complaining of illegal charges on mortgages and improper servicing practices. Decisions in these cases include: <u>Christakos v. Intercounty Title Co.</u>, 196 F.R.D. 496 (N.D.Ill. 2000); <u>Johnstone v. Bank of America, N.A.</u>, 173 F.Supp.2d 809 (N.D.Ill. 2001); <u>Leon v. Washington Mut. Bank, F.A.</u>, 164 F.Supp.2d 1034 (N.D.Ill. 2001); <u>Williamson v. Advanta Mortg. Corp.</u>, 1999 U.S. Dist. LEXIS 16374 (N.D.Ill., Oct. 5, 1999); <u>McDonald v. Washington Mut. Bank, F.A.</u>, 2000 U.S. Dist. LEXIS 11496 (N.D.Ill., June 22, 2000); <u>Metmor Financial, Inc. v. Eighth Judicial District Court</u>, No. 23848 (Nev.Sup.Ct., Apr. 27, 1993); <u>GMAC Mtge. Corp. v. Stapleton</u>, 236 Ill.App.3d 486, 603 N.E.2d 767 (1st Dist. 1992), leave to appeal denied, 248 Ill.2d 641, 610 N.E.2d 1262 (1993); <u>Leff v. Olympic Fed. S. & L. Ass'n</u>, 1986 WL 10636 (N.D.Ill. 1986); <u>Aitken v. Fleet Mtge. Corp.</u>, 1991 U.S.Dist. LEXIS 10420 (N.D.Ill. 1991), and 1992 U.S.Dist. LEXIS 1687 (N.D.Ill., Feb. 12, 1992); <u>Poindexter v. National Mtge. Corp.</u>, 1991 U.S.Dist. LEXIS 19643 (N.D.Ill., Dec. 23, 1991), later opinion, 1995 U.S.Dist. LEXIS 5396 (N.D.Ill., April 24, 1995); <u>Sanders v. Lincoln Service Corp.</u>, 1993 U.S.Dist. LEXIS 4454 (N.D.Ill. 1993); <u>Robinson v. Empire of America Realty Credit Corp.</u>, 1991 U.S.Dist. LEXIS 2084 (N.D.Ill., Feb. 20, 1991); <u>In re Mortgage Escrow Deposit Litigation</u>, M.D.L. 899, 1994 U.S.Dist. LEXIS 12746 (N.D.Ill., Sept. 8, 1994); <u>Greenberg v. Republic Federal S. & L. Ass'n</u>, 1995 U.S.Dist. LEXIS 5866 (N.D.Ill., May 1, 1995).

   **12.** The recoveries in the escrow overcharge cases alone are over $250 million. <u>Leff</u> was the seminal case on mortgage escrow overcharges.

   **13.** The escrow litigation had a substantial effect on industry practices, resulting in limitations on the amounts which mortgage companies held in escrow.

   **14.** **Automobile sales and financing practices**: The firm has brought many cases challenging practices relating to automobile sales and financing, including:

   **a.** Hidden finance charges resulting from pass-on of discounts on auto purchases. <u>Walker v. Wallace Auto Sales, Inc.</u>, 155 F.3d 927, 1998 U.S. App. LEXIS 22663 (7th Cir. 1998).

   **b.** Misrepresentation of amounts disbursed for extended warranties. Taylor v. Quality Hyundai, Inc., 150 F.3d 689, 1998 U.S.App. LEXIS 16434 (7th Cir. 1998); <u>Grimaldi v. Webb</u>, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996); <u>Slawson v. Currie Motors Lincoln Mercury, Inc.</u>, 1995 U.S.Dist. LEXIS 451 (N.D.Ill., Jan. 5, 1995); <u>Cirone-Shadow v. Union Nissan, Inc.</u>, 1995 U.S.Dist. LEXIS 1379 (N.D.Ill., Feb. 3, 1995), later opinion, 1995 U.S.Dist. LEXIS 5232 (N.D.Ill., April 20, 1995) (same); <u>Chandler v. Southwest Jeep-Eagle, Inc.</u>, 1995 U.S. Dist. LEXIS 8212 (N.D.Ill., June 8,

1995); <u>Shields v. Lefta, Inc.</u>, 1995 U.S.Dist. LEXIS 7807 (N.D.Ill., June 5, 1995).

