UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

Docket No.  05-CV-10464PBS

TIMOTHY M. BROWDER,
     Plaintiff

v.

NATIONAL FINANCIAL SYSTEMS,
INC.,
     Defendant

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Defendant National Financial Systems, Inc. ("NFS"), by and through its attorneys, hereby submits this Memorandum in Opposition to Plaintiff Timothy M. Browder's Motion for Class Certification.

## BACKGROUND

Plaintiff Timothy M. Browder ("Mr. Browder" or "Plaintiff") alleges that NFS violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") by sending to him a debt collection letter containing allegedly false and deceptive statements.  Specifically, Mr. Browder alleges that on July 9, 2004, NFS mailed a collection letter to him containing the following statement:

> Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law.

Corrected Amended Complaint, ¶ 14, attached as Exhibit A.  Mr. Browder claims that this statement is false because certain financial institutions report to the IRS only the discharge of indebtedness of $600 or more, not simply the fact of indebtedness. *Id.*, ¶¶ 15-16.

1

Mr. Browder does not, however, allege that he suffered any injuries or actual damages as a result of this purported conduct. Rather, he seeks an award of statutory penalties of $1,000, attorney's fees, costs, and expenses. *Id.*, p. 6; *see also* 15 U.S.C. § 1692k(a) (allowing for the recovery of statutory penalties of $1,000, actual damages, and attorney's fees and costs in individual FDCPA actions). Mr. Browder also seeks to have his lawsuit certified as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of an alleged class of Massachusetts residents to whom NFS sent a collection letter containing the quoted statement between March 10, 2004 and March 30, 2005. Under the FDCPA, the lead plaintiff in a class action can recover $1,000—the same amount that he could recover in an individual action—while recovery to any class is limited to "the lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C. § 1692k(a)(2)(B)(ii).

## STANDARD

Certification can only be granted if the plaintiff shows that each of the four requirements of Federal Rule of Civil Procedure 23(a) plus the two additional requirements of Rule 23(b)(3) have been met. *See Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 325 (D.Mass. 1997) ("The moving party has the burden of demonstrating that all of the prerequisites to certification under Rules 23(a) and 23(b) have been met."). "A district court must conduct a rigorous analysis of the prerequisites established by Rule 23 before certifying a class." *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 38 (1st Cir. 2003). Thus, Mr. Browder has the burden of demonstrating that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; (4) the representative parties will fairly and adequately protect the interests of the class; (5) questions of law or fact

common to the members of the class predominate over any questions affecting only individual members; and (6) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. Pro. 23.

## ARGUMENT

In this case, Plaintiff's Motion for Class Certification should be denied because he has not satisfied Rule 23's requirements.  First, Mr. Browder has failed to meet his burden of demonstrating that he is an adequate representative because he has little incentive to vigorously pursue the interests of the absent class.  Second, a class action is not the superior method of adjudicating these claims because:

- certification of this action as a class would render meaningless the Congressionally imposed statutory cap on class recovery in FDCPA actions;

- certifying this action as a class would substantially limit or entirely eliminate any class recovery; and

- the absent class members have a strong interest in controlling their actions on an individual basis and attempting to recover the $1,000 that they would otherwise be eligible for in an individual action—instead of the de minimis recovery that certification would entail.

## I.
## PLAINTIFF HAS NOT DEMONSTRATED THAT HE IS AN ADEQUATE REPRESENTATIVE

One of the most important prerequisites to certification is that the representative party fairly and adequately represent the interests of the class.  *Key v. Gillette Co.*, 782 F.2d 5, 7 (1st Cir. 1986); Fed. R. Civ. Pro. 23(a)(4).  "This requirement is particularly important because the due process rights of absentee class members may be implicated if they are bound by a final judgment in a suit where they were inadequately represented by the named plaintiff." *Key*, 782 F.2d at 7.  NFS, too, has in interest in ensuring that absent class members are adequately represented—in the event that a class is certified NFS wants to make sure that absent class

3

members are bound by any judgment rendered, something that will not happen if they are inadequately represented. *See, e.g., Hansberry v. Lee*, 311 U.S. 32, 44-46 (1940). Here, Plaintiff has failed to meet his burden of establishing that he is an adequate representative and certification should be denied.

As Plaintiff's counsel has acknowledged, "Mr. Browder does not have any actual damages and the defendant has previously offered him everything or virtually everything he could recover in statutory damages." *See* Nov. 28, 2005, E-mail from Francis Greene to Court-Appointed Mediator Marcellino, attached as Exhibit B.[1] In similar circumstances, courts have refused to certify FDCPA actions because the lead plaintiff has an insufficient incentive to adequately and vigorously represent the class. *See Sonmore v. CheckRite Recovery Servs., Inc.*, 206 F.R.D. 257, 263 (D.Minn. 2001). In *Sonmore*, the two lead plaintiffs succeeded on their summary judgment motions and thus were in a position to immediately recover the same amount of statutory damages that they would recover if they were to pursue the action as representatives of a class. *Id*. The court thus concluded that the plaintiffs were inadequate representative because there were legitimate reasons to question the sufficiency of their incentives to represent absent class members in light of the fact that they stood to recover the same amount—$1,000—regardless of how the absent class members fared. *Id*.

Likewise, here, NFS has offered to Plaintiff "everything or virtually everything he could recover in statutory damages." Exhibit B. Under these circumstances, the outcome of the claims of the putative class matters little to Mr. Browder. The issue in which Mr. Browder has a vested

---

[1] Plaintiff's counsel's e-mail to the court appointed mediator was carbon copied to NFS' attorneys and thus is not a confidential communication under Local Rule 16.4(c)(f), which provides that no "admission, representation, statement, *or other confidential communication* made in setting up or conducting the proceedings not otherwise discoverable or obtainable shall be admissible as evidence or subject to discovery." *Id.* (emphasis added). It is, therefore, appropriate for NFS to draw the Court's attention to it. At any rate, the e-mail only restates undisputed facts—Plaintiff stated in his interrogatory responses that he "does not claim actual damages" and seeks "only statutory damages" on his FDCPA claim. *See* Plaintiff's Answers to Defendant's Interrogatories, No. 17, attached as Exhibit C.

personal interest and an incentive to vigorously litigate—recovery of $1,000 in statutory

damages—has all but been resolved and Mr. Browder now has little or no incentive to vigorously

litigate the claims of absent class members. In fact, Plaintiff's counsel acknowledged as much in

his November 28, 2005 e-mail to the court appointed mediator in which Plaintiff's counsel

requested that Mr. Browder be excused from participating in the mediation:

> In this case, I do not believe that Mr. Browder's presence at or absence from the
> mediation will have much impact on the prospects for settlement. Mr. Browder
> does not have any actual damages and the defendant has previously offered him
> everything or virtually everything he could recover in statutory damages. What
> separates the parties and what will be likely the primary focus of the mediation is
> the recovery for the class and attorney's fees. Mr. Browder has given his
> attorneys full authority to settle the case. In light of this, in light of his medical
> condition, and in light of the likely focus of the mediation, I would respectfully
> ask that he be excused from attending.

*Id.* In other words, Mr. Browder, having been offered all that he stands to recover, has now

turned over to his attorneys the only open issues that remain, namely the award of attorney's fees

and recovery for the purported class. This case underscores what some class actions have

become—vehicles to generate attorney's fees with little or no regard for the absent class

members. Under these circumstances, as in *Sonmore*, there are legitimate reasons to question the

sufficiency of Mr. Browder's incentive to represent the absent class members and to vigorously

pursue the absent class members' interests and Plaintiff's motion for class certification should be

denied.

## II.
## A CLASS ACTION IS NOT THE SUPERIOR METHOD FOR ADJUDICATING THESE CLAIMS

**A.    Certifying this matter as a class action would subvert the Congressionally imposed cap on FDCPA class damages.**

A class action is not the superior method for adjudicating these claims because

certification of this action as a class would subvert the Congressionally imposed cap on class

recovery. This is the second of two virtually identical class actions brought against NFS by a plaintiff represented by Plaintiff's counsel in this matter, each based on the same alleged FDCPA violation. In the first action, *Dagg v. NFS*, (04 CV 3731, N.D. Ill.), the plaintiff brought an FDCPA class action on behalf of Illinois residents who received debt collection letters from NFS containing the same IRS language complained of in this matter.[2] *See Dagg v. NFS*, Defendant's Answer to Second Amended Complaint, attached hereto as Exhibit D; *Dagg v. NFS*, Final Approval Order, attached as Exhibit E. NFS settled the *Dagg* action for the maximum amount allowed under the FDCPA. *See Dagg v. NFS*, Memo. in Support of Final Approval for Class Certification, p. 3, attached as Exhibit F. Plaintiff's attorneys have nevertheless pursued this virtually identical class action against NFS for the very same alleged FDCPA violation that was at issue in *Dagg*.

The primary purpose of the FDCPA provision limiting recovery in class actions to the lesser of $500,000 or one percent of the debt collector's net worth is to protect defendant debt collector. *See Sanders v. Jackson*, 209 F.3d 998, 1002 (7th Cir. 2000). Specifically, the provision ensures that defendant debt collectors are not forced to liquidate their companies in order to satisfy an award of punitive damages in an FDCPA class action. *Id.*; *see also Boggs v. Alto Trailer Sales, Inc.*, 511 F.2d 114, 118 (5th Cir. 1975) (identical provision in Truth in Lending Act designed to protect businesses from catastrophic damage awards). Certification should be denied in this case because allowing Plaintiff's counsel to pursue a second class action against NFS for the very same alleged FDCPA violation—after NFS already settled the first FDCPA class action for the maximum amount allowed—would countenance Plaintiff's counsel's attempt to slowly bleed NFS dry by pursuing serial class actions arbitrarily limited in geographic

---

[2] The Court is empowered to take judicial notice of the pleadings and other materials filed in the *Dagg v. NFS* matter. *See Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.").

6

scope. Moreover, refusal to certify this action as a class would not leave Massachusetts residents without a remedy; as explained below, they would be free to pursue individual actions for up to $1,000 plus actual damages and attorney's fees and costs.

NFS is aware that other courts have refused to read into the FDCPA's cap on class recovery an implicit requirement that any class action be pursued on a nationwide basis or a prohibition on serial class actions. *See Sanders*, 209 F.3d at 1002; *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). NFS, however, does not argue that this action must be certified, if at all, on a nationwide basis or that the FDCPA prohibits such an action. Instead, NFS argues that a class action is not a superior method for adjudicating these claims in light of the fact that NFS has already settled for the maximum class recovery allowed under the FDCPA for the exact same alleged FDCPA violation and that certification would subvert the Congressionally imposed cap on class recovery which is designed to protect debt collectors like NFS from ruinous damages awards.

**B.    Class treatment would substantially limit or completely eliminate the class members' recovery.**

A class action is also not the superior method for adjudicating these claims because class treatment would limit the absent class members to, at best, de minimis recovery—approximately $0.85 each—while those same persons would otherwise be eligible to recover up to $1,000 plus actual damages, attorney's fees and costs in individual actions. In similar circumstances, several courts have refused to certify FDCPA lawsuits as class actions where certification would substantially limit the recovery of the absent class members as compared with what they would otherwise be eligible to recover in individual actions. *See, e.g., Jones v. CBE Group, Inc.*, 215 F.R.D. 558, 570 (D.Minn. 2003) (denying certification of FDCPA class because potential recovery for absent class members would be, at best, de minimis); *Sonmore*, 206 F.R.D. at 265

7

(denying certification of FDCPA class because certification of such a class "would ensure de minimis monetary recovery for class members, which constitutes a substantial reduction in what class members may otherwise be entitled by pursuing their claims individually"); *Lyles v. Rosenfeld Attorney Network*, No. 199CV322-D-A, 2000 WL 798824, *6 (N.D.Miss. May 17, 2000) (holding that an FDCPA class would not be superior to other methods of adjudicating the claims because of "the sharp reduction in monetary damages class members would potentially receive" in a class action versus in individual actions); *Lewis v. Riddle*, No. 97-0542, 1998 U.S. Dist. LEXIS 20465, *24-*25 (W.D.La. Nov. 18, 1998) (denying certification of proposed FDCPA class and stating: "After it is all said and done several people who wrote bad checks will each receive a check that might be enough to buy lunch. Will they feel vindicated? More likely, they will be angered at the fact that the attorney's fees at issue are thousands of times the amount of their paltry compensation.").

As noted above, class recovery under the FDCPA is capped at the lesser of $500,000 or one percent of NFS' net worth. *See* 15 U.S.C. § 1692k(a)(2)(B)(ii). Here, NFS' net worth as of December 31, 2005 was approximately $296,902, *see* Affidavit of Nick Keda, attached as Exhibit G, so the total amount that the class stands to recover is approximately $2,969. Further, NFS has identified approximately 3,504 persons that would be included in the class as defined by Plaintiff. *See* Affidavit of Bruce Nardy, attached as Exhibit H. Thus, the maximum that each absent class member could recover if this matter is certified is $0.85—a tiny fraction of the $1,000 plus actual damages, attorney's fees and costs that the absent class members would otherwise be eligible to recover in individual actions—which counsels against certification. *Cf. Sonmore*, 206 F.R.D. at 265 (class action was not superior where potential award of $25 to each

absent class member was "shockingly low when compared to the statutory damages of up to $1,000 that each class member may be eligible to receive in an individual suit").

