**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | | |
|---|---|---|
| TIMOTHY M. BROWDER, | ) | |
| | ) | 1:05cv10464 |
| Plaintiff, | ) | |
| | ) | Judge Saris |
| v. | ) | |
| | ) | |
| NATIONAL FINANCIAL SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR LEAVE TO FILE, *INSTANTER*,
SHORT REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

Plaintiff Timothy M. Browder respectfully asks the Court to enter an order granting him leave to file, *instanter*, a short reply brief in support of his motion for class certification. (Appendix A)

In support of this motion, Plaintiff states as follows:

1.      On February 14, 2006, Plaintiff filed a motion for class certification.

2.      On February 28, 2006, defendant National Financial Systems, Inc. ("NFS") filed a response in opposition to plaintiff's motion.

3.      NFS argues that Plaintiff is an inadequate class representative and that a class action is not a superior method for adjudicating plaintiff's claims.

4.      Plaintiff seeks an opportunity to briefly respond to these arguments.

5.      Defendant's counsel has indicated that NFS does not have any objection to this motion.

WHEREFORE, Plaintiff respectfully asks the Court to enter an order granting him leave to file, *instanter*, a short reply brief in support of his motion for class certification.

1

Respectfully submitted,


<u>s/ Francis R. Greene</u>
Francis R. Greene


Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER
       & GOODWIN, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

Christopher M. Lefebvre
LAW OFFICES OF CLAUDE
       LEFEBVRE & SONS
Two Dexter Street
Pawtucket, RI  02860
(401) 728-6060
(401) 728-6534 (FAX)
B.B.O. # 629056

## **RULE 7.1 CERTIFICATION**

I, Francis R. Greene, hereby certify that I have conferred in good faith with counsel for National Financial Systems, Inc. regarding this motion. Defendant's counsel does not object to the filing of this motion.


 s/ Francis R. Greene
Francis R. Greene

## <u>CERTIFICATE OF SERVICE</u>

I, Francis R. Greene, hereby certify that on March 6,  2006, a copy of the foregoing Plaintiff's Unopposed Motion for Leave to File, *Instanter*, Short Reply Brief in Support of Motion for Class Certification was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Albert E. Fowerbaugh, Jr.                    Michael G. Salemi
LORD, BISSEL & BROOK LLP          LORD, BISSEL & BROOK LLP
afowerbaugh@lordbissell.com              msalemi@lordbissell.com

Steven S. Broadley
POSTERNAK, BLANKSTEIN & LUND, LLP
sbroadley@pbl.com


  s/ Francis R. Greene
Francis R. Greene

# APPENDIX A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY M. BROWDER, | ) | |
| | ) | 1:05cv10464 |
| Plaintiff, | ) | |
| | ) | Judge Saris |
| v. | ) | |
| | ) | |
| NATIONAL FINANCIAL SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

For the following reasons, the Court should grant Plaintiff Timothy Browder's motion and allow this action against Defendant National Financial Systems, Inc. ("NFS") to proceed as a class action.

**ARGUMENT**

**I.    Plaintiff Has Demonstrated His Commitment
to Protecting The Interests of the Class**

In the course of this litigation, NFS has made offers to settle which, in part, contemplated the payment to Plaintiff of $1,000, the maximum amount to which he is entitled in statutory damages under the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff has not accepted any of Defendant's offers because those offers have never included sufficient compensation for the class. Citing *Sonmore v. CheckRite Recovery Services, Inc.*, 206 F.R.D. 257, 262-263 (D. Minn. 2001), NFS argues that, even though Plaintiff has never accepted any of its offers, its offers of the statutory maximum in and of themselves sap Plaintiff of any incentive to litigate vigorously on behalf of the class.