        **c.**    Spot delivery. <u>Janikowski v. Lynch Ford, Inc.</u>, 1999 U.S. Dist. LEXIS 3524 (N.D.Ill., March 11, 1999); <u>Diaz v. Westgate Lincoln Mercury, Inc.</u>, 1994 U.S.Dist. LEXIS 16300 (N.D.Ill. 1994); <u>Grimaldi v. Webb</u>, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996).

        **d.**    Force placed insurance. <u>Bermudez v. First of America Bank Champion, N.A.</u>, 860 F.Supp. 580 (N.D.Ill. 1994); <u>Travis v. Boulevard Bank</u>, 1994 U.S.Dist. LEXIS 14615 (N.D.Ill., Oct. 13, 1994), modified, 880 F.Supp. 1226 (N.D.Ill., 1995); <u>Moore v. Fidelity Financial Services, Inc.</u>, 884 F. Supp. 288 (N.D.Ill. 1995).

        **e.**    Improper obligation of cosigners. <u>Lee v. Nationwide Cassell</u>, 174 Ill.2d 540, 675 N.E.2d 599 (1996); <u>Taylor v. Trans Acceptance Corp.</u>, 267 Ill.App.3d 562, 641 N.E.2d 907 (1st Dist. 1994), leave to appeal denied, 159 Ill.2d 581, 647 N.E.2d 1017 (1995).

        **f.**    Evasion of FTC holder rule. <u>Brown v. LaSalle Northwest Nat'l Bank</u>, 148 F.R.D. 584 (N.D.Ill. 1993), 820 F.Supp. 1078 (N.D.Ill. 1993), and 1993 U.S.Dist. LEXIS 11419 (N.D.Ill., Aug. 13, 1993).

        **15.**    These cases also had a substantial effect on industry practices. The warranty cases, such as <u>Grimaldi</u>, <u>Gibson</u>, <u>Slawson</u>, <u>Cirone-Shadow</u>, <u>Chandler</u>, and <u>Shields</u>, resulted in the Federal Reserve Board's revision of applicable disclosure requirements, so as to prevent car dealers from representing that the charge for an extended warranty was being disbursed to a third party when that was not in fact the case.

        **16.**    **Predatory lending practices**: The firm has brought numerous cases challenging predatory mortgage and "payday" lending practices, mostly as class actions. <u>Livingston v. Fast Cash USA, Inc.</u>, 753 N.E.2d 572 (Ind. Sup. Ct. 2001); <u>Williams v. Chartwell Fin. Servs.</u>, 204 F.3d 748 (7th Cir. 2000); <u>Parker v. 1-800 Bar None, a Financial Corp., Inc.</u>, 01 C 4488, 2002 WL 215530 (N.D.Ill., Feb 12, 2002); <u>Gilkey v. Central Clearing Co.</u>, 202 F.R.D. 515 (E.D.Mich. 2001); <u>Van Jackson v. Check 'N Go of Ill., Inc.</u>, 114 F.Supp.2d 731 (N.D.Ill. 2000), later opinion, 193 F.R.D. 544 (N.D.Ill. 2000), 123 F.Supp. 2d 1079 (N.D.Ill. 2000), later opinion, 123 F.Supp. 2d 1085 (N.D.Ill. 2000); <u>Henry v. Cash Today, Inc.</u>, 199 F.R.D. 566 (S.D.Tex. 2000); <u>Donnelly v. Illini Cash Advance, Inc.</u>, 00 C 94, 2000 WL 1161076, 2000 U.S. Dist. LEXIS 11906 (N.D.Ill., Aug. 14, 2000); <u>Jones v. Kunin</u>, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000); <u>Davis v. Cash for Payday</u>, 193 F.R.D. 518 (N.D.Ill. 2000); <u>Reese v. Hammer Fin. Corp.</u>, 99 C 716, 1999 U.S. Dist. LEXIS 18812, 1999 WL 1101677 (N.D.Ill., Nov. 29, 1999); <u>Pinkett v. Moolah Loan Co.</u>, 1999 U.S. Dist. LEXIS 17276 (N.D.Ill., Nov. 1, 1999); <u>Gutierrez v. Devon Fin. Servs.</u>, 1999 U.S. Dist. LEXIS 18696 (N.D.Ill., Oct. 6, 1999); <u>Vance v. National Benefit Ass'n</u>, 99 C 2627, 1999 WL 731764, 1999 U.S. Dist. LEXIS 13846 (N.D.Ill., Aug. 26, 1999).