Moreover, if this matter is certified, NFS intends to seek a setoff from any recovery paid to the class based on the underlying debt the absent class members owe—potentially eliminating any class recovery altogether. Here, the amount that the putative class members owe on the underlying debt exceeds the total amount that the class could recover if this matter is certified. *See* Affidavit of David Hernandez, ¶ 3, attached as Exhibit I. Thus, if this matter is certified and NFS is successful in its effort to obtain a setoff from the class, absent class members would, on average, recover *nothing*. Clearly, the individual adjudication of these claims—where the absent class members would be eligible to recover up to $1,000 plus actual damages—would be superior to class treatment because individual adjudications would at least give the absent class members an opportunity to recover *something*.

**C.     A class action is not superior because absent class members have adequate incentive to pursue individual actions and a strong interest in controlling the prosecution of their own actions.**

Finally, a class action is also not the superior method for adjudicating these claims because any efficiency interests touted by Plaintiff are outweighed by the strong interest class members have in individually controlling the prosecution of their claims. *See* Fed. R. Civ. Pro. 23(b)(3)(A) (directing a court to inquire into, among other things, "the interest of members of the class in individually controlling the prosecution or defense of separate actions" to determine whether a class is superior). Plaintiff relies on several cases in which courts certified non-FDCPA class actions because the amount that each individual class member could recover was small, thus making it unlikely that an individual would ever pursue a claim for the small amount. *See* Plaintiff's Motion, pp. 8-9, *citing Carnegie v. Household Internat'l, Inc.*, 376 F.3d 656, 660-

9

61 (7th Cir. 2004) (affirming certification of RICO class action under which class members would have recovered $15 to $ 30 because the "alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30"); *Lake v. First Nationwide Bank*, 156 F.R.D. 615, (E.D.Pa. 1994) (approving settlement of Real Estate Settlement Procedures Act claim because amount that the class could recover was relatively small and individuals would be unlikely to pursue such a small claim or be able to retain an attorney to bring an action for such a small amount).

Those cases do not control here because, in contrast to the non-FDCPA actions at issue in those cases, Congress has provided adequate incentive to individuals to pursue their claims by allowing for the award of up to $1,000 in statutory penalties and the recovery of attorney's fees and costs. *See* 15 U.S.C. § 1692k(a); *see also Jones*, 215 F.R.D. at 570 ("There is no lack of incentive for either plaintiffs or counsel to pursue individual FDCPA actions" because the FDCPA "provides for actual damages, statutory damages of $1,000 plus costs and attorney's fees."). In fact, due to the enormous disparity in the amount that an individual plaintiff is eligible to recover and the amount that he or she would receive if this class were certified, "the interest of class members in individually controlling the prosecution of their claims prevails over any efficiency objectives that may be achieved through management of the litigation as a class action." *See Sonmore*, 206 F.R.D. at 265-66; *see also Lyles*, 2000 WL 798824, at *7 ("[T]he members of this putative class have a strong interest in individually controlling the prosecution of their own individual actions so as to maximize their individual recovery."); *but see Pettway v. Harmon Law Offices, P.C.*, No. 03-CV-10932-RGS, 2005 U.S. Dist. LEXIS 21341, *35-36 (D.Mass. Sep. 27, 2005) (certifying class action which included sub-class of FDCPA claimants

and stating that the "claims of each class member are too small to give an incentive to individual members of the class to pursue separate claims.").

## **CONCLUSION**

For the foregoing reasons, NFS requests that this Court deny Plaintiff's Motion for Class Certification.

Respectfully submitted,

NATIONAL FINANCIAL SYSTEMS INC.

By:  s/ Michael G. Salemi
         One of Its Attorneys

Steven S. Broadley, BBO #542305
POSTERNAK BLANKSTEIN & LUND, LLP
Prudential Tower
800 Boylston Street, 32nd Floor
Boston, MA  02199-8004
617-973-6100

*Pro Hac Vice*
Albert E. Fowerbaugh, Jr. (6201219)
Michael G. Salemi (6279741)
LORD BISSELL & BROOK LLP
115 South La Salle Street
Chicago, IL 60603
Tel.: (312) 443-0323 (M. Salemi)
Fax: (312) 896-6323 (M. Salemi)

CHI1 1172634v4

## CERTIFICATE OF SERVICE

I Michael G. Salemi, Esquire of Lord Bissell & Brook LLP, hereby certify that a true copy of the above document was served upon the attorney of record for each other party at the addresses below by mail on February 28, 2006.

Daniel A. Edelman, Esquire
Francis R. Greene, Esquire
Edelman, Combs, Latturner & Goodwin, LLC
120 S. LaSalle Street, 18th Floor
Chicago, IL  60603-3403

Christopher M. Lefebvre, Esquire
Law Offices of Claude Lefebvre & Sons
Two Dexter Street
Pawtucket, RI  02860

12

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

TIMOTHY M. BROWDER,          )
                              )     1:05cv10464
            Plaintiff,        )
                              )     Judge Saris
          v.              )
                              )
NATIONAL FINANCIAL SYSTEMS, INC.,  )
                              )
            Defendant.     )

## CORRECTED AMENDED COMPLAINT – CLASS ACTION

### INTRODUCTION

1.      Plaintiff Timothy M. Browder brings this action against a debt collector, National Financial Systems, Inc. ("NFS"), to recover damages for violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDPCA"), and state law.

### JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 1367 (supplemental jurisdiction), and 15 U.S.C. §1692k (FDCPA).

3.      Venue and personal jurisdiction over defendant in this District is proper because:

      a.      Plaintiff resides here;

      b.      Defendant has offices here;

      c.      Defendant's collection communications to plaintiff and numerous others were transmitted into the District.

### PARTIES

4.      Plaintiff Timothy M. Browder is a resident of Chestnut Hill, MA.

5.      Defendant National Financial Systems, Inc. ("NFS") is a corporation with offices at 600 W. John Street, Hicksville, NY 11801.

1

6.     NFS operates a collection agency.

7.     NFS is a debt collector as defined in the FDCPA.

8.     NFS does business in Massachusetts. It maintains offices at 5230 Washington Street, West Roxbury, MA 02132.

9.     NFS is the same entity involved in United States v. National Financial Systems, Inc., Civil Action No. CV-990-7874 (E.D.N.Y.), an action brought at the instance of the Federal Trade Commission to enforce the FDCPA, wherein it signed a consent judgment.

## FACTS

10.     On or about July 9, 2004, NFS mailed plaintiff a collection letter, attached as Exhibit A.

11.     Exhibit A sought to collect a credit card debt allegedly owed to Citicorp.

12.     Plaintiff incurred the alleged debt for personal, family or household purposes.

13.     Exhibit A is a form letter.

14.     Exhibit A states on the reverse: "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law."

15.     The quoted statement is false.

16.     In fact, certain financial institutions are required to file a 1099 information return with the IRS if they *discharge* indebtedness in the principal amount of $600 or more.

17.     The applicable IRS regulation, 26 C.F.R. §1.6050P-1(a)(1), provides: "Except as provided in paragraph (d) of this section, any applicable financial entity (as defined in section 6050P(c)(1)) that discharges an indebtedness of any person (within the meaning of section 7701(a)(1)) of at least $ 600 during a calendar year must file an information return on Form 1099-C with the Internal Revenue Service."

18.     The requirement that the discharge of indebtedness must be reported does not necessarily mean that the amount discharged represents income.

2

19.    26 C.F.R. §1.6050P-1(a)(3) provides that "Except as otherwise provided in this section, discharged indebtedness must be reported regardless of whether the debtor is subject to tax on the discharged debt under sections 61 and 108 or otherwise by applicable law."

20.    Debts which the holder is actively seeking to collect through placement with a collection agency such as NFS or otherwise are, by definition, *not* discharged.

21.    26 C.F.R. §1.6050P-1(b)(2)(iv)  creates a presumption that indebtedness has been discharged if the creditor has not received a payment for 36 months, but that presumption is rebutted "if the creditor (or a third-party collection agency on behalf of the creditor) has engaged in significant, bona fide collection activity" and by "the sale or packaging for sale of the indebtedness by the creditor."

22.    The discharge of indebtedness in the principal amount of $600 or more is not taxable income if the debtor is insolvent, or if the debt is disputed, or if the discharge occurs in bankruptcy.  A large proportion of uncollectible consumer debt falls into one or more of these three categories.

23.    The NFS letter also states that the quoted statement "is based on the sender's research and experience in working with these issues," suggesting that NFS  knows about the tax consequences of not paying debts.

24.    NFS regularly includes the quoted language in collection letters, as shown by Exhibits B-G, attached.

25.    NFS sent Exhibit A about 5 weeks after it had been sued in the Northern District of Illinois for the same violation, on May 28, 2004, and served with process in that action, on June 2, 2004.  NFS thus was on notice that it was violating the law, and chose to continue the conduct in question.

26.    NFS does not in fact report the existence of indebtedness over $600 to the IRS as taxable income.  Neither do its clients.

3

## COUNT I -- FDCPA

27.    Plaintiff incorporates paragraphs 1-26.

28.    The inclusion of the quoted statements on Exhibit A is deceptive, false, and

misleading, and violates 15 U.S.C. §§1692e, 1692e(2), 1692e(5), and 1692e(10).

29.    Section 1692e provides:

§ 1692e.        **False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(2)    The false representation of--**

**(A)    the . . . legal status of any debt . . . .**

**(5)    The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**

**(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

### CLASS ALLEGATIONS

30.    Plaintiff brings this claim on behalf of a class. The class consists of (i) all

natural persons with Massachusetts addresses, (ii) to whom NFS sent a letter stating "Any

indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal

Revenue Code 6050(p) and related federal law", (iii) on or after a date one year prior to the filing

of this action, (iv) and prior to 20 days after this action is filed.

31.    The class is so numerous that joinder of all members is impracticable.

32.    Exhibit A is a form letter, as evidenced by the bar coded address and account

number assigned by NFS.

33.    Other examples of NFS letters containing the language complained of, mailed

to putative debtors in various parts of the United States, and with personal information redacted, are

in Exhibits B-G.

4

| Date | NFS Number | Exhibit |
|------|------------|---------|
| 8/8/03 | 40851679-2-5A | C |
| 9/9/03 | 44061287-2-C3 | D |
| 10/14/03 | 44788263-1-2X | E |
| 2/20/04 | 46119092-3-EC | B |
| 3/31/04 | 46734182-3-2A | F |
| 4/14/04 | 46938342-2-HB | G |
| 7/9/04 | 47890799-3-6M | A |

34.    On information and belief, the NFS numbers are applied to new accounts sent to it for collection sequentially, and NFS sends thousands of letters, all containing the statement complained of, each year.

35.    On information and belief, there are more than 50 members of the class defined herein.

36.    There are questions of law and fact common to the class members, which questions predominate over any questions affecting only individual class members. The principal question is whether the quoted statement in NFS' letter violates the FDCPA.

37.    Plaintiff will fairly and adequately represent the members of the class. Plaintiff has retained counsel experienced in the prosecution of class actions and consumer credit claims.

38.    A class action is superior for the fair and efficient adjudication of this matter, in that:

a.    Defendant has inflicted similar injuries to a large number of persons through a single course of conduct;

b.    Individual actions are not economical;

c.    Debtors may not realize that NFS' statement is false;

d.    Congress contemplated class actions as a means of enforcing the

5

FDCPA.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of the plaintiff and the class members and against defendant for:

        (1)     Statutory damages;

        (2)     Attorney's fees, litigation expenses and costs of suit;

        (3)     Such other or further relief as the Court deems proper.

## COUNT II – MASS. G.L., CH. 93A

39.    Plaintiff incorporates paragraphs 1-26.

40.    The inclusion of the quoted statements on Exhibit A is deceptive, false, and misleading, and violates 15 U.S.C. §§1692e, 1692e(2), 1692e(5), and 1692e(10).

41.    The violation of the FDCPA is also a violation of Mass. G.L., ch. 93A, §9.

## CLASS ALLEGATIONS

42.    Plaintiff brings this claim on behalf of a class. The class consists of (i) all natural persons with Massachusetts addresses, (ii) to whom NFS sent a letter stating "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law", (iii) on or after a date 4 years prior to the filing of this action, (iv) and prior to 20 days after this action is filed.

43.    The class is so numerous that joinder of all members is impracticable.

44.    Exhibit A is a form letter, as evidenced by the bar coded address and account number assigned by NFS.

45.    Other examples of NFS letters containing the language complained of, mailed to putative debtors in various parts of the United States, and with personal information redacted, are in Exhibits B-G.

| Date | NFS Number | Exhibit |
|------|------------|---------|
| 8/8/03 | 40851679-2-5A | C |
| 9/9/03 | 44061287-2-C3 | D |

| 10/14/03 | 44788263-1-2X | E |
| 2/20/04 | 46119092-3-EC | B |
| 3/31/04 | 46734182-3-2A | F |
| 4/14/04 | 46938342-2-HB | G |
| 7/9/04 | 47890799-3-6M | A |

46.    On information and belief, the NFS numbers are applied to new accounts sent to it for collection sequentially, and NFS sends thousands of letters, all containing the statement complained of, each year.

47.    On information and belief, there are more than 50 members of the class defined herein.

48.    There are questions of law and fact common to the class members, which questions predominate over any questions affecting only individual class members. The principal question is whether the quoted statement in NFS' letter violates the FDCPA and Mass. G.L., ch. 93A, §9.