1

Defendant's reliance on *Sonmore* is misplaced. In that case, at the time that the court was considering their motion for class certification, the court had already granted summary judgment to plaintiffs on their individual FDCPA claims. *Id.* at 263. Since the plaintiffs had won all to which they were entitled under the FDCPA, the court was skeptical that they would be willing to be vigorous advocates for the class. *Id.* The fact that the plaintiffs had written bad checks also contributed to the court's finding of inadequacy. *Id.*

*Sonmore* stands for the proposition that plaintiffs who have won summary judgment on their individual claims cannot be adequate class representatives. In the case *sub judice*, of course, Browder has not won summary judgment on his individual FDCPA claim. Also, there is nothing in the record to suggest that, were Browder to win summary judgment, his financial circumstances would lead him to abandon the interests of the class. On the contrary, Browder has consistently refused Defendant's settlement offers even though NFS has offered him everything or virtually everything to which he is entitled. Browder has made it clear to NFS that the class must be adequately compensated before he is willing to settle.[1]

NFS turns Plaintiff's refusals to settle on their head. NFS seems to be arguing that Plaintiff's *refusal* to settle on an individual basis renders him an inadequate class representative. This makes no sense. NFS might have an argument if Plaintiff had *accepted* an offer to settle on an individual basis. But Plaintiff's refusal to settle on an individual basis demonstrates his adequacy, not his inadequacy.

Defendant's argument is akin to those made by defendants who have attempted to

---

[1] Browder has demonstrated his commitment to the class in other respects. He answered Defendant's written discovery requests. He was ready and willing to be deposed by NFS. At the last minute, NFS canceled his deposition.

2

pick off class representatives by means of Rule 68 offers. As in the Rule 68 context, deeming Plaintiff inadequate under the circumstances of this case would encourage defendants facing class actions seeking statutory damages under the FDCPA to offer inflated individual settlement offers to avoid liability to the putative class. Such a result contravenes the spirit of Rule 23 and would be the death knell to class action litigation, particularly within the statutory regimes providing liquidated damages.

A defendant cannot pick off a class representative by means of a Rule 68 offer. *Bond v. Fleet Bank (RI), N.A.*, 2003 U.S. Dist. LEXIS 1930, *4 (D. R.I. 2003) ("enforcement of Rule 68 conflicts with the principles underlying the class action mechanism"); *Bond v. Fleet Bank (RI), N.A.*, 2002 U.S. Dist. LEXIS 4131, *22 (D. R.I. 2002) (same). This represents the weight of authority on this issue. *Weiss v. Regal Collections*, 385 F.3d 337 (3d Cir. 2004); *Carroll v. United Compucred Collections, Inc.*, 2003 U.S. Dist. LEXIS 5996 (M.D. Tenn., March 31, 2003), aff'd, 399 F.3d 620(6th Cir. 2005); *Reed v. TJX Cos.*, 2004 U.S. Dist. LEXIS 21605 (N.D. Ill., Oct. 27, 2004); *Crawford v. McCabe*, 272 F.Supp. 2d 736, 750 (N.D. Ill. 2003); *Tatz v. Nanophase Technologies Corp.*, 2003 U.S. Dist. LEXIS 9982 (N.D. Ill., June 13, 2003); *Whitten v. ARS Nat'l Servs.*, 2001 U.S. Dist. LEXIS 15472 (N.D. Ill., Sept. 27, 2001); *Kremnitzer v. Cabrera & Rephen, P.C.*, 202 F.R.D. 239 (N.D. Ill. 2001). Deeming Browder inadequate because he has rejected settlement offers which have failed to adequately compensate the class would be no less improper.

**II.    A Class Action Is A Superior Method for
Adjudicating The Claims of the Putative Class**

In light of the small sums at stake and the nature of the FDCPA claim asserted by

Browder (a claim of which most class members are probably unaware), allowing this action to proceed as a class action is the best way to adjudicate the claims of the potential class. NFS disagrees, making three arguments as to why the 3,000+ class members should be required to bring individual actions against NFS to vindicate their rights under the FDCPA. Each of Defendant's arguments lack merit.