**17.    Other consumer credit issues:**  The firm has also brought a number of other Truth in Lending and consumer credit cases, mostly as class actions, involving such issues as:

**a.**    Phony nonfiling insurance.  Edwards v. Your Credit Inc., 148 F.3d 427, 1998 U.S. App. LEXIS 16818 (5th Cir. 1998); Adams v. Plaza Finance Co., 1999 U.S. App. LEXIS 1052 (7th Cir., January 27, 1999); Johnson v. Aronson Furniture Co., 1997 U.S. Dist. LEXIS 3979 (N.D. Ill., March 31, 1997).

**b.**    The McCarran Ferguson Act exemption.  Autry v. Northwest Premium Services, Inc., 144 F.3d 1037, 1998 U.S. App. LEXIS 9564 (7th Cir. 1998).

**c.**    Loan flipping.  Emery v. American General, 71 F.3d 1343 (7th Cir. 1995).  Emery limited the pernicious practice of "loan flipping," in which consumers are solicited for new loans and are then refinanced, with "short" credits for unearned finance charges and insurance premiums being given through use of the "Rule of 78s."

**d.**    Home improvement financing practices.  Fidelity Financial Services, Inc. v. Hicks, 214 Ill.App.3d 398, 574 N.E.2d 15 (1st Dist. 1991), leave to appeal denied, 141 Ill.2d 539, 580 N.E.2d 112; Heastie v. Community Bank of Greater Peoria, 690 F.Supp. 716 (N.D.Ill. 1989), later opinion, 125 F.R.D. 669 (N.D.Ill. 1990), later opinions, 727 F.Supp. 1133 (N.D.Ill. 1990), and 727 F.Supp. 1140 (N.D.Ill. 1990).  Heastie granted certification of a class of over 6,000 in a home improvement fraud case.

**e.**    Arbitration clauses.  Wrightson v. ITT Financial Services, 617 So.2d 334 (Fla. 1st DCA 1993).

**f.**    Insurance packing.  Elliott v. ITT Corp., 764 F.Supp. 102 (N.D.Ill. 1990), later opinion, 150 B.R. 36 (N.D.Ill. 1992).

**18.    Automobile leases:**  The firm has brought a number of a cases alleging illegal charges and improper disclosures on automobile leases, mainly as class actions.  Decisions in these cases include Lundquist v. Security Pacific Automotive Financial Services Corp., Civ. No. 5:91-754 (TGFD) (D.Conn.), aff'd, 993 F.2d 11 (2d Cir. 1993); Kedziora v. Citicorp Nat'l Services, Inc., 780 F.Supp. 516 (N.D.Ill. 1991), later opinion, 844 F.Supp. 1289 (N.D.Ill. 1994), later opinion, 883 F.Supp. 1144 (N.D.Ill. 1995), later opinion, 1995 U.S.Dist. LEXIS 12137 (N.D.Ill., Aug. 18, 1995), later opinion, 1995 U.S.Dist. LEXIS 14054 (N.D.Ill., Sept. 25, 1995); Johnson v. Steven Sims Subaru and Subaru Leasing, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill., June 9, 1993), and 1993 U.S.Dist. LEXIS 11694 (N.D.Ill., August 20, 1993); McCarthy v. PNC Credit Corp., 1992 U.S.Dist. LEXIS 21719 (D.Conn., May 27, 1992); Kinsella v. Midland Credit Mgmt., Inc., 1992 U.S.Dist. LEXIS 1405, 1992 WL 26908 (N.D.Ill. 1992); Highsmith v. Chrysler Credit Corp., 18 F.3d 434 (7th Cir. 1994); Black v. Mitsubishi Motors Credit of America, Inc., 1994 U.S.Dist. LEXIS 11158 (N.D.Ill., August 10, 1994); Simon v. World Omni