49.    Plaintiff will fairly and adequately represent the members of the class. Plaintiff has retained counsel experienced in the prosecution of class actions and consumer credit claims.

50.    A class action is superior for the fair and efficient adjudication of this matter, in that:

a.    Defendant has inflicted similar injuries to a large number of persons through a single course of conduct;

b.    Individual actions are not economical;

c.    Debtors may not realize that NFS' statement is false.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of the plaintiff and the class members and against defendant for:

(1)    Statutory damages of $25 per letter, trebled to $75;

7

(2)    Attorney's fees, litigation expenses and costs of suit;

(3)    Such other or further relief as the Court deems proper.


Respectfully submitted,


_s/ Daniel A. Edelman_
Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS,
LATTURNER & GOODWIN, LLC
120 S. LaSalle St., Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379


Christopher M. Lefebvre
LAW OFFICES OF CLAUDE
LEFEBVRE & SONS
Two Dexter Street
Pawtucket, RI 02860
(401) 728-6060
(401) 728-6534 (FAX)
B.B.O. # 629056


## JURY DEMAND


Plaintiff demands trial by jury.


_s/ Daniel A. Edelman_
Daniel A. Edelman


j:\case\national12 528\pleading\correctamdcmplt.wpd


8

# EXHIBIT A

*FROM:*
600 W JOHN ST
P.O. BOX 9041
HICKSVILLE NY 11802-9041

3 3 68
229698



NATIONAL
FINANCIAL
SYSTEMS, INC.

5230 WASHINGTON STREET, WEST ROXBURY, MA 02132
Phone: (800) 568-2733/(516) 932-1400    Fax: (516) 932-8828
Date: JULY 9, 2004
**AMOUNT DUE: $9731.63**

Return Service Requested

 47890799-3-6M

|||...||.|.|.||.|.|..|..||..||.|.|.||.|...||.||.|.|.|
**************AUTO**MIXED AADC 117
BROWDER, TIMOTHY M
163 GERRY RD
CHESTNUT HILL MA 02467-3185

47890799-3-6M

|..||..||.|.|.||.|...||.|.|.||..|.|..|.||.|.||
NATIONAL FINANCIAL SYSTEMS
600 W JOHN ST
P.O. BOX 9041
HICKSVILLE NY 11802-9041

**Please detach and return with payment.**

```
        THIS ACCOUNT HAS BEEN PLACED WITH OUR OFFICE FOR THE PURPOSE OF COLLECTING THE AMOUNT
                                         LISTED BELOW.

    UNLESS YOU NOTIFY THIS OFFICE WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE
      THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THE DEBT IS
      VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30 DAYS FROM RECEIVING THIS NOTICE,
      THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGMENT AND MAIL
     YOU A COPY OF SUCH JUDGMENT OR VERIFICATION. IF YOU REQUEST THIS OFFICE IN WRITING WITHIN
       30 DAYS AFTER RECEIVING THIS NOTICE, THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND
           ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

                       IF YOU WISH TO DISCUSS THIS DEMAND FOR PAYMENT.
```

NOTICE OF IMPORTANT RIGHTS
YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING
YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE
VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST
POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS
REQUEST BY WRITING THE COLLECTION AGENCY.

*NATIONAL FINANCIAL SYSTEMS, INC. 600 W JOHN ST, P.O.BOX 9046 / HICKSVILLE, NY 11801-1040*
5230 WASHINGTON STREET, WEST ROXBURY, MA 02132
CALL TOLL FREE 1 (800) 411-1332
MON THRU THUR 8:00AM TO 9:00PM/FRI 8:00AM TO 5:00PM/SAT 8:00AM TO NOON EST
THIS IS A DEBT COLLECTION AGENCY
*PLEASE SEE OTHER SIDE FOR IMPORTANT INFORMATION*
THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.

7/9/04

FOR: BANK NNBF

BF   DER, TIMOTHY M
16.  _RRY RD
CHESTNUT HILL MA 02467-3185

Re: **YOUR ACCOUNT WITH OUR CLIENT:**
**CITICORP MASTERCARD**
ACCT# :5424180377946972
PRINCIPAL : $9731.63
CHARGES : $.00
AMOUNT DUE : $9731.63

NFS01
229698

To Residents in:

COLORADO:
FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE
WWW.AGO.STAT.CO.US/CAB.HTM.

MINNESOTA:
This collection agency is licensed by the Minnesota Department of Commerce.

NEW YORK CITY:
New York City Department of Consumer Affairs license number 0808844.

NORTH CAROLINA:
North Carolina collection agency permit number 3254.

THIS INFORMATION IS NOT INTENDED AS LEGAL ADVICE AND SHOULD NOT BE USED TO REPLACE THE
ADVISE OF YOUR OWN LEGAL COUNSEL. ANY INFORMATION CONTAINED IN THIS TRANSMISSION IS BASED
ON THE SENDER'S RESEARCH AND EXPERIENCE IN WORKING WITH THESE ISSUES.

Collection agencies must comply with a federal law that provides you with certain rights,
including the right to have us stop communicating with you, if you make the request in
writing to: National Financial Systems, Inc. This law is administered by the Federal
Trade Commission, One Bowling Green, Third Floor, New York, NY 10004.

For inquiries, call 1-866-463-5443 1:00 pm - 3:00 pm est Monday - Thursday.

Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant
to Internal Revenue Code 6050 (P) and related federal law.

# EXHIBIT B

600 W JOHN ST
P.O. BOX 9046
HICKSVILLE NY 11801

**NFS** NATIONAL
FINANCIAL
SYSTEMS, INC.

February 20, 04

Phone: (516) 932-1400     Fax: (516) 932-8828

AMOUNT DUE:     $24,401.28



46119092-3-EF

LOUGHLIN, SHARON
8 MUIRFIELD CT
LAKE IN THE HILLS IL 60156-6354

NATIONAL FINANCIAL SYSTEMS
600 W JOHN ST
P.O. BOX 9046
HICKSVILLE NY 11801

46119092-3-EF

---

PLEASE DETACH AND RETURN WITH PAYMENT

---

THIS ACCOUNT HAS BEEN PLACED IN OUR OFFICE FOR THE PURPOSE OF COLLECTING THE AMOUNT
LISTED.

UNLESS YOU NOTIFY THIS OFFICE WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU
DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME
THIS DEBT IS VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30 DAYS FROM
RECEIVING THIS NOTICE, THIS OFFICE WILL: OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A
COPY OF A JUDGEMENT AND MAIL YOU A COPY OF SUCH JUDGMENT OR VERIFICATION. IF YOU
REQUEST THIS OFFICE IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE, THIS
OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF
DIFFERENT FROM THE CURRENT CREDITOR.

IF PAYMENT IS NOT MADE, COLLECTION EFFORTS AS WELL AS INTEREST WILL CONTINUE.

*NATIONAL FINANCIAL SYSTEMS, INC.    600 W JOHN ST, P.O. BOX 9046 / HICKSVILLE, NY 11801-1040*

CALL TOLL FREE 1 (800) 411-1332
MON THRU THUR 8:00AM TO 9:00PM/FRI 8:00AM TO 5:00PM/SAT 8:00AM TO NOON EST

### THIS IS A DEBT COLLECTION AGENCY
*PLEASE SEE OTHER SIDE FOR IMPORTANT INFORMATION*
## THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION
## OBTAINED WILL BE USED FOR THAT PURPOSE.

---

2/20/04

FOR: BANK NNW2

LOUGHLIN, SHARON
8 MUIRFIELD CT
LAKE IN THE HILLS IL 60156
24

RE: YOUR ACCOUNT WITH OUR CLIENT
CITCORP MASTERCARD

ACCT #:     ~~redacted~~

PRINCIPAL:     $24,401.28
CHARGES:     $0.00
AMOUNT DUE:     $24,401.28

To Residents in:

COLORADO:
FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE
WWW.AGO.STAT.CO.US/CAB.HTM.

MINNESOTA:
This collection agency is licensed by the Minnesota Department of Commerce.

NEW YORK CITY:
New York City Department of Consumer Affairs license number 0803844.

NORTH CAROLINA:
North Carolina collection agency permit number 3254.

THIS INFORMATION IS NOT INTENDED AS LEGAL ADVICE AND SHOULD NOT BE USED TO
REPLACE THE ADVISE OF YOUR OWN LEGAL COUNSEL   ANY INFORMATION CONTAINED IN
THIS TRANSMISSION IS BASED ON THE SENDER'S RESEARCH AND EXPERIENCE IN
WORKING WITH THESE ISSUES.

Collection agencies must comply with a federal law that provides you with
certain rights, including the right to have us stop communicating with you,
if you make the request in writing to: National Financial Systems, Inc.
This law is administered by the Federal Trade Commission, One Bowling Green,
Third Floor, New York, NY 10004.

For inquiries, call 1-866-463-5443 1:00 pm - 3:00 pm est Monday - Thursday

Any indebtedness of $500.00 or more may be reported to the IRS as taxable
income pursuant to Internal Revenue Code 6050 (P) and related federal law.

# EXHIBIT C

600 W JOHN ST
P O. BOX 9046
HICKSVILLE NY 11801



NATIONAL
FINANCIAL
SYSTEMS, INC.

August 08, 03

Phone: (516) 932-1400      Fax: (516) 932-8828

AMOUNT DUE:        $761.24

  40851679-2-5A

BALTIMORE MD 21213-1409

Լᴵᴵᴵᴵᴵᴵᴵᴵᴵᴵᴵᴵᴵᴵᴵᴵᴵᴵᴵ

40851679-2-5A
NATIONAL FINANCIAL SYSTEMS
600 W JOHN ST
P.O. BOX 9046
HICKSVILLE NY 11801

Լᴵᴵᴵᴵᴵᴵᴵᴵᴵᴵᴵᴵᴵᴵᴵᴵᴵᴵᴵ

---

### PLEASE DETACH AND RETURN WITH PAYMENT

WE ARE DELIGHTED TO BE ABLE TO OFFER YOU THIS TREMENDOUS SAVINGS ... BUT YOU MUST
TAKE ADVANTAGE OF THIS SPECIAL SITUATION BEFORE 08/30/03.

NFS CAN **SETTLE YOUR ACCOUNT-IN-FULL** AT 75% OF THE TOTAL DUE IF WE
RECEIVE $570.00 BY 08/30/03, SAVING YOU AN UNBELIEVABLE SUM.

DON'T DELAY!!
SEND YOUR SETTLEMENT PAYMENT OR CALL US NOW.
REMEMBER THE DEADLINE DATE AND USE OUR TOLL FREE NUMBER.

*NATIONAL FINANCIAL SYSTEMS, INC.    600 W JOHN ST, P.O.BOX 9046 / HICKSVILLE, NY 11801-1040*

CALL TOLL FREE 1 (800) 765-2733

MON THRU THUR 8:00AM TO 9:00PM/FRI 8:00AM TO 5:00PM/SAT 8:00AM TO NOON EST

### THIS IS A DEBT COLLECTION AGENCY

*PLEASE SEE OTHER SIDE FOR IMPORTANT INFORMATION*

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.

---

8/8/03

FOR:

BALTIMORE MD 21213
17

RE: YOUR ACCOUNT WITH OUR CLIENT
5 STAR BANK

| | |
|---|---|
| ACCT #: | |
| PRINCIPAL: | $761.24 |
| CHARGES: | $0.00 |
| AMOUNT DUE: | $761.24 |



To Residents in:

COLORADO:
FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE
WWW.AGO.STAT.CO.US/CAP.HTM.

MINNESOTA:
This collection agency is licensed by the Minnesota Department of Commerce.

NEW YORK CITY:
New York City Department of Consumer Affairs license number 0808844.

NORTH CAROLINA:
North Carolina collection agency permit number 7254.

THIS INFORMATION IS NOT INTENDED AS LEGAL ADVICE AND SHOULD NOT BE USED TO
REPLACE THE ADVISE OF YOUR OWN LEGAL COUNSEL.  ANY INFORMATION CONTAINED IN
THIS TRANSMISSION IS BASED ON THE SENDER'S RESEARCH AND EXPERIENCE IN
WORKING WITH THESE ISSUES.

Collection agencies must comply with a federal law that provides you with
certain rights, including the right to have us stop communicating with you,
if you make the request in writing to: National Financial Systems, Inc.
This law is administered by the Federal Trade Commission, One Bowling Green,
Third Floor, New York, NY 10004

Any indebtedness of $600.00 or more may be reported to the IRS as taxable
income pursuant to Internal Revenue Code 6050 (P) and related federal law.

# EXHIBIT D

600 W JOHN ST
P.O. BOX 9046
HICKSVILLE NY 11801



NATIONAL
FINANCIAL
SYSTEMS, INC.

September 09, 03

Phone: (516) 932-1400    Fax: (516) 932-8828

AMOUNT DUE:    $13,867.53

 44061287-2-C3

DAYTON OH 45431-2834

 44061287-2-C3

NATIONAL FINANCIAL SYSTEMS
600 W JOHN ST
P.O. BOX 9046
HICKSVILLE NY 11801

---

PLEASE DETACH AND RETURN WITH PAYMENT

THIS LETTER REPRESENTS A *** 65% SETTLEMENT-IN-FULL ***OFFER

WE ARE DELIGHTED TO BE ABLE TO OFFER YOU THIS TREMENDOUS SAVINGS. IN ORDER TO TAKE
ADVANATAGE OF THIS SPECIAL OFFER YOU MUST CONTACT US IMMEDIATELY AT 1-800-568-2733.