NFS argues first, without citation to any supporting authority, that it would be unfair to allow this action to proceed as a class action. Defendant's argument is premised on the fact that the FDCPA sets 1% of a defendant's net worth as the maximum it can ever be required to pay to a class (with a maximum of $500,000). 15 U.S.C. § 1692k From NFS's perspective, if it must pay damages to a class, it would ideally face and settle a nationwide class action in which it paid at most 1% of its net worth (anywhere from approximately $3,000-$11,000) in exchange for releases from a nationwide class. Because Plaintiff's counsel has not brought this action as a nationwide class action, NFS claims this action is unfair and, therefore, an inferior method of adjudicating the claims of the putative class.

The alleged unfairness is that NFS, after facing a similar action against it on behalf of a class of just Illinois residents, now may have to pay 1% of its net worth a second time, to a class of just Massachusetts residents. There is, however, nothing unfair about this. The FDCPA does not contain any implicit or explicit prohibition on serial class actions or any implicit or explicit requirement that a class action be pursued on a nationwide basis. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997).

Moreover, any unfairness to NFS is far outweighed by the unfairness that would result if class members are forced to seek redress from NFS only through individual actions. By

4

Defendant's logic, class members must forfeit the class action mechanism solely because they

happen to be Massachusetts residents. As Massachusetts residents, they are precluded from

realizing the benefits of the class action mechanism because a class of Illinois residents has

already realized those benefits. This is absurd and NFS provides no authority for such an absurd

conclusion.

NFS next argues that a class action is an inferior method of adjudicating the

claims of the class because each class member's likely recovery would be de minimis. However,

in and of itself, a de minimis recovery does not render a class action an inferior method of

adjudicating class members' claims. As the Seventh Circuit has stated:

> [W]e believe that a de minimis recovery (in monetary terms)
> should not automatically bar a class action. The policy at the very
> core of the class action mechanism is to overcome the problem that
> small recoveries do not provide the incentive for any individual to
> bring a solo action prosecuting his or her rights. A class action
> solves this problem by aggregating the relatively paltry potential
> recoveries into something worth someone's (usually an attorney's)
> labor.
>
> True, the FDCPA allows for individual recoveries of up to $1,000.
> But this assumes that the plaintiff will be aware of his rights,
> willing to subject herself to all the burdens of suing and able to
> find an attorney willing to take her case. These are considerations
> that cannot be dismissed lightly in assessing whether a class action
> or a series of individual lawsuits would be more appropriate for
> pursuing the FDCPA's objectives.

*Mace*, 109 F.3d at 344.

It is not clear, moreover, that each class member's recovery would be de minimis

because the extent of NFS's net worth is uncertain. NFS, in response to Plaintiff's Request for

Admission back in August, 2005, admitted that its net worth was between $1 and $2 million.

(Exhibit A, p. 7, Responses to RFA Nos. 24-25.) Informally, Defendant's counsel represented to Plaintiff's counsel that 1% of NFS's net worth was approximately $11,000. Until this month, all settlement discussions between the parties had been based on that premise.

In its response to Plaintiff's motion for class certification, NFS proffers for the first time an affidavit stating that 1% of its net worth is only $2,969. By waiting until after the close of discovery to make this representation, NFS effectively precludes Plaintiff from testing the affidavit's veracity. NFS's self-serving affidavit should be stricken and 1% of NFS's net worth deemed to be approximately $11,000. Alternatively, Plaintiff should be granted leave to take additional discovery on the issue of NFS's net worth.

NFS also argues that each class member's recovery will be de minimis because it intends to seek a setoff from any recovery paid to the class. However, NFS has not filed a counterclaim in this action and after the close of discovery it is too late to do so. Even if not too late, any such counterclaim would be permissive rather than compulsory and the Court in its discretion could decline to allow NFS to bring it. *Lawson v. Management Adjustment Bureau, Inc.*, 1997 U.S. Dist. LEXIS 7275, *18-19 (N.D. Ill. 1997) (holding that a counterclaim to collect a debt in an FDCPA action is permissive and certifying a class notwithstanding the defendant's threat to bring a counterclaim). There would be good reasons for the Court to deny NFS's motion to bring permissive counterclaims against each class member. The resolution of this litigation would be delayed for years as the merits of counterclaims against 3000+ class members were litigated.