Leasing Inc., 146 F.R.D. 197 (S.D.Ala. 1992). Settlements in such cases include Shepherd v. Volvo Finance North America, Inc., 1-93-CV-971 (N.D.Ga.)($8 million benefit); McCarthy v. PNC Credit Corp., 291 CV 00854 PCD (D.Conn.); Lynch Leasing Co. v. Moore, 90 CH 876 (Circuit Court of Cook County, Illinois) (class in auto lease case was certified for litigation purposes, partial summary judgment was entered, and case was then settled); Blank v. Nissan Motor Acceptance Corp., 91 L 8516 (Circuit Court of Cook County, Illinois); Mortimer v. Toyota Motor Credit Co., 91 L 18043 (Circuit Court of Cook County, Illinois); Duffy v. Security Pacific Automotive Financial Services, Inc., 93-729 IEG (BTM) (S.D.Cal., April 28, 1994).

19.    Lundquist and Highsmith are leading cases; both held that commonly-used lease forms violated the Consumer Leasing Act. As a result of the Lundquist case, the Federal Reserve Board completely revamped the disclosure requirements applicable to auto leases, resulting in vastly improved disclosures to consumers.

20.    **Collection practices:** The firm has brought a number of cases under the Fair Debt Collection Practices Act, both class and individual. Decisions in these cases include: Jenkins v. Heintz, 25 F.3d 536 (7th Cir. 1994), aff'd 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995); Johnson v. Revenue Management Corp., 169 F.3d 1057, 1999 U.S. App. LEXIS 3142 (7th Cir. 1999); Keele v. Wexler & Wexler, 1996 U.S.Dist. LEXIS 3253 (N.D.Ill., March 18, 1996) (class), 1995 U.S.Dist. LEXIS 13215 (N.D.Ill. 1995) (merits), aff'd, 149 F.3d 589, 1998 U.S.App. LEXIS 15029 (7th Cir. 1998); Mace v. Van Ru Credit Corp., 109 F.3d 338, 1997 U.S.App. LEXIS 5000 (7th Cir., Mar. 17, 1997); Maguire v. Citicorp Retail Services, Inc., 147 F.3d 232, 1998 U.S.App. LEXIS 16112 (2d Cir. 1998); Young v. Citicorp Retail Services, Inc., 1998 U.S.App. LEXIS 20268 (2d Cir. 1998); Charles v. Lundgren & Assocs., P.C., 119 F.3d 739, 1997 U.S. App. LEXIS 16786 (9th Cir. 1997); Avila v. Rubin, 84 F.3d 222 (7th Cir. 1996), aff'g Avila v. Van Ru Credit Corp., 1995 U.S.Dist. LEXIS 461 (N.D.Ill., Jan. 10, 1995), later opinion, 1995 U.S.Dist. LEXIS 1502 (N.D.Ill., Feb. 6, 1995), later opinion, 1995 U.S.Dist. LEXIS 17117 (N.D.Ill., Nov. 14, 1995); Tolentino v. Friedman, 833 F.Supp. 697 (N.D.Ill. 1993), aff'd in part and rev'd in part, 46 F.3d 645 (7th Cir. 1995); Blakemore v. Pekay, 895 F.Supp.972 (N.D.Ill. 1995); Oglesby v. Rotche, 1993 U.S.Dist. LEXIS 15687 (N.D.Ill., Nov. 4, 1993), later opinion, 1994 U.S.Dist. LEXIS 4866 (N.D.Ill., April 15, 1994); Laws v. Cheslock, 1999 U.S.Dist. LEXIS 3416 (N.D.Ill., Mar. 8, 1999);Davis v. Commercial Check Control, Inc., 1999 U.S. Dist. LEXIS 1682 (N.D.Ill., Feb. 12, 1999); Hoffman v. Partners in Collections, Inc., 1993 U.S.Dist. LEXIS 12702 (N.D.Ill., Sept. 15, 1993); Vaughn v. CSC Credit Services, Inc., 1994 U.S.Dist. LEXIS 2172 (N.D.Ill., March 1, 1994), adopted, 1995 U.S.Dist. LEXIS 1358 (N.D.Ill., Feb. 3, 1995); Beasley v. Blatt, 1994 U.S.Dist. LEXIS 9383 (N.D.Ill., July 14, 1994); Taylor v. Fink, 1994 U.S.Dist. LEXIS 16821 (N.D.Ill., Nov. 23, 1994); Gordon v. Fink, 1995 U.S.Dist. LEXIS 1509 (N.D.Ill., Feb. 7, 1995); Brujis v. Shaw, 876 F.Supp. 198 (N.D.Ill. 1995). Settlements in such cases include Boddie v. Meyer, 93 C 2975 (N.D.Ill.); and Cramer v. First of America Bank Corporation, 93 C 3189 (N.D.Ill.).