NFS CAN **SETTLE YOUR ACCOUNT-IN-FULL** AT 65% OF THE TOTAL DUE, SAVING YOU AN
UNBELIEVABLE SUM.
DON'T DELAY !!
SEND YOUR SETTLEMENT PAYMENT OR CALL US RIGHT NOW!!

IF PAYMENT IS NOT MADE, COLLECTION EFFORTS AS WELL AS INTEREST WILL CONTINUE.
*NATIONAL FINANCIAL SYSTEMS, INC.    600 W JOHN ST, P.O.BOX 9046 / HICKSVILLE, NY 11801-1040*

CALL TOLL FREE 1 (800) 765-2733
MON THRU THUR 8:00AM TO 9:00PM/FRI 8:00AM TO 5:00PM/SAT 8:00AM TO NOON EST
THIS IS A DEBT COLLECTION AGENCY
*PLEASE SEE OTHER SIDE FOR IMPORTANT INFORMATION*
THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.

---

9/9/03

FOR: BANK NNW2



DAYTON OH 45431
52

RE: YOUR ACCOUNT WITH OUR CLIENT
CITCORP MASTERCARD

ACCT #:

PRINCIPAL:    $13,576.38
CHARGES:    $291.15
AMOUNT DUE:    $13,867.53

To Residents in:

COLORADO:
FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE
WWW.AGO.STAT.CO.US/CAB.HTM.

MINNESOTA:
This collection agency is licensed by the Minnesota Department of Commerce.

NEW YORK CITY:
New York City Department of Consumer Affairs license number 0808544.

NORTH CAROLINA:
North Carolina collection agency permit number 3254.

THIS INFORMATION IS NOT INTENDED AS LEGAL ADVICE AND SHOULD NOT BE USED TO
REPLACE THE ADVISE OF YOUR OWN LEGAL COUNSEL.  ANY INFORMATION CONTAINED IN
THIS TRANSMISSION IS BASED ON THE SENDER'S RESEARCH AND EXPERIENCE IN
WORKING WITH THESE ISSUES.

Collection agencies must comply with a federal law that provides you with
certain rights, including the right to have us stop communicating with you,
if you make the request in writing to: National Financial Systems, Inc.
This law is administered by the Federal Trade Commission, One Bowling Green,
Third Floor, New York, NY 10004.

Any indebtedness of $600.00 or more may be reported to the IRS as taxable
income pursuant to Internal Revenue Code 6050 (P) and related federal law.



# EXHIBIT E

600 W JOHN ST
P.O. BOX 9046
HICKSVILLE NY 11801



NATIONAL
FINANCIAL
SYSTEMS, INC.

October 14, 03

Phone: (516) 932-1400     Fax: (516) 932-8828

AMOUNT DUE:     $5,982.03

44788263-1-2X

SAN ANTONIO TX 78245-1529

44788263-1-2X

NATIONAL FINANCIAL SYSTEMS
600 W JOHN ST
P.O. BOX 9046
HICKSVILLE NY 11801

---

PLEASE DETACH AND RETURN WITH PAYMENT

---

THIS ACCOUNT HAS BEEN PLACED WITH OUR OFFICE FOR THE PURPOSE OF COLLECTING THE
AMOUNT LISTED BELOW.

UNLESS YOU NOTIFY THIS OFFICE WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU
DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME
THIS DEBT IS VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30 DAYS FROM
RECEIVING THIS NOTICE, THIS OFFICE WILL: OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A
COPY OF A JUDGEMENT AND MAIL YOU A COPY OF SUCH JUDGMENT OR VERIFICATION. IF YOU
REQUEST THIS OFFICE IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE, THIS
OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF
DIFFERENT FROM THE CURRENT CREDITOR.

IF YOU WISH TO DISCUSS THIS DEMAND FOR PAYMENT.

IF PAYMENT IS NOT MADE, COLLECTION EFFORTS AS WELL AS INTEREST WILL CONTINUE.
NATIONAL FINANCIAL SYSTEMS, INC.   600 W JOHN ST, P.O.BOX 9046 / HICKSVILLE, NY 11801-1040

CALL TOLL FREE 1 (800) 568-2733
MON THRU THUR 8:00AM TO 9:00PM/FRI 8:00AM TO 5:00PM/SAT 8:00AM TO NOON EST
THIS IS A DEBT COLLECTION AGENCY .
PLEASE SEE OTHER SIDE FOR IMPORTANT INFORMATION
THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.

---

10/14/03

FOR: BANK NNH1



SAN ANTONIO TX 78245
37

RE: YOUR ACCOUNT WITH OUR CLIENT
CITICORP UNIVERSAL MASTERCRD

| ACCT #: | |
|---|---|
| PRINCIPAL: | $5,982.03 |
| CHARGES: | $0.00 |
| AMOUNT DUE: | $5,982.03 |

To Residents in:

COLORADO:
FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE
WWW.AGO.STAT.CO.US/CAB.HTM.

MINNESOTA:
This collection agency is licensed by the Minnesota Department of Commerce.

NEW YORK CITY:
New York City Department of Consumer Affairs license number 0808844.

NORTH CAROLINA:
North Carolina collection agency permit number 3254.

THIS INFORMATION IS NOT INTENDED AS LEGAL ADVICE AND SHOULD NOT BE USED TO
REPLACE THE ADVISE OF YOUR OWN LEGAL COUNSEL.  ANY INFORMATION CONTAINED IN
THIS TRANSMISSION IS BASED ON THE SENDER'S RESEARCH AND EXPERIENCE IN
WORKING WITH THESE ISSUES.

Collection agencies must comply with a federal law that provides you with
certain rights, including the right to have us stop communicating with you,
if you make the request in writing to: National Financial Systems, Inc.
This law is administered by the Federal Trade Commission, One Bowling Green,
Third Floor, New York, NY 10004.

For inquiries, call 1-866-463-5443 1:00 pm - 3:00 pm est Monday - Thursday.

Any indebtedness of $600.00 or more may be reported to the IRS as taxable
income pursuant to Internal Revenue Code 6050 (P) and related federal law.

# EXHIBIT F

600 W JOHN ST
P.O. BOX 9046
HICKSVILLE NY 11801



**NATIONAL
FINANCIAL
SYSTEMS, INC.**

March 31, 04

Phone: (516) 932-1400     Fax: (516) 932-8828

AMOUNT DUE:     $1,511.26

  46734182-3-2A


BATH PA 18014-2155

 46734182-3-2A
NATIONAL FINANCIAL SYSTEMS
600 W JOHN ST
P.O. BOX 9046
HICKSVILLE NY 11801

---

PLEASE DETACH AND RETURN WITH PAYMENT

---

THIS ACCOUNT HAS BEEN PLACED IN OUR OFFICE FOR THE PURPOSE OF COLLECTING THE AMOUNT
LISTED.

UNLESS YOU NOTIFY THIS OFFICE WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU
DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME
THIS DEBT IS VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30 DAYS FROM
RECEIVING THIS NOTICE, THIS OFFICE WILL: OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A
COPY OF A JUDGEMENT AND MAIL YOU A COPY OF SUCH JUDGMENT OR VERIFICATION. IF YOU
REQUEST THIS OFFICE IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE, THIS
OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF
DIFFERENT FROM THE CURRENT CREDITOR.

IF PAYMENT IS NOT MADE, COLLECTION EFFORTS AS WELL AS INTEREST WILL CONTINUE.

*NATIONAL FINANCIAL SYSTEMS, INC.  600 W JOHN ST, P.O.BOX 9046 / HICKSVILLE, NY 11801-1040*

CALL TOLL FREE 1 (800) 411-1332
MON THRU THUR 8:00AM TO 5:00PM/FRI 8:00AM TO 5:00PM/SAT 8:00AM TO NOON EST
THIS IS A DEBT COLLECTION AGENCY
*PLEASE SEE OTHER SIDE FOR IMPORTANT INFORMATION*
THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.

---

3/31/04

FOR: BANK NNW2


BATH PA 18014
24

RE: YOUR ACCOUNT WITH OUR CLIENT
CITCORP MASTERCARD

ACCT #:

| | |
|---|---|
| PRINCIPAL: | $1,511.26 |
| CHARGES: | $0.00 |
| AMOUNT DUE: | $1,511.26 |



To Residents in:

COLORADO:
FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE
WWW.AGO.STAT.CO.US/CAR.HTM.

MINNESOTA:
This collection agency is licensed by the Minnesota Department of Commerce.

NEW YORK CITY:
New York City Department of Consumer Affairs license number 0908844.

NORTH CAROLINA:
North Carolina collection agency permit number 3354.

THIS INFORMATION IS NOT INTENDED AS LEGAL ADVICE AND SHOULD NOT BE USED TO
REPLACE THE ADVISE OF YOUR OWN LEGAL COUNSEL   ANY INFORMATION CONTAINED IN
THIS TRANSMISSION IS BASED ON THE SENDER'S RESEARCH AND EXPERIENCE IN
WORKING WITH THESE ISSUES.

Collection agencies must comply with a federal law that provides you with
certain rights, including the right to have us stop communicating with you,
if you make the request in writing to: National Financial Systems, Inc.
This law is administered by the Federal Trade Commission, One Bowling Green,
Third Floor, New York, NY 10004.

For inquiries, call 1-866-463-5443 1:00 pm - 3:00 pm est Monday - Thursday.

Any indebtedness of $600.00 or more may be reported to the IRS as taxable
income pursuant to Internal Revenue Code 6050 (P) and related federal law.



# EXHIBIT G

600 W JOHN ST
P.O. BOX 9046
HICKSVILLE NY 11801

April 14, 04



NATIONAL
FINANCIAL
SYSTEMS, INC.

Phone: (516) 932-1400      Fax: (516) 932-8828

AMOUNT DUE:      $9,390.76



46938342-2-HB

INWOOD NY 11096-2040

ɪₗₐₗₗₗₐₗₗₗₗₗₐₗₗₐₗₗₐₐₗₗₗₗₗₐₗₗₗₗₐₗₐₗₗₐₗₗₗₗₗₐₗ



46938342-2-HB
NATIONAL FINANCIAL SYSTEMS
600 W JOHN ST
P.O. BOX 9046
HICKSVILLE NY 11801

ɪₗₐₗₗₐₗₗₗₐₗₐₗₗₗₗₐₗₐₗₗₗₐₗₗₐₗₗₗₐₗₐₗₗₐₗₗ

---

PLEASE DETACH AND RETURN WITH PAYMENT

---

THIS ACCOUNT HAS BEEN PLACED WITH OUR OFFICE FOR THE PURPOSE OF COLLECTING THE
AMOUNT LISTED BELOW.

UNLESS YOU NOTIFY THIS OFFICE WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU
DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME
THIS DEBT IS VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30 DAYS FROM
RECEIVING THIS NOTICE, THIS OFFICE WILL: OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A
COPY OF A JUDGEMENT AND MAIL YOU A COPY OF SUCH JUDGMENT OR VERIFICATION. IF YOU
REQUEST THIS OFFICE IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE, THIS
OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF
DIFFERENT FROM THE CURRENT CREDITOR.

IF YOU WISH TO DISCUSS THIS DEMAND FOR PAYMENT.

IF PAYMENT IS NOT MADE, COLLECTION EFFORTS AS WELL AS INTEREST WILL CONTINUE.
*NATIONAL FINANCIAL SYSTEMS, INC.   600 W JOHN ST, P.O. BOX 9046 / HICKSVILLE, NY 11801-1040*

CALL TOLL FREE 1 (800) 765-2733
MON THRU THUR 8:00AM TO 9:00PM/FRI 8:00AM TO 5:00PM/SAT 8:00AM TO NOON EST

### THIS IS A DEBT COLLECTION AGENCY
*PLEASE SEE OTHER SIDE FOR IMPORTANT INFORMATION*
### THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION
### OBTAINED WILL BE USED FOR THAT PURPOSE.

---

4/14/04

FOR: BANK NNH1



INWOOD NY 11096
37

RE: YOUR ACCOUNT WITH OUR CLIENT
CITICORP MASTERCARD

ACCT #:

PRINCIPAL:        $9,390.76
CHARGES:          $0.00
AMOUNT DUE:       $9,390.76

 

To Residents in:

COLORADO:
FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE
WWW.AGO.STAT.CO.US/CAB.HTM.

MINNESOTA:
This collection agency is licensed by the Minnesota Department of Commerce.

NEW YORK CITY:
New York City Department of Consumer Affairs license number 0808844.

NORTH CAROLINA:
North Carolina collection agency permit number 3254.

THIS INFORMATION IS NOT INTENDED AS LEGAL ADVICE AND SHOULD NOT BE USED TO
REPLACE THE ADVISE OF YOUR OWN LEGAL COUNSEL.    ANY INFORMATION CONTAINED IN
THIS TRANSMISSION IS BASED ON THE SENDER'S RESEARCH AND EXPERIENCE IN
WORKING WITH THESE ISSUES.

Collection agencies must comply with a federal law that provides you with
certain rights, including the right to have us stop communicating with you,
if you make the request in writing to: National Financial Systems, Inc.
This law is administered by the Federal Trade Commission, One Bowling Green,
Third Floor, New York, NY 10004.