Finally, NFS argues that a class action is not a superior method for adjudicating class members' claims because "Congress has provided adequate incentive to individuals to

6

pursue their claims by allowing for the award of up to $1,000 in statutory penalties and the recovery of attorney's fees and costs." (Response, p. 10.) NFS's argument assumes that individuals will have sufficient knowledge of the FDCPA to recognize they have claims against NFS. Defendant also assumes that individuals will be able to file counsel willing to represent them in individual actions. Neither assumption is valid. Most ordinary consumers would not recognize the violation of the FDCPA contained in the letter at issue in this action. And there are precious few attorneys who would be willing to pursue a case like this on an individual basis.

Moreover, if there are class members who wish to bring individual actions against NFS, certifying this action as a class action does not preclude them from doing so. If a class is certified, class members will receive notice that a class has been certified and they can opt out of this action if they so choose.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in his original memorandum, Plaintiff respectfully asks the Court to grant his motion for class certification.

Respectfully submitted,

Francis R. Greene

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, IL  60603
(312) 739-4200
(312) 419-0379 (FAX)

Christopher M. Lefebvre
LAW OFFICES OF CLAUDE
        LEFEBVRE & SONS
Two Dexter Street
Pawtucket, RI  02860
(401) 728-6060
(401) 728-6534 (FAX)
B.B.O. # 629056

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

Docket No.  05-CV-10464PBS

TIMOTHY M. BROWDER,
     Plaintiff

v.

NATIONAL FINANCIAL SYSTEMS,
INC.,
     Defendant

## RESPONSES OF DEFENDANT NATIONAL FINANCIAL SYSTEMS, INC. TO PLAINTIFF'S REQUESTS FOR ADMISSIONS

The defendant National Financial Systems, Inc. ("NFS") hereby responds to the plaintiff's First Requests for Admissions as follows:

### REQUEST NO. 1:

Plaintiff Timothy M. Browder is a resident of Chestnut Hill, MA.

### RESPONSE TO REQUEST NO. 1:

NFS states that even though it has conducted a reasonable inquiry, the information known to, or readily obtainable by, NFS is insufficient to enable it to either admit or deny this request.

### REQUEST NO. 2:

Defendant National Financial Systems, Inc. ("NFS") is a corporation with offices at 600 W. John Street, Hicksville, NY 11801.

### RESPONSE TO REQUEST NO. 2:

Admit.

1

**REQUEST NO. 3:**

NFS operates a collection agency.

**RESPONSE TO REQUEST NO. 3:**

Admit.

**REQUEST NO. 4:**

NFS is a debt collector as defined in the FDCPA.

**RESPONSE TO REQUEST NO. 4:**

Admit.

**REQUEST NO. 5:**

NFS does business in Massachusetts. It maintains offices at 5230 Washington Street, West Roxbury, MA 02132.

**RESPONSE TO REQUEST NO. 5:**

Admit.

**REQUEST NO. 6:**

NFS is the same entity involved in <u>United States v. National Financial Systems, Inc.</u>, Civil Action No. CV-990-7874 (E.D.N.Y.). [sic]

**RESPONSE TO REQUEST NO. 6:**

Admit.

**REQUEST NO. 7:**

On or about July 9, 2004, NFS mailed plaintiff a collection letter, attached as <u>Exhibit A.</u>

**RESPONSE TO REQUEST NO. 7:**

NFS admits only that a collection letter was sent to plaintiffs, but cannot verify the authenticity of Exhibit A and therefore denies the remainder of this request.

2

**REQUEST NO. 8:**

Exhibit A sought to collect a credit card debt allegedly owed to Citicorp.

**RESPONSE TO REQUEST NO. 8:**

Admit.

**REQUEST NO. 9:**

Exhibit A is a form letter.

**RESPONSE TO REQUEST NO. 9:**

NFS admits only that Exhibit A appears to be a copy of a collection letter that is no longer used by NFS, but cannot verify the authenticity of Exhibit A and therefore denies the remainder of this request.