21.    Jenkins v. Heintz is a leading decision regarding the liability of attorneys under the Fair Debt Collection Practices Act. I argued it before the Supreme Court and Seventh

8

Circuit. <u>Avila v. Rubin</u> is a leading decision on phony "attorney letters."

      **22.**   **Class action procedure:** Important decisions include <u>Crawford v. Equifax Payment Services, Inc.</u>, 201 F.3d 877 (7th Cir. 2000); <u>Blair v. Equifax Check Services, Inc.</u>, 181 F.3d 832 (7th Cir. 1999); <u>Mace v. Van Ru Credit Corp.</u>, 109 F.3d 338, 344 (7th Cir. 1997); and <u>Gordon v. Boden</u>, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991).

      **23.**   **Bankruptcy:** Cathleen Combs successfully argued the first Court of Appeals case to hold that a bankruptcy debtor induced to pay a discharged debt by means of an invalid reaffirmation agreement may sue to recover the payment. <u>Bessette v. Avco Financial Services</u>, 99-2291 (1st Cir., October 27, 2000).

      **24.**   **Landlord-tenant**: The firm has brought a number of class actions against landlords for failing to pay interest on security deposits or commingling security deposits.

      **25.**   Some of the other reported decisions in our cases include: <u>Elder v. Coronet Ins. Co.</u>, 201 Ill.App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990); <u>Smith v. Keycorp Mtge., Inc.</u>, 151 Bankr. 870 (N.D.Ill. 1992); <u>Gordon v. Boden</u>, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991), leave to appeal denied, 144 Ill.2d 633, 591 N.E.2d 21, cert. denied, U.S. (1992); <u>Armstrong v. Edelson</u>, 718 F.Supp. 1372 (N.D.Ill. 1989); <u>Newman v. 1st 1440 Investment, Inc.</u>, 1993 U.S.Dist. LEXIS 354 (N.D.Ill. 1993); <u>Mountain States Tel. & Tel. Co. v. District Court</u>, 778 P.2d 667 (Colo. 1989); <u>Disher v. Fulgoni</u>, 124 Ill.App.3d 257, 464 N.E.2d 639, 643 (1st Dist. 1984); <u>Harman v. Lyphomed, Inc.</u>, 122 F.R.D. 522 (N.D.Ill. 1988); <u>Haslam v. Lefta, Inc.</u>, 1992 U.S.Dist. LEXIS 3623 (N.D.Ill., March 25, 1994); <u>Source One Mortgage Services Corp. v. Jones</u>, 1994 U.S.Dist. LEXIS 333 (N.D.Ill., Jan. 13, 1994).

      **26.**   Gordon v. Boden is the first decision approving "fluid recovery" in an Illinois class action. <u>Elder v. Coronet Insurance</u> held that an insurance company's reliance on lie detectors to process claims was an unfair and deceptive trade practice.

 

_____
Daniel A. Edelman

EDELMAN, COMBS, LATTURNER
   & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
K:\general\daefee declaration with associates 12 20 05.wpd

9