For inquiries, call 1-866-463-5443 1:00 pm - 3:00 pm est Monday - Thursday.

Any indebtedness of $600.00 or more may be reported to the IRS as taxable
income pursuant to Internal Revenue Code 6050 (P) and related federal law.

# EXHIBIT B

## Salemi, Michael

| | |
|---|---|
| **From:** | Francis Greene [fgreene@edcombs.com] |
| **Sent:** | Monday, November 28, 2005 9:36 AM |
| **To:** | jmarcellino@mwe.com |
| **Cc:** | Steve Broadley; Fowerbaugh, Albert; Salemi, Michael; Lefeblaw@aol.com |
| **Subject:** | Browder v. NFS |

Mr. Marcellino: I know counsel for NFS has contacted you with respect to the need for the clients to be present at the mediation. I am writing to request that plaintiff Timothy Browder be excused from participating in the mediation for medical reasons. Mr. Browder suffers from pulmonary sarcoidosis which is akin to TB but not infectious. As a result of his condition, Mr. Browder has significantly reduced lung capacity which makes the most benign physical activity (like walking) physically exhausting.

In general, I think having clients attend mediations substantially improves the chances of settlement. In this case, I do not believe that Mr. Browder's presence at or absence from the mediation will have much impact on the prospects for settlement. Mr. Browder does not have any actual damages and the defendant has previously offered him everything or virtually everything he could recover in statutory damages. What separates the parties and what will be likely the primary focus of the mediation is the recovery for the class and attorney's fees. Mr. Browder has given his attorneys full authority to settle the case. In light of this, in light of his medical condition, and in light of the likely focus of the mediation, I would respectfully ask that he be excused from attending.


Francis R. Greene
Edelman, Combs, Latturner & Goodwin, LLC
120 South La Salle Street
Suite 1800
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (fax)

This message and any attachments contains information which may be confidential and protected by the attorney-client and/or work product privileges. Unless you are the addressee(s) (or authorized to receive for the addressee(s)), you may not use, copy, or disclose the message or any information contained in the message and any attachments to anyone. If you received this message in error, please advise the sender by reply e-mail and delete the message and its attachments.

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TIMOTHY M. BROWDER, | ) | |
| | ) | |
| Plaintiff, | ) | 1:05cv10464 |
| | ) | |
| v. | ) | Judge Saris |
| | ) | |
| NATIONAL FINANCIAL SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF TIMOTHY BROWDER'S**
**ANSWERS TO DEFENDANT NATIONAL FINANCIAL**
**SYSTEMS, INC'S  FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26, 33, 34 and 36 of the Federal Rules of Civil Procedure,

Plaintiff Timothy M. Browder hereby answers the interrogatories of Defendant National

Financial Systems, INC. ("NFS") as follows:

**GENERAL OBJECTIONS**

Plaintiff objects to the discovery requests to the extent they seek information

which is protected from disclosure by the attorney-client privilege, the attorney work-product

doctrine, or any other applicable rule, privilege, or doctrine.  No such privileged information will

be provided in these responses. Inadvertent production of such information is not intended as, nor

shall it be deemed a waiver of such privilege or protection of Plaintiff's right to object to the use

of such information during this or any other litigation.

Plaintiff objects to the discovery requests to the extent that they are unduly

burdensome and oppressive. Plaintiff also objects to the discovery requests to the extent that they

seek information which is irrelevant and not calculated to lead to the discovery of admissible

evidence, and to the extent that they seek information of a proprietary nature, which plaintiff should not be required to disclose, if at all, unless a protective order is in place.

Plaintiff objects to the interrogatories to the extent they are contention interrogatories which are premature for plaintiff to answer.

Plaintiff has not completed his discovery or his preparation for trial, and Plaintiff's responses are therefore made only on the basis of such information as is currently known and reasonably available. Plaintiff's responses do not purport to constitute a final statement of all of Plaintiff's knowledge regarding any particular subject and are made without prejudice to Plaintiff's right to introduce additional evidence at time of trial, or to supplement his responses, as appropriate, once he has completed his discovery and trial preparation.

All of the above general objections are hereby incorporated into each of the responses set forth below as though fully set forth in each response.

## SPECIFIC ANSWERS AND OBJECTIONS

1.   Identify each person who answered or provided assistance in answering these interrogatories.

**ANSWER:**   Timothy Browder answered these interrogatories with the assistance of his counsel, Francis R. Greene.

2.   Identify all documents consulted, referenced, used or relied upon in answering these interrogatories.

**ANSWER:**   All documents produced by Plaintiff in response to Defendant's document requests.

3.    Identify each person with knowledge of the facts alleged in your Corrected Amended Complaint and state the substance of each person's knowledge.

**ANSWER:**    Plaintiff can testify to receiving the letter at issue.

4.    Identify each person you intend to call as a witness at the trial in this action, stating the substance of the testimony which you anticipate the witness will provide at trial.

**ANSWER:**    Plaintiff objects to Interrogatory No. 4 as being premature. Plaintiff will supplement his response to Interrogatory No. 4 as required by statute, local rule, and orders of the court.

5.    Identify all communications between you and NFS.

**ANSWER:**    Plaintiff received the letter at issue. Additionally, Plaintiff believes NFS telephoned him on at least five occasions in 2004, including: July 14, August 23, August 28, September 13, and September 16. Some of the NFS agents who called identified themselves as "Tony Wallace," "Mitchell Price", and "Phil Baker."

6.    Identify all communications between you and Citicorp Mastercard concerning the debt referenced in Exhibit "A" to your Corrected Amended Complaint or the debt-collection activities complained of in your Corrected Amended Complaint.

**ANSWER:**    Plaintiff received a letter from Citibank dated March 22, 2004. Plaintiff received a telephone call from Citibank on March 25, 2004 related to the debt at issue.

7.    Identify all communications between you and Bank NNBF concerning the debt referenced in Exhibit "A" to your Corrected Amended Complaint or the debt-collection activities complained of in your Corrected Amended Complaint.

**ANSWER:**    None.

8.    State the basis for the allegation in Paragraph 12 of your Corrected Amended Complaint that "[p]laintiff incurred the alleged debt for personal, family, or household purposes."

**ANSWER:**    The basis for the allegation that "plaintiff incurred the alleged debt for personal family or household purposes" is that, as is evidenced by the attached account statements, Plaintiff used the Citibank credit card for personal, family, or household purposes.

9.    Identify actions you took in response to receiving the letter attached as Exhibit "A" to your Corrected Amended Complaint.

**ANSWER:**    Plaintiff sent the letter to his counsel.

10.    Were you misled or deceived by the letter attached as Exhibit "A" to your Corrected Amended Complaint?  If so, please describe with particularity how you were misled or deceived and all actions you took as a result.

**ANSWER:**    Plaintiff believes the sentence "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law" is misleading. Plaintiff has not taken any action in reliance on the sentence.

11.    Did all of the debt referenced in Exhibit "A" to your Corrected Amended Complaint arise out of a transaction in which the money, property, insurance or services which were the subject of the transaction were primarily for personal, family, or household purposes?  If not, please indicate the amounts not incurred for personal, family or household purposes and describe what those amounts were incurred for.

**ANSWER:**    Plaintiff believes that all of the debt referenced in Exhibit "A" to the Corrected Amended Complaint was incurred for personal, family, or household purposes.

12.    Identify all of the transactions from which the debt referenced in Exhibit "A" to your Corrected Amended Complaint arose.

**ANSWER:**    Plaintiff objects to Interrogatory as unduly burdensome. Subject to, and without waiving this objection, Plaintiff states: see account statements produced in response to Defendant's document requests.

13.    Identify any lawsuits or legal proceedings (other than this one) to which you currently are or have been a party to.

**ANSWER:**    Other than the instant lawsuit, Plaintiff is involved in two other lawsuits, both pending in the United States District Court for the District of Massachusetts:

*Browder v. OSI Collection Services*, 1:05cv10462
*Hoyt v. Arrow Financial Services LLC*, 1:05cv10560
*In re Browder*, 1:05-20474 - WCH

14.    For each expert whom you will or may call upon to give evidence or testimony in connection with this case, please state; (a) his name, address, telephone number, occupation, and current employment; (b) the subject matter of his expertise; ©) his educational background, academic degrees, employment history, employment experience, and any other matters which you contend qualify him as an expert; (d) the substance of all facts and opinions to which he could testify if called as a witness; (e) a summary of the grounds for each such opinion.

**ANSWER:**    Plaintiff objects to Interrogatory No. 14 as being premature. Plaintiff will supplement his response to Interrogatory No. 4 as required by statute, local rule, and orders of the court.

15.    State the basis for your contention that NFS violated the Fair Debt Collection Practices Act ("FDCPA").

**ANSWER:**    Browder objects to the extent that Defendant is attempting to force him to disclose

his case strategy or force him to set forth all bases for recovery prior to completion of discovery. "[C]ontention interrogatories require the answering party to commit to a position and give factual specifics supporting its claims. The general policy is to defer contention interrogatories until discovery is near an end." *Ziemack v. Centel Co.*, 1995 U.S. Dist. LEXIS 18192 (N.D. Ill. Dec. 6, 1995). Because discovery and claim investigation can change contentions and supporting information, contention interrogatories, if allowed at all, should be used only at the end of the discovery period. *In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 335 (N.D. Cal. 1985).

Subject to, and without waiving Interrogatory No. 16, Plaintiff states that certain financial institutions are required to file a 1099 information return with the IRS if they discharge indebtedness in the principal amount of $600 or more:

> Except as provided in paragraph (d) of this section, any applicable financial entity (as defined in section 6050P(c)(1)) that discharges an indebtedness of any person (within the meaning of section 7701(a)(1)) of at least $ 600 during a calendar year must file an information return on Form 1099-C with the Internal Revenue Service. (26 C.F.R. § 1.6050P-1(a)(1))

The requirement that the discharge of indebtedness must be reported does not necessarily mean that the amount discharged represents income. 26 C.F.R. §1.6050P-1(a)(3) provides:

> Except as otherwise provided in this section, discharged indebtedness must be reported regardless of whether the debtor is subject to tax on the discharged debt under sections 61 and 108 or otherwise by applicable law.

Debts which the holder is actively seeking to collect through placement with a collection agency such as NFS or otherwise are, by definition, not discharged.

26 C.F.R. §1.6050P-1(b)(2)(iv) creates a presumption that indebtedness has been discharged if the creditor has not received a payment for 36 months, but that presumption is rebutted "if the creditor (or a third-party collection agency on behalf of the creditor) has engaged in significant, bona fide collection activity" and by "the sale or packaging for sale of the indebtedness by the creditor."

Moreover, the discharge of indebtedness in the principal amount of $600 or more is not taxable income if the debtor is insolvent, or if the debt is disputed, or if the discharge occurs in bankruptcy. A large proportion of uncollectible consumer debt falls into one or more of these three categories.

16.     State the basis for your contention that NFS violated Massachusetts General Law,

chapter 93A ("chapter 93A").

**ANSWER:**     Browder objects to the extent that Defendant is attempting to force him to disclose his case strategy or force him to set forth all bases for recovery prior to completion of discovery. "[C]ontention interrogatories require the answering party to commit to a position and give factual specifics supporting its claims. The general policy is to defer contention interrogatories until discovery is near an end." *Ziemack v. Centel Co.*, 1995 U.S. Dist. LEXIS 18192 (N.D. Ill. Dec. 6, 1995). Because discovery and claim investigation can change contentions and supporting information, contention interrogatories, if allowed at all, should be used only at the end of the discovery period. *In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 335 (N.D. Cal. 1985).

Subject to, and without waiving these objections, Plaintiff states that, for the reasons set forth in Plaintiff's answer to Interrogatory No. 15, the language at issue violates the FDCPA. There is ample case law holding that, under Massachusetts Attorney General regulations, violation of the FDCPA or other federal consumer protection statute is a violation of 93A. See e.g., Martin v. Sands, 62 F.Supp.2d 196, 201 (D. Mass. 1999); Barnes v. Fleet National Bank, N.A., 370 F.3d 164 (1st Cir. 2004).

17.     Do you claim that you or the putative class that you seek to represent have

suffered any actual injuries or damages as a result of NFS' alleged violation of the FDCPA?  If

so, identify any such injuries or damages.

**ANSWER:**     Plaintiff does not claim actual damages, only statutory damages. The class is assumed to have sustained only statutory damages.

18.     Do you claim that you or the putative class that you seek to represent have

suffered any actual injuries or damages as a result of NFS' alleged violation of chapter 93A?  If

so, identify any such injuries or damages.

**ANSWER:**     Plaintiff does not claim actual damages, only statutory damages. This class is assumed to have sustained only statutory damages.

19.    State the basis for your allegation in Paragraphs 31 and 43 of your Corrected Amended Complaint that the respective classes are so numerous that joinder of all members is impracticable.

**ANSWER:**    In the course of this litigation, Defendant has represented to Plaintiff that there are approximately 3,500 class members, too many people to make joinder practicable.

20.    Identify the recipients of the letters attached as Exhibits "B"-"G" to your Corrected Amended Complaint.

**ANSWER:**    Plaintiff objects to Interrogatory No. 20 as burdensome and irrelevant. The account numbers are contained in the Corrected Amended Complaint and NFS can identify the recipients of the letters attached as Exhibits B-G using the account numbers.

21.    Identify all communications between you or your attorneys and the recipients of the letters attached as Exhibits "B"-"G" to your Corrected Amended Complaint.