**REQUEST NO. 10:**

Exhibit A states on the reverse: "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law."

**RESPONSE TO REQUEST NO. 10:**

Admit.

**REQUEST NO. 11:**

In fact, certain financial institutions are required to file a 1099 information return with the IRS if they *discharge* indebtedness in the principal amount of $600 or more.

**RESPONSE TO REQUEST NO. 11:**

NFS objects to this question on the grounds that it asks for NFS to draw a legal conclusion.

**REQUEST NO. 12:**

Under no circumstances is the existence of a consumer debt something that requires the filing of an information return with the IRS.

**RESPONSE TO REQUEST NO. 12:**

ID # 438203v01/14528-2/ 08 17.2005

NFS objects to this question on the grounds that it asks for NFS to draw a legal conclusion.

## REQUEST NO. 13:

The requirement that the discharge of indebtedness must be reported does not necessarily mean that the amount discharged represents income.

## RESPONSE TO REQUEST NO. 13:

NFS objects to this question on the grounds that it asks for NFS to draw a legal conclusion.

## REQUEST NO. 14:

NFS sent Exhibit A about 5 weeks after it had been sued in the Northern District of Illinois for the same violation, on May 28, 2004, and served with process in that action, on June 2, 2004.

## RESPONSE TO REQUEST NO. 14:

NFS objects to this request on the grounds that it implies that NFS had a duty to Plaintiff after being served with a different lawsuit. Not withstanding the foregoing objection and without waiving same, NFS admits that a collection letter was sent to Plaintiff containing the IRS language quoted above, but cannot verify the authenticity of Exhibit A and therefore denies the remainder of this request.

## REQUEST NO. 15:

NFS does not in fact report the existence (as opposed to the discharge) of indebtedness over $600 to the IRS as taxable income. Neither do NFS' clients.

## RESPONSE TO REQUEST NO. 15:

NFS admits the first sentence. As to the second sentence, NFS states that even though it has conducted a reasonable inquiry, the information known to, or readily obtainable by, NFS is insufficient to enable it to either admit or deny this request.

## REQUEST NO. 16:

There are more than 40 (i) natural persons with Massachusetts addresses, (ii) to whom NFS sent a letter stating "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law", (iii) on or after March 10, 2004, (iv) and before March 30, 2005.

4

**RESPONSE TO REQUEST NO. 16:**

NFS states that even though it has conducted a reasonable inquiry, the information known to, or readily obtainable by, NFS is insufficient to enable it to either admit or deny this request.

**REQUEST NO. 17:**

There are more than 40 (i) natural persons with Massachusetts addresses, (ii) to whom NFS sent a letter stating "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law", (iii) on or after March 10, 2001, (iv) and before March 30, 2005.

**RESPONSE TO REQUEST NO. 17:**

NFS states that even though it has conducted a reasonable inquiry, the information known to, or readily obtainable by, NFS is insufficient to enable it to either admit or deny this request.

**REQUEST NO. 18:**

There are more than 100 (i) natural persons with Massachusetts addresses, (ii) to whom NFS sent a letter stating "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law", (iii) on or after March 10, 2004, (iv) and before March 30, 2005.

**RESPONSE TO REQUEST NO. 18:**

NFS states the even though it has conducted a reasonable inquiry, the information known to, or readily obtainable by, NFS is insufficient to enable it to either admit or deny this request.

**REQUEST NO. 19:**

There are more than 100 (i) natural persons with Massachusetts addresses, (ii) to whom NFS sent a letter stating "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law", (iii) on or after March 10, 2001, (iv) and before March 30, 2005.

**RESPONSE TO REQUEST NO. 19:**

NFS states that even though it has conducted a reasonable inquiry, the information known to, or readily obtainable by, NFS is insufficient to enable it to either admit or deny this request.

5

**REQUEST NO. 20:**

There are more than 500 (i) natural persons with Massachusetts addresses, (ii) to whom NFS sent a letter stating "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law", (iii) on or after March 10, 2004, (iv) before March 30, 2005.