**ANSWER:**    Plaintiff objects to Interrogatory No. 21 as burdensome, irrelevant and unlikely to lead to the discovery of any admissible evidence.

Francis R. Greene

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)


LAW OFFICES OF CLAUDE
LEFEBVRE & SONS

Christopher M. Lefebvre
P.O. Box 479
Pawtucket, RI  02862
(401) 728-6060
(401) 728-6534 (FAX)
B.B.O. # 629056

J:\case\national\12 528\pleading\Interr Responses                                                    sw

## CERTIFICATE OF SERVICE

I, Francis R. Greene, certify that on December 16, 2005, a copy of **PLAINTIFF TIMOTHY BROWDER'S ANSWERS TO DEFENDANT NATIONAL FINANCIAL SYSTEMS, INC'S  FIRST SET OF INTERROGATORIES** was sent via United States mail to the persons listed below.

Steven S. Broadley
POSTERNAK BLANKSTEIN & LUND, LLP
Prudential Tower
800 Boylston Street, 32nd Floor
Boston, MA 02199-8004
(617) 722-4909 (FAX)

Albert E. Fowerbaugh, Jr.
Michael G. Salemi
LORD, BISSELL & BROOK LLP
115 South LaSalle Street
Chicago, IL 60603
(312) 443-0336 (FAX)

Francis R. Greene

# EXHIBIT D



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Sharon Dagg (Loughlin), **FILED** | ) |
| | ) |
| Plaintiff, FEB 1 1 2005 WH | ) Case No. 04 C 3731 |
| | ) |
| vs. FEB 11 2005 | ) |
| MICHAEL W. DOBBINS | ) |
| National Financial Systems, Inc. CLERK, U.S. DISTRICT COURT | ) Judge Filip |
| | ) Magistrate Judge Keys |
| Defendant. | ) |

## NOTICE OF FILING

TO:
Daniel Edelman
Cathleen Combs
James Latturner
Edelman Combs & Latturner
120 S. LaSalle St, 18th Floor
Chicago IL 60603
312/739-4200

PLEASE TAKE NOTICE THAT on February 11, 2005 we caused to be filed with the
Clerk of the United States District Court for the Northern District of Illinois, Eastern Division,
the attached **Defendant National Financial Systems, Inc.'s Answer to Plaintiff's Second
Amended Complaint,** a copy of which are herewith served upon you.

Attorneys for Defendant
National Financial Systems, Inc.

David M. Schultz
Michael P. Smith
HINSHAW & CULBERTSON LLP
222 North LaSalle, Suite 300
Chicago, IL 60601
(312) 704-3000

## CERTIFICATE OF SERVICE

The undersigned, a non-attorney, certifies that this notice and above referenced pleadings
were served to the above named at the above address by fax and/or mail, depositing same in the
U.S. mail at 222 North LaSalle, Chicago, Illinois with proper postage prepaid before 5:00 p.m.

Date 11 Feb. 2005

Under penalties as provided by law pursuant to
735 ILCS 5/1-109, I certify that the statements
set forth herein are true and correct.

5803540v1 842622

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Sharon Dagg (Loughlin),

$\quad$ Plaintiff,

$\quad$ vs.

National Financial Systems, Inc.

$\quad$ Defendants.

**FILED**

FEB 1 1 2005 WH

FEB 11 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

)
)
)
)
)
)
)
)
)

Case No. 04 C 3731

Judge Filip

Magistrate Judge Keys

## DEFENDANT NATIONAL FINANCIAL SYSTEMS, INC.'S ANSWER TO PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT

Defendant, NATIONAL FINANCIAL SYSTEMS, INC. ("NFS"), by its attorneys, David M. Schultz and Michael P. Smith, and for its Answer to Plaintiff's Second Amended Class Action Complaint, states as follows:

### INTRODUCTION

1.     Plaintiff Sharon Dagg, also known as Sharon Loughlin, brings this action against a debt collector, National Financial Systems, Inc. ("NFS"), to recover damages for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDPCA").

**ANSWER:**     Defendant admits that plaintiff purports to state a claim and seek relief under the FDCPA.  Defendant denies that it violated the FDCPA and further denies that plaintiff is entitled to relief under the same.

### JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 15 U.S.C. § 1692k (Fair Debt Collection Practices Act).

**ANSWER:**     Defendant admits that this Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 15 U.S.C. 1692k of the FDCPA.

3.      Venue and personal jurisdiction over defendant in this District is proper because:

a.      Plaintiff resides here;

b.      Defendant's collection communications to plaintiff and numerous others were transmitted into the District.

**ANSWER:**    Defendant admits that venue is proper in this District.

## PARTIES

4.      Plaintiff Sharon Dagg, also known as Sharon Loughlin, is a resident of the Northern District of Illinois.

**ANSWER:**    Upon information and belief, defendant admits the allegations contained in Paragraph 4.

5.      Defendant National Financial Systems, Inc. ("NFS") is a corporation with offices at 600 W. John Street, Hicksville, NY 11801.  It operates a collection agency.  It is a debt collector as defined in the FDCPA.  It does business in Illinois.  Its registered agent and office are Barry P. Siegal, 55 West Monroe St., Ste. 500, Chicago, Illinois 60603.

**ANSWER:**    Defendant admits the allegations contained in Sentence 1 of Paragraph 5. Defendant admits that it acts as a collection agency and a debt collector as defined in the FDCPA under certain circumstances.  In further answering, defendant admits the allegations contained in Sentence 4 and Sentence 5 of Paragraph 5.

6.      NFS is the same entity involved in United States v. National Financial Systems, Inc., Civil Action No. CV-990-7874 (E.D.N.Y.), an action brought at the instance of the Federal Trade Commission to enforce the FDCPA, wherein it signed a consent judgment.

**ANSWER:**    Defendant states that it was involved in United States v. National Financial Systems, Inc., Civil Action No. CV-990-7874, which involved an FDCPA claim and signed a consent judgment.

5877478v1 842622

## FACTS

7.     On or about Feb. 20, 2004, NFS mailed plaintiff a collection letter.  The front of the letter is attached as Exhibit A.  On information and belief, the text on the reverse is depicted in Exhibit B.

**ANSWER:**   Defendant admits that on February 20, 2004, it sent plaintiff the collection letter attached to plaintiff's complaint as Exhibit A.  Defendant further admits that the letter contained the text depicted in Exhibit B.

8.     The Feb. 20, 2004, letter sought to collect a credit card debt allegedly owed to Citicorp.

**ANSWER:**   Defendant admits the allegations contained in Paragraph 8.

9.     Plaintiff incurred the alleged debt for personal, family or household purposes.

**ANSWER:**   Defendant is without information or knowledge sufficient to form a belief as to the allegations contained in Paragraph 9.

10.    The Feb. 20, 2004 NFS letter is a form letter.

**ANSWER:**   Defendant admits the allegations contained in Paragraph 10.

11.    The Feb. 20, 2004, letter states on the reverse: "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law."  It further states that the quoted statement "is based on the sender's research and experience in working with these issues."

**ANSWER:**   Defendant admits that Paragraph 11 purports to recite a portion of the debt collection letter attached to plaintiff's complaint as Exhibit A.  Defendant objects to the allegations contained in Paragraph 11 to the extent they are inconsistent with Exhibit A.

12.    The quoted statement is false.

**ANSWER:**   Defendant denies the allegations contained in Paragraph 12.

3

13.     In fact, certain financial institutions are required to file a 1099 information return with the IRS if they ***discharge*** indebtedness in the principal amount of $600 or more.

**ANSWER:**     Defendant admits that the IRS Code places certain responsibilities on financial institutions to file certain forms with the IRS with respect to the discharge of certain amounts of indebtedness. Defendant admits that Paragraph 13 purports to recite a portion of the IRS Code. Defendant denies the allegations contained in Paragraph 13 to the extent they are not consistent with the IRS Code.

14.     The applicable IRS regulation, 26 C.F.R. §1.6050P-1(a)(1), provides: "Except as provided in paragraph (d) of this section, any applicable financial entity (as defined in section 6050P(c)(1)) that discharges an indebtedness of any person (within the meaning of section 7701(a)(1)) of at least $ 600 during a calendar year must file an information return on Form 1099-C with the Internal Revenue Service."

**ANSWER:**     Defendant admits that Paragraph 14 purports to recite a portion of 26 C.F.R. §1.6050P-1(a)(1). Defendant denies the allegations contained in Paragraph 14 to the extent they are inconsistent with 26 C.F.R. §1.6050P-1(a)(1).

15.     The requirement that the discharge of indebtedness must be reported does not necessarily mean that the amount discharged represents income.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 15.

16.     26 C.F.R. §1.6050P-1(a)(3) provides that "Except as otherwise provided in this section, discharged indebtedness must be reported regardless of whether the debtor is subject to tax on the discharged debt under sections 61 and 108 or otherwise by applicable law.

**ANSWER:**     Defendant admits that Paragraph 16 purports to recite a portion of 26 C.F.R. §1.6050P-1(a)(3). Defendant denies the allegations contained in Paragraph 16 to the extent they are inconsistent with 26 C.F.R. §1.6050P-1(a)(3).

17.     Debts which the holder is actively seeking to collect through placement with a collection agency such as NFS or otherwise are, by definition, ***not*** discharged.

4

**ANSWER:**    Defendant admits that Paragraph 17 purports to paraphrase the IRS Code and the definitions and conclusions contained therein.    Defendant denies the allegations contained in Paragraph 17 to the extent they are inconsistent with the obligations, definitions, and conclusions contained in the IRS Code.

18.    26 C.F.R. §1.6050P-1(b)(2)(iv) creates a presumption that indebtedness has been discharged if the creditor has not received a payment for 36 months, but that presumption is rebutted "if the creditor (or a third-party collection agency on behalf of the creditor) has engaged in significant, bona fide collection activity" and by "the sale or packaging for sale of the indebtedness by the creditor."

**ANSWER:**    Defendant admits that Paragraph 18 purports to recite a portion of 26 C.F.R. §1.6050P-1(b)(2)(iv). Defendant denies the allegations contained in Paragraph 18 to the extent they are inconsistent with 26 C.F.R. §1.6050P-1(b)(2)(iv).

19.    The discharge of indebtedness in the principal amount of $600 or more is not taxable income if the debtor is insolvent, or if the debt is disputed, or if the discharge occurs in bankruptcy.  A large proportion of uncollectible consumer debt falls into one or more of these three categories.

**ANSWER:**    Defendant admits that the IRS Code contains determinations as to certain discharged amounts of indebtedness and the extent to which these amounts are taxable income when the debtor is insolvent, the debt is disputed, or if the discharge occurs in bankruptcy. Defendant admits that Sentence 1 of Paragraph 19 purports to paraphrase parts of the IRS Code. Defendant denies the allegations contained in Sentence 1 of Paragraph 19 to the extent they are inconsistent with the IRS Code. Defendant denies Sentence 2 of Paragraph 19.

20.    NFS regularly includes the quoted language in collection letters, as shown by Exhibits C-G, attached.

**ANSWER:**    Defendant admits that it includes certain language in its collections letters which are sent to various debtors. Defendant admits that it has included the quoted language in Paragraph 20 in its collection letters to some debtors. Defendant denies that Paragraph 20 includes all of the language included in defendant's letters to debtors.

21.    NFS does not in fact report the existence of indebtedness over $600 to the IRS as taxable income.  Neither do its clients.  NFS does not report anything to the IRS.  Its financial

5

institution clients report to the IRS the discharge or forgiveness of indebtedness, but not the existence of indebtedness.

**ANSWER:** Defendant denies the allegations contained in Paragraph 21.

## VIOLATION ALLEGED

22. The inclusion of the quoted statements on Exhibit A-B is deceptive, false, and misleading, and violates 15 U.S.C. §§1692e, 1692e(2), 1692e(5), and 1692e(10).

**ANSWER:** Defendant denies the allegations contained in Paragraph 23.

23. Section 1692e provides:

> **§ 1692e. False or misleading representations [Section 807 of P.L.]**
>
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:.. .
>
> (2)   The false representation of--
>
> (A)   the .... legal status of any debt ....
>
> (5)   The threat to take any action that cannot legally be taken or that is not intended to be taken....
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer....

**ANSWER:** Defendant admits that Paragraph 24 purports to recite Section 1692e of the FDCPA. Defendant denies the allegations contained in Paragraph 24 to the extent they are inconsistent with Section 1692e of the FDCPA.

## CLASS ALLEGATIONS

24. Plaintiff brings this claim on behalf of a class. The class consists of (i) all natural persons with Illinois addresses, (ii) to whom NFS sent a letter stating "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law", (iii) on or after May 28, 2003 (one year prior to the filing of this action), (iv) and prior to June 17, 2004 (20 days after this action is filed).

6

**ANSWER:** Defendant admits that plaintiff seeks to represent a class as described in Paragraph 25, but denies that a class exists or that one should be certified. Defendant denies the remaining allegations contained in Paragraph 25.

25. The class is so numerous that joinder of all members is impracticable.

**ANSWER:** Defendant is without information or knowledge sufficient to form a belief as to the number of alleged putative class members. Defendant denies the remaining allegations contained in Paragraph 26.

26. The Feb. 20, 2004, letter is a form letter, as evidenced by the bar coded address

and account number assigned by NFS.