**RESPONSE TO REQUEST NO. 20:**

NFS states that even though it has conducted a reasonable inquiry, the information known to, or readily obtainable by, NFS is insufficient to enable it to either admit or deny this request.

**REQUEST NO. 21:**

There are more than 500 (i) natural persons with Massachusetts addresses, (ii) to whom NFS sent a letter stating "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law", (iii) on or after March 10, 2001, (iv) and before March 30, 2005.

**RESPONSE TO REQUEST NO. 21:**

NFS states that even though it has conducted a reasonable inquiry, the information known to, or readily obtainable by, NFS is insufficient to enable it to either admit or deny this request.

**REQUEST NO. 22:**

There are more than 1000 (i) natural persons with Massachusetts addresses, (ii) to whom NFS sent a letter stating "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law", (iii) on or after March 10, 2004, (iv) and before March 30, 2005.

**RESPONSE TO REQUEST NO. 22:**

NFS states that even though it has conducted a reasonable inquiry, the information known to, or readily obtainable by, NFS is insufficient to enable it to either admit or deny this request.

**REQUEST NO. 23:**

There are more than 1000 (i) natural persons with Massachusetts addresses, (ii) to whom NFS sent a letter stating "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law", (iii) on or after March 10, 2001, (iv) and before March 30, 2005.

6

**RESPONSE TO REQUEST NO. 23:**

NFS states that even though it has conducted a reasonable inquiry, the information known to, or readily obtainable by, NFS is insufficient to enable it to either admit or deny this request.

**REQUEST NO. 24:**

Defendant has a net worth exceeding $1 million.

**RESPONSE TO REQUEST NO. 24:**

Admit.

**REQUEST NO. 25:**

Defendant has a net worth exceeding $2 million.

**RESPONSE TO REQUEST NO. 25:**

Deny.

**REQUEST NO. 26:**

Defendant has a net worth exceeding $5 million.

**RESPONSE TO REQUEST NO. 26:**

Deny.

**REQUEST NO. 27:**

Defendant has a net worth exceeding $10 million.

**RESPONSE TO REQUEST NO. 27:**

Deny.

**REQUEST NO. 28:**

Defendant has a net worth exceeding $20 million.

**RESPONSE TO REQUEST NO. 28:**

ID # 438203v01/14528-2/ 08.17.2005

Deny.

**REQUEST NO. 29:**

Defendant has a net worth exceeding $50 million.

**RESPONSE TO REQUEST NO. 29:**

Deny.

Signed under the penalties of perjury this __17__ day of __August__, 2005.

NATIONAL FINANCIAL SYSTEMS, INC.

By: _____
One of its Attorneys

As to Objections:

_____
Steven S. Broadley, BBO #542305
Posternak Blankstein & Lund, LLP
Prudential Tower
800 Boylston Street, 32nd Floor
Boston, MA  02199-8004
617-973-6100

_____
Albert E. Fowerbaugh, Jr., Esquire
Michael G. Salemi, Esquire
Lord, Bissell & Brook LLP
115 South LaSalle Street
Chicago, IL  60603
312-443-1871

8

## CERTIFICATE OF SERVICE

I, Steven S. Broadley, Esquire of Posternak, Blankstein & Lund, LLP, hereby certify that on this 17 day of August, 2005, I caused a copy of the above **Responses of Defendant National Financial Systems, Inc.'s to Requests for Admissions** to be mailed to:

Daniel A. Edelman, Esquire
Edelman, Combs, Latturner & Goodwin, LLC
120 S. LaSalle Street, 18th Floor
Chicago, IL 60603-3403

Albert E. Fowerbaugh, Jr., Esquire
Michael G. Salemi, Esquire
Lord, Bissell & Brook LLP
115 South LaSalle Street
Chicago, IL 60603

Christopher M. Lefebvre, Esquire
Law Offices of Claude Lefebvre & Sons
Two Dexter Street
Pawtucket, RI 02860

_____
Steven S. Broadley

9