**ANSWER:** Defendant admits that the letter attached to plaintiff's complaint as Exhibit A is a form letter. Defendant denies the remaining allegations contained in Paragraph 27.

27. Other examples of NFS letters containing the language complained of, mailed to

putative debtors in various parts of the United States, and with personal information redacted, are

in Exhibits C-G.

| Date | NFS Number | Exhibit |
|---|---|---|
| 8/8/03 | 40851679-2-5A | C |
| 9/9/03 | 44061287-2-C3 | D |
| 10/14/03 | 44788263-1-2X | E |
| 2/20/04 | 46119092-3-EC | A-B |
| 3/31/04 | 46734182-3-2A | F |
| 4/14/04 | 46938342-2-HB | G |

**ANSWER:** Defendant admits that it sent the collection letters attached to plaintiff's complaint as Exhibits identified in the table contained in Paragraph 27. Defendant denies the remaining allegations contained in Paragraph 27.

28. There are more than 500 class members.

**ANSWER:** Defendant denies the allegations contained in Paragraph 28.

7

29. There are questions of law and fact common to the class members, which questions predominate over any questions affecting only individual class members. The principal question is whether the quoted statement in NFS' letter violates the FDCPA.

**ANSWER:** Defendant denies the allegations contained in Paragraph 29. Defendant further denies that a class exists or that one should be certified.

30. Plaintiff will fairly and adequately represent the members of the class. Plaintiff has retained counsel experienced in the prosecution of class actions and consumer credit claims.

**ANSWER:** Defendant denies the allegations contained in Paragraph 30. Defendant further denies that a class exists or that one should be certified.

31. A class action is superior for the fair and efficient adjudication of this matter, in that:

a. Defendant has inflicted similar injuries to a large number of persons through a single course of conduct;

b. Individual actions are not economical;

c. Debtors may not realize that NFS' statement is false;

d. Congress contemplated class actions as a means of enforcing the FDCPA.

**ANSWER:** Defendant denies the allegations contained in Paragraph 33. Defendant further denies that a class exists or that one should be certified.

8

**AFFIRMATIVE DEFENSES**

1.      As its first affirmative defense, NFS states that plaintiff's complaint fails to state a claim upon which relief may be granted.

2.      As its second affirmative defense, NFS states that if it violated the FDCPA, which it denies, the violation was unintentional and resulted from a *bona fide* error notwithstanding the maintenance of procedures reasonably adapted to avoid such an error.

WHEREFORE, Defendant National Financial Systems, Inc., respectfully requests that this Court deny the relief sought in plaintiff's complaint and grant such other and further relief as the Court deems appropriate and just.

Respectfully submitted,

NATIONAL FINANCIAL SYSTEMS, INC.

By: _____

One of its Attorneys

David M. Schultz
Michael P. Smith
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street
Suite 300
Chicago, IL 60601-1081
(312) 704-3000
ID:  90384

9

# EXHIBIT E



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| SHARON DAGG (LOUGHLIN), | ) |
| | ) |
| Plaintiff, | )    No. 04 C 3731 |
| | )    Magistrate Judge Keys |
| v. | ) |
| | ) |
| NATIONAL FINANCIAL SYSTEMS, INC., | ) |
| | ) |
| Defendant. | ) |

## FINAL APPROVAL ORDER

1.     On June 1, 2005, this Court preliminarily approved the Class Settlement Agreement reached between plaintiff Sharon Dagg ("Plaintiff"), and defendant National Financial Systems, Inc., ("Defendant"). The Court approved a form of notice for mailing to the class. The Court is informed that actual notice was sent by first-class mail to 13,537 class members (counting couples and other joint persons as a single class member). A total of 3,148 envelopes were returned by the United States Postal Service marked not deliverable with no forwarding addresses available, and 259 envelopes were returned and re-mailed to a forwarding address. No class members requested exclusion and no objections were filed or received. A total of 686 class members timely returned the proof of claim form and are therefore entitled to a share in the monetary benefits of the settlement. As of September 1, 2005, 21 late claim forms were returned by class members.

2.     On September 15, 2005, the Court held a fairness hearing to which class members, including any with objections, were invited. The Court, being fully advised in the premises, hereby orders:

3.     The Court finds that the class is appropriate under Fed. R. Civ. P. 23.

4.     The Court finds that the provisions for notice to the class satisfy the requirements of Fed. R. Civ. P. 23 and due process.

5.     The Court finds that the settlement is fair and reasonable, and hereby approves the **CLASS SETTLEMENT AGREEMENT** submitted by the parties, including the release and the payment by Defendant of $12,115.83 to settle the claims of the class; $1,000 to Plaintiff, and $14,000 as attorney's fees and costs. Defendant has also agreed to cease using the form collection letter at issue in plaintiff's complaint, and voluntarily ceased using said letter after the filing of the lawsuit. The Court further allows the claim forms postmarked after August 15, 2005, and received by September 1, 2005.

6.     Plaintiff and the members of the class grant Defendant the following release: Plaintiff, individual class member claimants, and all class members who have not timely and properly excluded themselves from the Class pursuant to this Agreement and/or applicable state and/or federal law, their assigns, heirs, successors and personal representatives, as of the Effective Date of the Settlement Agreement release all claims, causes of action, demands, torts, damages, costs, attorney's fees and liabilities of any kind whatsoever in law or equity, against Defendant, and its present or former parents, officers, directors, partners, members, principals, insurers representatives, employees, agents, servants, predecessors, successors, subsidiaries, affiliates, shareholders, and assigns ("Released Parties"), arising out of all of the allegations made, or which could have been made, in the action styled <u>Dagg v. National Financal Systems, Inc., No 04 C 3731</u> (N.D. Ill.). Because many Class members may have ongoing commitments with or debts to Defendant or its Principals, Defendant and its Principals do not release any claims they may have against the Class members, and likewise the Class members do not release any claims they may have

2

against Defendant or its Principals pertaining to the calculation of amounts owed or credits made to the accounts of Class members. This release is conditioned upon the final approval of the Settlement Agreement by the Court and defendant meeting its obligation therein.

7.    The following individuals are excluded from this action and the settlement: Mary D. Black, Frank M. Gonzalez, Jr., Maria G. Rodriguez, Pamela R. Todd, Wook S. Jun, Mary A. Houser, Sharon B. Faulkner, and Virgina Wissler

8.    The Court finds the Settlement Agreement fair and made in good faith.

9.    The Court dismisses the claims of Plaintiff and the class against Defendant and the released parties with prejudice and without costs (other than what has been provided for in the Settlement Agreement).

10.    The Court retains jurisdiction over the interpretation, enforcement and implementation of the Settlement Agreement and of this Order.

DATE: _September 14, 2005_          ENTER: _Arlander Keys_
                                      The Honorable Arlander Keys
                                      United States Magistrate Judge

3

# EXHIBIT F

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SHARON DAGG (LOUGHLIN), | ) | |
| | ) | |
| Plaintiff, | ) | No. 04 C 3731 |
| | ) | Magistrate Judge Keys |
| v. | ) | |
| | ) | |
| NATIONAL FINANCIAL SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Sharon Dagg, individually and as representative of a class of similarly situated persons, by counsel, respectfully submits the following memorandum in support of final approval of the Class Action Settlement Agreement ("agreement"), attached hereto as Appendix 1, preliminarily approved by the Court on June 1, 2005.

The Court is advised that on or shortly prior to July 1, 2005, notice was mailed to 13,537 individuals identified as members of the settlement class pursuant to defendant's records. Of the 13,537 notices mailed, 3,148 were returned as undeliverable with no forwarding address, and 259 were returned and re-mailed to a forwarding address. Timely claim forms were submitted by 686 class members (postmarked on or prior to August 15, 2005). There were 21 late claim forms received as of September 1, 2005, which were postmarked after the August 15, 2005 deadline. Eight class member submitted requests for exclusion and no objections were filed or submitted by class members.[1]

---

[1] The number of undeliverable notices and re-mailed notices is approximate.

1

## I.   NATURE OF THE CASE

Plaintiff filed the above captioned lawsuit alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA").  Specifically, plaintiff alleged that a collection letter's representation that "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law" and that the quoted statement "is based on the sender's research and experience in working with these issues" were false as certain financial institutions are required to file 1099 information with the IRS if they discharge indebtedness in the principal amount of $600 or more.  Debts, such as plaintiff's, which the holder is actively seeking to collect are by definition not discharged.  Plaintiff alleged that neither NFS nor its clients report the existence of indebtedness over $600 to the IRS as taxable income.  Defendant denies any liability or any violation.  Prior to entering into settlement negotiations, the parties engaged in informal discovery to determine the size and membership of the putative class, and the net worth of the defendant.  The parties were successful in reaching an agreement to settle this case, and subsequently reduced their agreement to written form, presenting their settlement agreement to the Court for preliminary approval.  As demonstrated below, the parties' settlement is now ripe for the Court's consideration and final approval.

## II.   THE ADMINISTRATION OF THIS CLASS ACTION SETTLEMENT.

### A.   The Preliminary Approval Order.

On June 1, 2005, the Court entered an order granting preliminary approval of the Agreement reached between the parties.  In its Order, the Court specifically found that the proposed terms of the settlement satisfied all of the elements of Federal Rule of Civil Procedure23(a) and 23(b)(3) and the Court certified the following Settlement Class:

"Any          All natural persons with Illinois addresses, (i) to whom NFS sent a letter stating indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law", in the form represented by <u>Exhibit A</u> of the Complaint, (ii) on or after May 28, 2003 (one year prior to the filing of this action), (iii) and prior to June 17, 2004 (20 days after this action is filed).

The preliminary approval order further established a procedural framework for the final approval of the settlement. It required the parties to cause notice to be mailed to the members of the above defined class, and set deadlines and procedures for the submission of claims, requests for exclusion, and objections to the settlement.

### B.    The Class Notice.

As set forth above, defendants' records contained the names of 13,537 individuals identified as class members who each were mailed notice on or shortly prior to July 1, 2005. Thereafter, 686 claim forms were returned to the administrator post-marked on or before the August 15, 2005 deadline, and as of September 1, 2005, 21 additional claim forms were received that were postmarked after the August 15, 2005 deadline.

### C.    The Value of the Settlement.

The Court has previously considered the terms of the settlement in entering its preliminary approval order. The settlement provides benefits to the class through the payment of a $12, 115.83 recovery to the class. This amount is equal to 100% of the maximum recovery which could be obtained by the class if plaintiff prevailed at trial. Each class member who has not requested exclusion, and who timely returned a participation form will receive a pro rata share of the class recovery by check, void after 90 days of issuance. Given the risks associated with a jury trial, plaintiff's counsel determined that the class award is a fair and reasonable compromise.

As 686 class members returned a timely claim form, each individual will receive

3

approximately $17.73.  If the 21 late claim forms are accepted the total amount for each class member will be approximately $17.11.

        **D.**      **No Objections have been Received**

There were eight requests for exclusion sent in by class members, and no objections to the settlement were filed or received. These results can be viewed as an endorsement of the settlement by the class.

## III.    THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT.

The parties' informal discovery demonstrates that the settlement satisfies all the requirements of Rule 23.

        **A.**      **Rule 23(a)(1) - The Settlement Class Is So Numerous That Joinder Of All Members Is Impracticable.**

Through the parties' informal discovery, it was determined that 13,537 persons met the class definition and were ultimately mailed notices in the form approved by the Court. The Seventh Circuit Court of Appeals has recognized that as few as 40 class members are sufficient to satisfy  the "numerosity" requirement of Rule 23(a)(1). *See Swanson v. American Consumer Industries, Inc.,* 415 F.2d 1326, 1333 (7th Cir. 1969); *see also* Newberg on Class Actions, 3rd Ed. Sec. 3.05, pp. 3-25 ("The difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone."). The number of Settlement Class Members identified through the settlement procedure approved by the Court satisfies the numerosity requirement of Rule 23(a)(1).

        **B.**      **Rule 23(a)(2) - The Claims Of The Settlement Class Arise From Common Questions Of Law And Fact.**

The "commonality" requirement of Rule 23(a)(2) is usually satisfied where the class members' claims arise from a common nucleus of operative fact. *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992). Rule 23(a)(2) requires only that the class members share at least one question of fact or law in common. *Kreuzfeld A.G. v. Carnehammer*, 138 F.R.D. 594, 599 (S.D.Fla. 1991) (the issue of commonality "turns on whether there exists at least one issue affecting all or a significant number of proposed class members").

In the present case, all settlement class members were mailed collection letters in the same form as that received by plaintiff. Plaintiff's allegations are based upon the language in this standard form letter. Whether or not the statements in the collection letter violate the FDCPA is a common legal question underlying the theory of recovery alleged by the plaintiff, on behalf of herself and the class, against defendant.

### C. Rule 23(a)(3) - Plaintiff's Claims are Typical Of the Claims Of The Settlement Class.

The "typicality" requirement of Rule 23(a)(3) is satisfied for many of the same reasons that the "commonality" requirement of Rule 23(a)(3) is met. *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1993) ("A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory"); *see also Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (the typicality requirement is satisfied where the "claims or defenses of the class and the class representative arise from the same event or practice and are based upon the same legal theory").

In the present case, all of the settlement class members' claims arise out of the same form collection letter mailed by defendant, thereby satisfying the typicality requirement of Rule

23(a)(3). *Rosario*, 963 F.2d at 1018.

### D.   Rule 23(a)(4) - Plaintiff And Her Counsel Will Fairly And Adequately Protect The Interests Of The Settlement Class.

The determination that the "representative parties will fairly and adequately protect the interests of the class" as required by Rule 23(a)(4) involves two considerations: (1) whether the plaintiff's attorneys are properly qualified and experienced to conduct the litigation; and (2) whether the plaintiffs have any interests antagonistic to the class. *General Tel. Co. v. Falcon*, 102 S.Ct. 2364, 2370, n. 13 (1982); *Retired Chicago Policy Ass'n.*, 7 F.3d 584, 598 (7th Cir. 1993).

As set forth in Counsel's declaration, attached hereto as <u>Appendix 2</u>, plaintiff's counsel is experienced in class action litigation. In addition, as plaintiff has shown through her prosecution of this matter, he has no interests which are antagonistic to the class and has demonstrated his motivation to pursue this litigation to a conclusion. Therefore, the named plaintiff and her counsel satisfy the adequacy of representation requirement embodied in Rule 23(a)(4).

### E.   The Settlement Class May Be Certified Pursuant to Rule 23(b)(3).

Class certification is appropriate under Rule 23(b)(3) where: (1) common questions of law or fact predominate over individual questions; and where (2) a class action represents a superior method for the fair and efficient adjudication of the controversy. Both of these requirements are satisfied in the present case.

#### 1.   Common questions predominate over individual issues.

In order for common questions of law or fact to predominate over individual issues for purposes of Rule 23(b)(3), common issues must constitute a significant part of the individual

cases.  *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).  Courts "generally focus on the liability issues in deciding whether the predominance requirement is met, and if the liability issue is common to the Class, common questions are held to predominate.  *In re Alexander Grant & Co. Litigation*, 110 F.R.D. 528, 534 (S.D.Fla. 1986); *see also Dura-Built Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 89 (S.D.N.Y. 1981).  In the present case, common issues relating to the contents of the form collection letter predominate over individual issues, if any, as required by Rule 23(b)(3).

> **2.     A Class Action is Superior to Other Methods of Resolving This Matter.**

For many of the reasons set forth above, a class action is the superior method to resolve the claims presented in this action.  In determining the superiority of a class action, the Court must consider the best available method of resolving the controversy in keeping with the goal of judicial economy. In reaching this determination, the Court should consider the inability of the uninformed to bring their claims and the improbability that large numbers of class members would possess the initiative to litigate individually.  *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974).  In *Phillips Petroleum Company v. Shutts*, 472 U.S. 797, 809, 105 S.Ct. 2965 (1985), the Supreme Court recognized that in cases where the class members' claims are too many or too small to litigate on an individual basis, the Court should certify the case as a class action under Rule 23(b)(3).

Given the large number of individual lawsuits that would be required if a class were not certified, a class action presents a superior method to fairly and efficiently adjudicate all of the claims of the class in this case, within the meaning of Rule 23(b)(3).  To the extent that any class member wished to pursue any such individual claim, they were free to opt-out of the settlement

under Rule 23(b)(3). In the present case, eight class members have elected to exclude themselves from the settlement and no class members have objected.

### C.     The Standard For Granting Final Approval To The Class Action Settlement.

In *Amchem Productions, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231 (1997), the United States Supreme Court explained that, before approving a class action settlement, the District Court must first be satisfied that the elements of Rule 23(a) and 23(b) have been met. *Id.* at 621, 117 S.Ct. at 2248.

Once the Court has determined that the requirements of Rule 23(a) and 23(b) have been met, the Court must then determine whether Rule 23(e) has been satisfied by determining whether the settlement is fair, reasonable and adequate. *General Electric Capital Corporation v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997). The Court considers the following six factors in making this determination:

1.     The strength of the plaintiff's case on the merits measured against the terms of the settlement;

2.     The complexity, length, and expense of continued litigation;

3.     The amount of opposition to the settlement among class members;

4.     The presence of collusion in gaining a settlement;

5.     The stage of the proceedings; and

6.     The amount of discovery completed.

*Id.* (citing *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 308 (7th Cir. 1985)).  The class action settlement in the present case satisfies each of the factors outlined in *GE Capital*.

The strength of plaintiff's claims rests upon whether or not the collection letter was

8

confusing to an unsophisticated debtor.

In order to avoid the uncertainty presented by litigation, the parties agreed to settle the dispute between them. As previously mentioned, among the elements of relief the class obtained as part of the settlement are a class recovery of $12,115.83, and payment of $1,000 to plaintiff Sharon Dagg.

The arguable strength of the class' claims compares favorably to the terms of the settlement, satisfying the first of the *GE Capital* factors.

In addition, the settlement is warranted by the complexity, length and expense of continued litigation. The resolution of the underlying legal questions and the defendant's liability will turn upon the parties' arguments and the Court's determination of the applicable legal theories would be the subject of lengthy disputes, delay and the significant expenditure of the parties' resources in discovery and pre-trial motion practice. Accordingly, the settlement satisfies the second *GE Capital* factor.

The settlement easily satisfies the third *GE Capital* factor because no class members have elected to opt-out of the settlement and no class members have objected to the settlement. Further, a consideration of the benefits to the class further supports the settlement. In addition, the settlement provides for payment of attorney's fees and costs to class counsel, discussed further below, to be paid *in addition to* the class recovery.

As evidence of the lack of any collusion, the payment amounts to the plaintiff and counsel, discussed below, compare favorably to the benefits to the class which are 100% of the maximum available under the FDCPA, thereby satisfying the fourth *GE Capital* factor.

Finally, the fifth and sixth *GE Capital* factors also support the final approval of this

settlement in light of the stage proceedings.  This action was filed on May 28, 2003.  Thereafter, the parties have engaged in informal investigations and discovery to determine the size of the class and the net worth of the defendant. Given the stage of proceedings and the investigation and discovery completed, the proposed settlement satisfies the fifth and sixth *GE Capital* factors.

## IV.    THE COURT SHOULD APPROVE COUNSEL'S FEES AND COSTS

     Plaintiff's counsel submit this memorandum in support of their request for an award of attorney's fees and costs.  Pursuant to the settlement agreement, counsel is seeking attorneys fees and costs of $14,000.  Plaintiff's counsel include experienced class action attorneys, all of whom contributed their skills and expended their resources in a coordinated effort that resulted in the settlement of this matter.  The amount requested by counsel is less than the actual time expended - $19,528.50 in fees and $997.61 in costs.  *See* <u>Exhibits A and C</u> to <u>Appendix 2</u>.

     The Seventh Circuit has specifically authorized the district courts to award attorney's fees using the lodestar method or the percentage of fund method.  *Cook v. Niedert*, 142 F.3d 1004, 1010 (7th Cir. 1998); *In re Synthroid Mktg. Litig.*, 264 F.3d 712 (7th Cir. 2001).

     In computing the lodestar, the hourly billing rate applied is the hourly rate that is normally charged in the community where counsel practices, <u>i.e.</u>, the "market price."  *See, e.g.*, *Blum*, 465 U.S. at 895; *McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir. 1988) ("'in most cases, billing rates reflect market rates — they provide an efficient and fair short-cut for determining the market rate'"); *Spencer v. Comserv Corp.*, 1986 WL 15155, Fed.Sec.L.Rep. ¶93, 124, at 95, 532 (D. Minn. Dec. 30, 1986) ("[compensating a nationally recognized securities class action attorney at his hourly rate is entirely appropriate."); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161,167 (3rd Cir. 1973) ("The value of an attorney's time

10

generally is reflected in his normal billing rate.").   The hourly rates of plaintiff's counsel and a detailed listing of Counsel's lodestar are set forth in <u>Appendix 2</u> and its exhibits.

   This case was prosecuted by plaintiff's counsel on a contingent fee basis with no assurance of any fee.  In undertaking to prosecute this case on that basis, plaintiff's counsel assumed a significant risk of nonpayment or underpayment.

   Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award.  *See In re Continental Illinois Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiff's counsel <u>must</u> be compensated adequately for the risk of non-payment); *Ressler v. Jacobsen*, 149 F.R.D. 651, 654 (M.D. Fla. 1992) ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award.").

   Plaintiff's counsel filed a well researched complaint alleging claims for relief under federal law.  Plaintiff's counsel engaged in negotiations which resulted in the settlement, prepared the settlement documents and handled calls from class members inquiring about the settlement.  In light of the work performed in this matter, and the actual time and expenses incurred by Counsel of $19,528.50 and $997.61 respectively, Counsel's request for $14,000 is reasonable, and Counsel accordingly requests approval of this amount by the Court.

## CONCLUSION

   For all the reasons set forth above, plaintiff, individually and as representative of a class of similarly situated persons, by counsel, urges the Court to grant final approval to the

settlement and to enter the parties' proposed order.[2]

Respectfully submitted,

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

---

[2]A draft Final Approval Order is attached hereto as Appendix 3

# EXHIBIT G

**AFFIDAVIT**

STATE OF NEW YORK

COUNTY OF NAUSSAU

BEFORE ME, the undersigned authority, on this day personally appeared NICK KEDA, known to me to be the person whose name is subscribed below and who under oath did state the following:

1.  My name is NICK KEDA. I am over the age of 21 years and am fully competent to make this affidavit. I have personal knowledge of the facts contained in his affidavit, and those facts are true and correct. I currently hold the position of Controller for NFS; I am a duly authorized representative of National Financial Systems, Inc (NFS), and I am specifically authorized to make this affidavit.

2.  In my capacity as Controller of NFS, I am familiar with the financial records and upkeep of NFS as well as its net worth. The net worth of National Financial Systems, Inc., as of __12/31__, 2005, is $ _296,902 -_.

Further affiant sayeth not.

NICK KEDA
NATIONAL FINANCIAL SYSTEMS, INC.

SUBSCRIBED AND SWORN TO BEFORE ME, on this the __28__ day of February 2006, which witness and certify my hand and seal of office.

Notary Public, State of New York

My Commission Expires: __11/17/06__

CHRISTINE M. BAUER
Notary Public, State of New York
No. 01BA5088240
Qualified in Nassau County
Comm. Expires Nov. 17, 2006

1

# EXHIBIT H

## AFFIDAVIT

STATE OF FLORIDA

COUNTY OF PALM BEACH

BEFORE ME, the undersigned authority, on this day personally appeared BRUCE NARDY, known to me to be the person whose name is subscribed below and who under oath did state the following:

My name is BRUCE NARDY. I am over the age of 21 years and am fully competent to make this affidavit. I have personal knowledge of the facts contained in this affidavit, and those facts are true and correct.

I currently hold the position of Director of Information Technology for NFS, I am a duly authorized representative of National Financial Systems, Inc. (NFS), and I am specifically authorized to make this affidavit.

In my capacity as Director of Information Technology of NFS, I am familiar with the business records of NFS. Based on NFS' records of the numbers of letters it sends out, generally, NFS sent out 3,504 letters to Massachusetts residents between March 10, 2004 and March 30, 2005.

Further affiant sayeth not.

BRUCE NARDY
NATIONAL FINANCIAL SYSTEMS, INC.

SUBSCRIBED AND SWORN TO BEFORE ME, on this the _28th_ day of February 2006, which witness and certify my hand and seal of office.

CHRISTIAN POSADA
MY COMMISSION # DD 518673
EXPIRES: February 15, 2010
Bonded Thru Budget Notary Services

Notary Public in and for the State of Florida

My Commission Expires: _2/15/2010_

1

# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

TIMOTHY BROWDER,                          '
                                          '
          Plaintiff                       '
                                          '
v.                                        '          Docket No. 05-CV-10464PBS
                                          '
NATIONAL FINANCIAL SYSTEMS, INC.,         '
                                          '
          Defendant                       '
                                          '

## AFFIDAVIT OF DAVID HERNANDEZ

BEFORE ME, the undersigned authority, on this day personally appeared David Hernandez

known to me to be the person whose name is subscribed below and who under oath did state the

following:

1.    My name is David Hernandez. I am over the age of 21 years and am fully competent
to make this affidavit. I have personal knowledge of the facts contained in this affidavit, and those
facts are true and correct.

2.    I have been employed by National Financial Systems, Inc. (NFS) since 1994. I
currently hold the position of Director of Compliance for NFS and am also in charge of operations in
our West Palm Beach office. As part of my responsibilities, I have been responsible for, among
other things, overseeing the collection of debts by NFS. Specifically, I am aware of the value of the
combined, total debt owed to NFS by all of the putative class members of the above-referenced cause
of action, *Timothy Browder v. National Financial Systems, Inc.*, Docket No. 05-CV-10464PBS, in
the United States District Court for the District of Massachusetts Eastern Division. I am familiar
with this information from personal experience and the performance of my various job functions for
NFS.

3.    The value of the combined, total debt owed to NFS by all of the putative class
members of the above-referenced cause of action, *Timothy Browder v. National Financial Systems,
Inc.*, Docket No. 05-CV-10464PBS, in the United States District Court for the District of
Massachusetts Eastern Division, is greater than one percent (1%) of NFS's total net worth.

David Hernandez

1

SUBSCRIBED AND SWORN TO BEFORE ME, on this the _27th_ day of February 2006, which witness and certify my hand and seal of office.

CHRISTIAN POSADA
MY COMMISSION # DD 518673
EXPIRES: February 15, 2010
Bonded Thru Budget Notary Services

Notary Public in and for the State of Florida

My Commission Expires: _2/15/2010_

2