**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | | |
|---|---|---|
| TIMOTHY BROWDER, | ) | |
| | ) | |
| Plaintiff, | ) | 1:05cv10464 |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONAL FINANCIAL SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**

Plaintiff Timothy Browder respectfully submits this memorandum in support of

final approval of the class action settlement preliminarily approved by this Court on August 25,

2006.[1]

On September 25, 2006, subsequent to the entry of the preliminary approval

order, defendant caused notice of the settlement of this action to be mailed to 3,460 individuals

identified as members of the settlement class pursuant to defendant's records. Of the 3460, 478

letters were returned as undeliverable. Of the 478 undeliverable letters, 21 were re-sent with

correct forwarding addresses.[2] The U.S. Postal Service did not have records for the remaining

456 letters. One hundred eighty-eight (188) class members timely sent in claim forms; one (1)

class member sent in an untimely claim form. Two class members, Robin D. Sund and Katherine

---

[1]The Court originally approved the settlement on August 8, 2006. The Court subsequently
entered the modified preliminary approval order on August 25, 2006.

[2]One additional change of address was not remailed because it was received after the
deadline  set by the Court for class members to send in claim forms.

Batts, submitted timely requests for exclusion. No class member filed an objection to the settlement. Pursuant to the settlement agreement, and subject to the Court's approval, each class member who filed a claim form (including the 1 late claimant) will receive $31.75.[3] Plaintiff requests that the 1 late claimant be allowed to share in the settlement. Plaintiff will receive $1,000.00.

## I.    OVERVIEW OF THE LITIGATION PRECEDING SETTLEMENT

Plaintiff filed the above captioned lawsuit alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA"). Specifically, Plaintiff alleged on a class basis that NFS violated the FDCPA by including a statement on a collection letter mailed to Plaintiff that, "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law" was false and misleading.

On May 11, 2005, plaintiff filed an amended complaint, adding a claim under Mass. G.L. CH 93A. After pursuing written discovery, plaintiff moved for class certification. Over defendant's opposition, the Court granted plaintiff's motion on March 8, 2006. The parties subsequently settled plaintiff's claims at a conference mediated by Magistrate Judge Neiman.

## II.    THE ADMINISTRATION OF THE SETTLEMENT

### A.    The Preliminary Approval Order.

On August 7, 2006, the Court entered an order granting preliminary approval of the Agreement reached between the parties. On August 25, 2006, the Court entered a modified preliminary approval order. The modified preliminary Approval Order established a procedural

---

[3]If the 1 late claimant is excluded, each class member will receive $31.92.

framework for the final approval of the settlement. It required the parties to cause notice to be

mailed to the members of the above defined below, and set deadlines and procedures for requests

for exclusion and objections to the settlement.  The class, as defined by the order granting class

certification, consists of:

> (i) all natural persons with Massachusetts addresses, (ii) to whom National Financial Systems, Inc. sent a letter stating "Any indebtedness of $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law," (iii) on or after March 10, 2004, (iv) and prior to March 30, 2005.

### B.    The Sending of Class Notice.

Subsequent to the entry of the preliminary approval order, NFS caused notice of

the settlement of this action to be mailed to 3,460 individuals identified as members of the

settlement class pursuant to defendant's records. Four hundred seventy-eight (478) letters were

returned as undeliverable. Of those, 21 were re-mailed with corrected addresses; one was not

remailed because it was received after the deadline to submit claim forms.  The U.S. Postal

Service did not have records for the remaining 456 letters.

### C.    The Value of the Settlement.

The Court has previously considered the terms of the settlement in entering its

Preliminary Approval Order:

(1)    NFS pays the named plaintiff Timothy Browder $1,000 in statutory

damages;

(2)    NFS pays $6,000 to the Class to be distributed *pro rata* to each class

member who sent in a claim form. One hundred eighty-eight (188) class members timely sent in

claim forms. One (1) class member sent his or her claim form in late. Each class member who

sent in a claim form (including the late claimant) should receive $31.75.[4]

       (3)    NFS pays, subject to the Court's approval, Plaintiff' counsel $12,500 for

attorney's fees and costs.

**D.    No Objections have been Received**

       There was 1 timely request for exclusion sent in by class members, and no

objections to the settlement were filed or received. These results can be viewed as an

endorsement of the settlement by the class.

**III.    THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT**

       The settlement satisfies all the requirements of Rule 23.

**A.    Rule 23(a)(1) - The Settlement Class Is So Numerous That Joinder Of All Members Is Impracticable**

From a search of its records, NFS concluded that there were 6,164 people who

met the class definition. Where the class numbers are at least 40, joinder is generally considered

impracticable. *Mowbray v. Waste Management Holdings, Inc.*, 189 F.R.D. 184 (D.Mass. 1999)

(certified class of 81)*; Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir.

1969) (40 sufficient); *Sala v. National R. Pass. Corp.*, 120 F.R.D. 494, 497 (E.D.Pa. 1988) (40-

50 sufficient); *see also Newberg on Class Actions*, 3rd ed. Sec. 3.05, pp. 3-25 ("The difficulty in

joining as few as 40 class members should raise a presumption that joinder is impracticable, and

the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact

alone."). The number of class members in this case plainly satisfies the numerosity requirement

of Rule 23(a)(1).

---

[4]If the 1 late claimant is excluded from participating in the settlement, the remaining 188 class members shall each receive $31.92.

**B.     Rule 23(a)(2) - The Claims Of The Settlement Class Arise From Common Questions Of Law And Fact**

The "commonality" requirement of Rule 23(a)(2) is usually satisfied where the class members' claims arise from a common nucleus of operative fact. Complete identity of facts is not required, because "to require complete identity would unduly confine class actions to the narrowest circumstances." *United States v. Rhode Island Dept. of Employment Sec.*, 619 F, Supp. 509, 513 (D.R.I. 1985); *Guckenberger v. Boston University*, 957 F. Supp. 306, 325 (D.Mass. 1997); *Kreuzfeld A.G. v. Carnehammer*, 138 F.R.D. 594, 599 (S.D.Fla. 1991) (the issue of commonality "turns on whether there exists at least one issue affecting all or a significant number of proposed class members").

In the present case, the class members' claims arise from the common questions: Does NFS's collection letter violate the FDCPA? Does NFS's collection letter violate Mass. G.L. ch. 93A?  These common questions satisfy Rule 23(a)(2).

**C.     Rule 23(a)(3) - Named Plaintiff' Claims are Typical Of the Claims Of The Settlement Class**

The "typicality" requirement of Rule 23(a)(3) is satisfied for many of the same reasons that the "commonality" requirement of Rule 23(a)(3) is met. "The question is simply whether a named plaintiff, in presenting his case, will necessarily present the claims of the absent plaintiff." *Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D.Mass. 1988). "The named plaintiff's claims are typical of the class when the plaintiff's injuries arise from the same event, practice or course of conduct of the defendant as do the injuries which form the basis of the class claim." *Adair v. Sorenson*, 134 F.R.D. 13, 17 (D.Mass. 1991).  To be typical within the meaning of the rule simply requires that the claims of the named plaintiff arise from the same type of

conduct which give rise to the class members' claims. *Burstein v. Applied Extrusion Technologies, Inc.*, 153 F.R.D. 488, 491 (D.Mass. 1994).

In the present case, plaintiff's claims arise from the same questions of law as those of class members: Does NFS's collection letter violate the FDCPA? Does NFS's collection letter violate Mass. G.L. ch. 93A?  Rule 23(a)(3) is plainly satisfied in this case.

### D.    Rule 23(a)(4) - Plaintiff And His Counsel Will Fairly And Adequately Protect The Interests Of The Settlement Class

The determination that the "representative parties will fairly and adequately protect the interests of the class" as required by Rule 23(a)(4) involves two considerations: (1) whether the plaintiff's attorneys are properly qualified and experienced to conduct the litigation; and (2) whether the plaintiff has any interests antagonistic to the class. *Adair v. Sorenson*, 134 F.R.D. 13, 18 (D.Mass. 1991). *Accord, Andrews  v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985); *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975); *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321 (E.D.N.Y. 1982).

As set forth in the declaration submitted herewith, plaintiff's counsel are experienced in class action litigation. (Exhibit A)  In addition, plaintiff has no interests in conflict with the class. Therefore, the named plaintiff and his counsel satisfy the adequacy of representation requirement of Rule 23(a)(4).

### E.    The Settlement Class May Be Certified Pursuant to Rule 23(b)(3)

Class certification is appropriate under Rule 23(b)(3) where: (1) common questions of law or fact predominate over individual questions; and where (2) a class action represents a superior method for the fair and efficient adjudication of the controversy. Both of

these requirements are satisfied in the present case.

### 1.    Common Questions Predominate Over Individual Issues

In order for common questions of law or fact to predominate over individual issues for purposes of Rule 23(b)(3), common issues must constitute a significant part of the individual cases. *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). Courts "generally focus on the liability issues in deciding whether the predominance requirement is met, and if the liability issue is common to the Class, common questions are held to predominate. *In re Alexander Grant & Co. Litigation*, 110 F.R.D. 528, 534 (S.D.Fla. 1986); *see also Dura-Built Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 89 (S.D.N.Y. 1981). In the present case, a common issue relates to the lawfulness of NFS's letter under the FDCPA and Mass. G.L., ch. 93A predominates over individual issues, if any, as required by Rule 23(b)(3).

### 2.    A Class Action is Superior to Other Methods of Resolving This Matter

For many of the reasons set forth above, a class action is the superior method to resolve the claims presented in this action.  In determining the superiority of a class action, the Court must consider the best available method of resolving the controversy in keeping with the goal of judicial economy. In reaching this determination, the Court should consider the inability of the uninformed to bring their claims and the improbability that large numbers of class members would possess the initiative to litigate individually. *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974). In *Phillips Petroleum Company v. Shutts*, 472 U.S. 797, 809, 105 S.Ct. 2965 (1985), the Supreme Court recognized that in cases where the class members' claims are too many or too small to litigate on an individual basis, the Court should certify the case as a class action under Rule 23(b)(3).

Given the large number of individual lawsuits that would be required if a class were not certified, a class action presents a superior method to fairly and efficiently adjudicate all of the claims of the class in this case, within the meaning of Rule 23(b)(3). To the extent that any class member wished to pursue any such individual claim, they were free to opt-out of the settlement under Rule 23(b)(3). In the present case, 2 class members timely elected to exclude themselves from the settlement and no class members have objected to the settlement.

## IV.     STANDARD FOR GRANTING FINAL APPROVAL TO THE CLASS ACTION SETTLEMENT

In *Amchem Productions, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231 (1997), the United States Supreme Court explained that, before approving a class action settlement, the District Court must first be satisfied that the elements of Rule 23(a) and 23(b) have been met. *Id.* at 621, 117 S.Ct. at 2248.

Once the Court has determined that the requirements of Rule 23(a) and 23(b) have been met, the Court must then determine whether Rule 23(e) has been satisfied by determining whether the settlement is fair, reasonable, and adequate. A district court can approve a class action settlement if it is fair, adequate and reasonable. *Durrett v. Housing Authority of the City of Providence*, 896 F.2d 600, 604 (1st Cir.1990); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 67 (D.Mass.1997). This requires the Court to consider both the substantive terms of the settlement compared to the likely result of the trial and "the negotiating process by which the settlement was reached." *Id.* citing *Weinberger v. Kendrick*, 698 F.2d 61, 69 (2d Cir.1982).

This fairness determination is not based on a single inflexible litmus test but, instead, reflects its studied review of a wide variety of factors bearing on the central question of whether the settlement is reasonable in light of the uncertainty of litigation. *See M. Berenson Co.*

*v. Faneuil Hall Marketplace, Inc.*, 671 F.Supp. 819, 822-23 (D.Mass.1987); *Duhaime*, 177

F.R.D. at 68 (citing *Santana v. Collazo*, 714 F.2d 1172, 1175 (1st Cir.1983)).  Among these

factors are: (1) the plaintiff's likelihood of success on the merits; (2) the amount and nature of

discovery or evidence; (3) the actual settlement terms and conditions; (4) the recommendation

and experience of counsel; (5) the future expense and likely duration of litigation; (6) the

recommendation of neutral parties, if any; (7) the number and nature of objections; and (8) the

presence of good faith and the absence of collusion. *See Giusti-Bravo v. U.S. Veterans Admin.*,

853 F.Supp. 34, 36 (D.P.R.1993). *See also Durrett*, 896 F.2d at 604.

        Plaintiff believed the likelihood of success was high. On the other hand, no case

has been tried on exactly these facts and defendant had raised a defense to liability – the bona

error defense provided for by 15 U.S.C. § 1692k.  At the time settlement was reached, the parties

had answered each other's written discovery and plaintiff was preparing to take a number of

Rule 30(b)(6) depositions relating to the merits of the case as well as defendant's bona fide error

defense. Those depositions would have increased greatly the expense and the duration of the

litigation. Under the circumstances, a compromise of plaintiff's claims was reasonable.

        The actual settlement provides for the distribution *pro rata* of $6,000 to each class

member who timely sent in a claim form. This amount represents more than twice the amount

defendant was required to pay based on its net worth at the time of settlement. Each class

member who sent in a claim form (including the late claimant) should receive $31.75.[5] which is

quite reasonable for an FDCPA case like this one where actual damages have not been sustained.

        The settlement represents an arms-length bargain. The parties initially attempted

---

[5]If the 1 late claimant is excluded from participating in the settlement, the remaining 188
class members shall each receive $31.92.

to settle this action on their own. They then participated in a settlement conference which did not yield a settlement. Subsequently, they participated in a second settlement conference with a different mediatior which resulted in a settlement. In light of the difficulty the parties had in reaching a settlement, and in light of the amount class counsel is seeking in fees compared to its actual time and expenses, the settlement was not the result of collusion.

Class Counsel believe that the outcome is favorable to the class members due to the fact that no class member has objected to the settlement and only two people opted out of the settlement. The essence of a settlement is a compromise.  Thus, even if "the relief afforded by the proposed settlement is substantially narrow than it would be if the suits were to be successfully litigated," this is no objection to a class settlement, since "the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation." *Air Line Stewards & Stewardesses Ass'n v. American Airlines, Inc.*, 455 F.2d 101, 109 (7th Cir. 1972). "[S]ettlements of class actions are highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits." *In re Domestic Air Transportation*, 148 F.R.D. at 312.

A settlement compromising conflicting positions in class action litigation serves the public interest. *Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir. 1980). In evaluating a settlement, the trial court should not decide the merits, or proceed from the assumption that victory is 100% assured and that all claimed damages are properly recoverable. *In re Domestic Air Transportation*, 148 F.R.D. at 312-13; *Armstrong*, 616 F.2d at 314-15.

The value of a settlement is to be weighed against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand

10

with protracted litigation. *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993); *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1177 (8th Cir. 1995) ("virtually any benefit inuring to the class would be better than the prospect of an ultimately unsuccessful litigation").

For all the aforementioned reasons, plaintiff's counsel urges the Court to give final approval to the settlement.

## V.    THE COURT SHOULD APPROVE COUNSELS' FEES AND COSTS

Plaintiff' counsel submits this memorandum in support of their request for an award of attorney's fees and costs. Pursuant to the settlement agreement, counsel is seeking attorney's fees and costs of $13,000. Plaintiff' counsel include experienced class action attorneys, all of whom contributed their skills and expended their resources in a coordinated effort that resulted in the settlement of this matter. The amount requested by counsel is less than half of the actual time time and costs incurred in prosecuting this action. The law firm of Edelman, Combs, Latturner & Goodwin, LLC has incurred $28,416.50 in fees and $1,603.39 in costs, for a total of $30,019.89. See Appendix F to the Declaration of Daniel A. Edelman, attached as Exhibit A. In addition, by the conclusion of the case, Massachusetts attorney, Christopher Lefebvre, will have expended 6 additional hours of time, including his appearance at the Fairness Hearing, billed at $250/hour for an additional $1,500. In sum, class counsel has incurred $31,519.89 in fees and costs, a good deal more than the $13,000 being requested by class counsel.

The First Circuit has specifically authorized the district courts to award attorney's fees using the lodestar method or the percentage of fund method. *Hensley v. Eckherhart,* 461 U.S. 424, 433 (1983); *Consolo v. George,* 1996 U.S. App. LEXIS 10196, at *7 (1st Cir. 1996).

In computing the lodestar, the hourly billing rate applied is the hourly rate that is normally charged in the community where counsel practices, i.e., the "market price." *See, e.g.*, *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 950-51 (1st Cir. 1984); *McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir. 1988) ("'in most cases, billing rates reflect market rates – they provide an efficient and fair short-cut for determining the market rate'"); *Spencer v. Comserv Corp.*, 1986 WL 15155, Fed.Sec.L.Rep. ¶93, 124, at 95, 532 (D. Minn. Dec. 30, 1986) ("[c]ompensating a nationally recognized securities class action attorney at his hourly rate is entirely appropriate."); *Lindy Bros. Builders, Inc. v. Amer. Radiator & Std. Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973) ("The value of an attorney's time generally is reflected in his normal billing rate."). The hourly rates of Edelman, Combs, Latturner & Goodwin, LLC, and a detailed listing of Edelman, Combs, Latturner & Goodwin, LLC's lodestar is set forth in Appendix F to the Declaration of Daniel A. Edelman, attached as Exhibit A.

This case was prosecuted by Plaintiff' counsel on a contingent fee basis with no assurance of any fee.  In undertaking to prosecute this case on that basis, Plaintiff' counsel assumed a significant risk of nonpayment or underpayment. Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award.  See *In re Continental Illinois Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiff's counsel must be compensated adequately for the risk of non-payment); *Ressler*, 149 F.R.D. at 651, 654 (M.D. Fla. 1992) ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award.").

Plaintiff's counsel filed a well researched complaint alleging claims for relief

under federal law. Plaintiff's counsel subsequently amended the complaint to add claims for relief under Massachusetts law. Plaintiff's counsel engaged in discovery, successfully moved for class certification, participated in two settlement conferences as well as engaged in informal settlement negotiations which resulted in the settlement, prepared the settlement documents and handled calls from class members inquiring about the settlement. In light of the work performed in this matter, and the actual time and expenses incurred by Counsel of $31,519.89, Counsel's request for $13,000 is reasonable, and Counsel accordingly requests approval of this amount by the Court.

## VI.  CONCLUSION

For all the reasons set forth above, Plaintiff individually, and as representative of a class of similarly situated persons, by counsel, urges the Court to grant final approval to the settlement and to enter the parties' proposed order.[6]

Respectfully submitted,

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Francis R. Greene
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

Christopher Lefebvre
BBO # 629056
Claude Lefebvre, P.C.

---

[6]  A draft Final Order is attached hereto as Exhibit B.

13

P.O. Box 479
Pawtucket, RI 02862
(401) 728-6060
(401) 728-6534 (FAX)

## <u>CERTIFICATE OF SERVICE</u>

   I, Francis R. Greene, hereby certify that on November 30, 2006, a copy of the foregoing **Plaintiff' MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT** was filed electronically and notice was electronically sent to the following parties:

Albert E. Fowerbaugh, Jr.        Michael G. Salemi
LORD, BISSEL & BROOK LLP     LORD, BISSEL & BROOK LLP
afowerbaugh@lordbissell.com     msalemi@lordbissell.com

Steven S. Broadley
POSTERNAK, BLANKSTEIN & LUND, LLP
sbroadley@pbl.com

         <u>s/Francis R. Greene</u>
         Francis R. Greene
         EDELMAN, COMBS, LATTURNER
           & GOODWIN, LLC
         120 S. LaSalle Street, 18th Floor
         Chicago, IL 60603
         (312) 739-4200
         (312) 917-0379 (FAX)
         fgreene@edcombs.com

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY BROWDER, | ) | |
| | ) | |
| Plaintiff, | ) | 1:05cv10560 RGS |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONAL FINANCIAL SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF DANIEL A. EDELMAN

Daniel A. Edelman declares under penalty of perjury, as provided for by the laws of the United States (28 U.S.C. §1746) that the following statements are true:

**1.** Edelman, Combs, Latturner & Goodwin, LLC, has 5 principals, Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Tara L. Goodwin, and Michelle R. Teggelaar and 9 associates.

**2.** **Daniel A. Edelman** is a 1976 graduate of the University of Chicago Law School. From 1976 to 1981 he was an associate at the Chicago office of Kirkland & Ellis with heavy involvement in the defense of consumer class action litigation (such as the General Motors Engine Interchange cases). In 1981 he became an associate at Reuben & Proctor, a medium-sized firm formed by some former Kirkland & Ellis lawyers, and was made a partner there in 1982. From the end of 1985 he has been in private practice in downtown Chicago. Virtually all of his practice involves litigation on behalf of consumers, mostly through class actions. He is the co-author of Rosmarin & Edelman, Consumer Class Action Manual (2d-4th editions, National Consumer Law Center 1990, 1995 and 1999); author of Payday Loans: Big Interest Rates and Little Regulation, 11 Loy.Consumer L.Rptr. 174 (1999); author of Consumer Fraud and Insurance Claims, in Bad Faith and Extracontractual Damage Claims in Insurance Litigation, Chicago Bar Ass'n 1992; co-author of Chapter 8, "Fair Debt Collection Practices Act," Ohio Consumer Law (1995 ed.); co-author of Fair Debt Collection: The Need for Private Enforcement, 7 Loy.Consumer L.Rptr. 89 (1995); author of An Overview of The Fair Debt Collection Practices Act, in Financial Services Litigation, Practicing Law Institute (1999); co-author of Residential Mortgage Litigation, in Financial Services Litigation, Practicing Law Institute (1996); author of Automobile Leasing: Problems and Solutions, 7 Loy.Consumer L.Rptr. 14 (1994); author of Current Trends in Residential Mortgage Litigation, 12 Rev. of Banking & Financial Services 71 (April 24, 1996); author of Applicability of Illinois Consumer

1

Fraud Act in Favor of Out-of-State Consumers, 8 Loy.Consumer L.Rptr. 27 (1996); co-author of Illinois Consumer Law (Chicago Bar Ass'n 1996); co-author of D. Edelman and M. A. Weinberg, Attorney Liability Under the Fair Debt Collection Practices Act (Chicago Bar Ass'n 1996); author of The Fair Debt Collection Practices Act: Recent Developments, 8 Loy.Consumer L. Rptr. 303 (1996); author of Second Mortgage Frauds, Nat'l Consumer Rights Litigation Conference 67 (Oct. 19-20, 1992); and author of Compulsory Arbitration of Consumer Disputes, Nat'l Consumer Rights Litigation Conference 54, 67 (1994). He is a member of the Illinois bar and admitted to practice in the following courts: United States Supreme Court, Seventh Circuit Court of Appeals, First Circuit Court of Appeals, Second Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Eighth Circuit Court of Appeals, Ninth Circuit Court of Appeals, Tenth Circuit Court of Appeals, Eleventh Circuit Court of Appeals, United States District Courts for the Northern and Southern Districts of Indiana, United States District Courts for the Northern, Central, and Southern Districts of Illinois, United States District Court for the District of Arizona, United States District Court for the District of Connecticut, and the Supreme Court of Illinois. He is a member of the Northern District of Illinois trial bar.

3.    **Cathleen M. Combs** is a 1976 graduate of Loyola University Law School. She formerly supervised the Northwest office of the Legal Assistance Foundation of Chicago, where she was lead or co-counsel in class actions in the areas of unemployment compensation, prison law, social security law, and consumer law. She joined what is now Edelman, Combs & Latturner in early 1991. Decisions in which she was involved prior to joining the firm include: Johnson v. Heckler, 607 F.Supp. 875 (N.D.Ill. 1984), and 100 F.R.D. 70 (N.D. Ill. 1983); Sanders v. Shephard, 185 Ill.App.3d 719, 541 N.E.2d 1150 (1st Dist. 1989); Maller v. Cohen, 176 Ill.App.3d 987, 531 N.E.2d 1029 (1st Dist. 1988); Wright v. Department of Labor, 166 Ill.App.3d 438, 519 N.E.2d 1054 (1st Dist. 1988); Barron v. Ward, 165 Ill.App.3d 653, 517 N.E.2d 591 (1st Dist. 1987); City of Chicago v. Leviton, 137 Ill.App.3d 126, 484 N.E.2d 438 (1st Dist. 1985); Jude v. Morrissey, 117 Ill.App.3d 782, 454 N.E.2d 24 (1st Dist. 1983). She is a member of the Northern District of Illinois trial bar.

4.    **James O. Latturner** is a 1962 graduate of the University of Chicago Law School. Until 1969, he was an associate and then a partner at the Chicago law firm of Berchem, Schwanes & Thuma. From 1969 to 1995 he was Deputy Director of the Legal Assistance Foundation of Chicago, where he specialized in consumer law, including acting as lead counsel in over 30 class actions. His publications include Chapter 8 ("Defendants") in Federal Practice Manual for Legal Services Attorneys (M. Masinter, Ed., National Legal Aid and Defender Association 1989); Governmental Tort Immunity in Illinois, 55 Ill.B.J. 29 (1966); Illinois Should Explicitly Adopt the Per Se Rule for Consumer Fraud Act Violations, 2 Loy.Consumer L.Rep. 64 (1990), and Illinois Consumer Law (Chicago Bar Ass'n 1996). He has taught in a nationwide series of 18 Federal Practice courses sponsored by the Legal Services Corporation, each lasting four days and designed for attorneys with federal litigation experience. He has argued some 30 appeals, including two cases in the United States Supreme Court and two in the Illinois Supreme Court. Mr. Latturner was involved in many of the significant decisions establishing the rights of Illinois consumers. He is a member of the Northern District of Illinois trial bar.

5.    **Tara L. Goodwin** is a graduate of the University of Chicago (B.A., with general honors, 1988)and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., with high honors,1991). She has been with the firm since her graduation and has participated in many of the cases described below. **Reported Cases.** Williams v. Chartwell Financial Services, LTD, 204 F.3d 748 (7th Cir. 2000); Hillenbrand v. Meyer Medical Group, 682 N.E.2d 101 (Ill.1st Dist. 1997), 720 N.E.2d 287 (Ill.1st Dist. 1999); Bessette v. Avco Fin. Servs., 230 F.3d 439 (1st Cir. 2000); Large v. Conseco Fin. Servicing Co., 292 F.3d 49 (1st Cir. 2002);; Carbajal v. Capital One, 219 F.R.D. 437 (N.D.Ill. 2004); Russo v. B&B Catering, 209 F.Supp.2d 857 (N.D.IL 2002); Garcia v. Village of Bensenville, 2002 U.S.Dist. LEXIS 3803 (N.D.Ill.); Romaker v. Crossland Mtg. Co., 1996 U.S.Dist. LEXIS 6490 (N.D.IL); Mount v. LaSalle Bank Lake View, 926 F.Supp. 759 (N.D.Ill 1996). She is a member of the Northern District of Illinois trial bar.

6.    **Michelle R. Teggelaar** is a graduate of the University of Illinois (B.A., 1993) and Chicago-Kent College of Law, Illinois Institute of Technology (J.D., with honors, 1997). **Reported Cases:** Johnson v. Revenue Management, Inc., 169 F.3d 1057 (7th Cir.1999); Coelho v. Park Ridge Oldsmobile, Inc., 247 F. Supp. 2d 1004 (N.D. Ill. 2003); Dominguez v. Alliance Mtge., Co., 226 F. Supp. 2d 907 (N.D. Ill. 2002); Watson v. CBSK Financial Group, Inc., 197 F. Supp. 2d 1118 (N.D. Ill. 2002); Van Jackson v. Check 'N Go of Illinois, Inc. 123 F. Supp. 2d 1085 (N.D. Ill. 2000), Van Jackson v. Check 'N Go of Illinois, Inc., 123 F. Supp. 2d 1079, Van Jackson v. Check 'N Go of Illinois, Inc., 114 F. Supp. 2d 731 (N.D. Ill. 2000); Van Jackson v. Check 'N Go of Illinois, Inc., 193 F.R.D. 544 (N.D. Ill. 2000); Vines v. Sands, 188 F.R.D. 302 (N.D. Ill. 1999); Veillard v. Mednick, 24 F. Supp. 2d 863 (N.D. Ill.1998); Sledge v. Sands, 182 F.R.D. 255 (N.D. Ill. 1998), Vines v. Sands, 188 F.R.D. 203 (N.D. Ill. 1999), Livingston v. Fast Cash USA, Inc., 753 N.E.2d 572 (Ind. 2001); Carroll v. Butterfield Heath Care, Inc., 2003 WL 22462604 (N.D. Ill. 2003); Payton v. New Century Mtge., Inc., 2003 WL 22349118 (N.D. Ill. 2003); Seidat v. Allied Interstate, Inc., 2003 WL 2146825 (N.D. Ill. 2003) (Report and Recommendation); Michalowski v. Flagstar Bank, FSB, 2002 WL 112905 (N.D. Ill. 2002); Bigalke v. Creditrust Corp., 2001 WL 1098047 (N.D. Ill 2001) (Report and Recommendation); Donnelly v. Illini Cash Advance, 2000 WL 1161076 (N.D. Ill. 2000); Mitchem v. Paycheck Advance Express, 2000 WL 419992 (N.D. Ill 2000); Pinkett v. Moolah Loan Co., 1999 WL 1080596 (N.D. Ill. 1999); Farley v. Diversified Collection Serv., 1999 WL 965496 (N.D. Ill. 1999); Davis v. Commercial Check Control, 1999 WL 965496 (N.D. Ill. 1999); Sledge v. Sands, 1999 WL 261745 (N.D. Ill. 1999); Slater v. Credit Sciences, Inc., 1998 WL 341631 (N.D. Ill. 1998); Slater v. Credit Sciences, Inc., 1998 WL 299803 (N.D. Ill. 1998).

7.    **Associates**

a.    **Francis R. Greene** is a graduate of Johns Hopkins University (B.A., with honors, May 1984), Rutgers University (Ph.D., October 1991), and Northwestern University Law School (J.D., 2000). **Reported Cases:** Johnson v. Thomas, 342 Ill. App.3d 382, 794 N.E.2d 919 (1st Dist. 2003); Jolly v. Shapiro & Kreisman, 237 F. Supp. 2d 888 (N.D. Ill. 2002); Parker v. 1-800 Bar None, a Financial Corp., Inc. 2002 WL 215530 (N.D. Ill. 2002); Jiang

v. Allstate Ins. Co. (199 F.R.D. 267); Hill v. AMOCO Oil Co. 2003 WL 262424, 2001 WL
293628 (N.D. Ill. 2003); Roquet v. Arthur Anderson LLP 2002 WL 1900768 (N.D. Ill. 2002);
White v. Financial Credit, Corp. 2001 WL 1665386 (N.D. Ill.); Ransom v. Gurnee Volkswagen
2001 WL 1241297 (N.D. Ill. 2001) and 2002 WL 449703 (N.D. Ill 2002); Doxie v. Impac
Funding Corp. 2002 WL 31045387 (N.D. Ill. 2002); Levin v. Kluever & Platt LLC 2003 WL
22757763 and 2003 WL 22757764 (N.D. Ill. 2003); Pleasant v. Risk Management Alternatives
2003 WL 22175390 (N.D. Ill. 2003); Jenkins v. Mercantile Mortgage 231 F. Supp. 2d 737 (N.D.
Ill. 2002); Hobson v. Lincoln Ins. Agency, Inc. 2001 WL 55528, 2001 WL 648958 (N.D. Ill.
2001), Anderson v. Lincoln Ins. Agency 2003 WL 291928, Hobson v. Lincoln Ins. Agency 2003
WL 338161 (N.D. Ill. 2003). He is a member of the Northern District of Illinois trial bar.

    **b.**  **Julie Clark** (nee Cobolovic) is a graduate of Northern Illinois
University (B.A., 1997) and DePaul University College of Law (J.D., 2000). **Reported Cases:**
Qualkenbush v. Harris Trust & Savings Bank 219 F.Supp.2d 935 (N.D.Ill.,2002); Covington-
McIntosh v. Mount Glenwood Memory Gardens 2002 WL 31369747 (N.D.Ill.,2002), 2003 WL
22359626 (N.D. Ill. 2003).

    **c.**  **Heather A. Kolbus** (neé Piccirilli) is a graduate of DePaul
University (B.S. *cum laude,* 1997), and Roger Williams University School of Law (J.D., 2002).

    **d.**  **Albert F. Hofeld Jr.** is a graduate of Reed College (B.A., 1990),
the University of Chicago Divinity School (M. Div., 1994), and Northwestern University Law
School (J.D,. 2000).

    **e.**  **Thomas E. Soule** is a graduate of Stanford University (B.A.,
2000), and the University of Wisconsin Law School (J.D., 2003)

    **f.**  **Alexander H. Burke** is a graduate of Colgate University (B.A.,
1997), and Loyola University of Chicago School of Law (J.D., 2003).

    **g.**  **Jeremy P. Monteiro** is a graduate of St. John's University (B.A.,
1999) and DePaul University College of Law (J.D., 2003).

    **h.**  **Derek B. Rieman** is a graduate of Indiana University (B.A., 2000)
and University of Oregon Law School (J.D., 2004).

    **h.**  **Deborah A. Morgan** is a graduate of Sheffield (England)
University (B.A. with honors 1989), University of Oregon (M.A. 1995), and American
University, Washington College of Law (J.D. summa cum laude 2006).

    **8.**  The firm also has 15 legal assistants, as well as other support staff.

    **9.**  Since its inception, the firm has recovered more than $500 million for

consumers.

10.    The types of cases handled by the firm are illustrated by the following:

11.    **Mortgage charges and servicing practices:**  The firm has been involved in dozens of cases, mostly class actions, complaining of illegal charges on mortgages and improper servicing practices.  These include MDL-899, In re Mortgage Escrow Deposit Litigation, MDL-1713, In re Bank of America ATM Fee Litigation, and MDL-1604, In re Ocwen Federal Bank FSB Mortgage Servicing Litigation, as well as the Fairbanks mortgage servicing litigation.  Decisions in the firm's mortgage cases include: Christakos v. Intercounty Title Co., 196 F.R.D. 496 (N.D.Ill. 2000); Johnstone v. Bank of America, N.A., 173 F.Supp.2d 809 (N.D.Ill. 2001); Leon v. Washington Mut. Bank, F.A., 164 F.Supp.2d 1034 (N.D.Ill. 2001); Williamson v. Advanta Mortg. Corp., 1999 U.S. Dist. LEXIS 16374 (N.D.Ill., Oct. 5, 1999); McDonald v. Washington Mut. Bank, F.A., 2000 U.S. Dist. LEXIS 11496 (N.D.Ill., June 22, 2000); Metmor Financial, Inc. v. Eighth Judicial District Court, No. 23848 (Nev.Sup.Ct., Apr. 27, 1993); GMAC Mtge. Corp. v. Stapleton, 236 Ill.App.3d 486, 603 N.E.2d 767 (1st Dist. 1992), leave to appeal denied, 248 Ill.2d 641, 610 N.E.2d 1262 (1993); Leff v. Olympic Fed. S. & L. Ass'n, 1986 WL 10636 (N.D.Ill. 1986); Aitken v. Fleet Mtge. Corp., 1991 U.S.Dist. LEXIS 10420 (N.D.Ill. 1991), and 1992 U.S.Dist. LEXIS 1687 (N.D.Ill., Feb. 12, 1992); Poindexter v. National Mtge. Corp., 1991 U.S.Dist. LEXIS 19643 (N.D.Ill., Dec. 23, 1991), later opinion, 1995 U.S.Dist. LEXIS 5396 (N.D.Ill., April 24, 1995); Sanders v. Lincoln Service Corp., 1993 U.S.Dist. LEXIS 4454 (N.D.Ill. 1993); Robinson v. Empire of America Realty Credit Corp., 1991 U.S.Dist. LEXIS 2084 (N.D.Ill., Feb. 20, 1991); In re Mortgage Escrow Deposit Litigation, M.D.L. 899, 1994 U.S.Dist. LEXIS 12746 (N.D.Ill., Sept. 8, 1994); Greenberg v. Republic Federal S. & L. Ass'n, 1995 U.S.Dist. LEXIS 5866 (N.D.Ill., May 1, 1995).

12.    The recoveries in the escrow overcharge cases alone are over $250 million.  Leff was the seminal case on mortgage escrow overcharges.

13.    The escrow litigation had a substantial effect on industry practices, resulting in limitations on the amounts which mortgage companies held in escrow.

14.    **Bankruptcy:**  The firm brought a number of cases complaining that money was being systematically collected on discharged debts, in some cases through the use of invalid reaffirmation agreements, including the national class actions against Sears and General Electric.  Conley v. Sears, Roebuck, 1:97cv11149 (D.Mass); Fisher v. Lechmere Inc., 1:97cv3065, (N.D.Ill.).  These cases were settled and resulted in recovery by nationwide classes. Cathleen Combs successfully argued the first Court of Appeals case to hold that a bankruptcy debtor induced to pay a discharged debt by means of an invalid reaffirmation agreement may sue to recover the payment.  Bessette v. Avco Financial Services, 99-2291 (1st Cir., October 27, 2000).

15.    **Automobile sales and financing practices:**  The firm has brought many

cases challenging practices relating to automobile sales and financing, including:

        **a.**     Hidden finance charges resulting from pass-on of discounts on auto purchases. <u>Walker v. Wallace Auto Sales, Inc.,</u> 155 F.3d 927, 1998 U.S. App. LEXIS 22663 (7th Cir. 1998).

        **b.**     Misrepresentation of amounts disbursed for extended warranties. Taylor v. Quality Hyundai, Inc., 150 F.3d 689, 1998 U.S.App. LEXIS 16434 (7th Cir. 1998); <u>Grimaldi v. Webb</u>, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996); <u>Slawson v. Currie Motors Lincoln Mercury, Inc.,</u> 1995 U.S.Dist. LEXIS 451 (N.D.Ill., Jan. 5, 1995); <u>Cirone-Shadow v. Union Nissan, Inc.,</u> 1995 U.S.Dist. LEXIS 1379 (N.D.Ill., Feb. 3, 1995), later opinion, 1995 U.S.Dist. LEXIS 5232 (N.D.Ill., April 20, 1995) (same); <u>Chandler v. Southwest Jeep-Eagle, Inc.,</u> 1995 U.S. Dist. LEXIS 8212 (N.D.Ill., June 8, 1995); <u>Shields v. Lefta, Inc.,</u> 1995 U.S.Dist. LEXIS 7807 (N.D.Ill., June 5, 1995).

        **c.**     Spot delivery. <u>Janikowski v. Lynch Ford, Inc.,</u> 1999 U.S. Dist. LEXIS 3524 (N.D.Ill., March 11, 1999); <u>Diaz v. Westgate Lincoln Mercury, Inc.,</u> 1994 U.S.Dist. LEXIS 16300 (N.D.Ill. 1994); <u>Grimaldi v. Webb</u>, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996).

        **d.**     Force placed insurance. <u>Bermudez v. First of America Bank Champion, N.A.,</u> 860 F.Supp. 580 (N.D.Ill. 1994); <u>Travis v. Boulevard Bank,</u> 1994 U.S.Dist. LEXIS 14615 (N.D.Ill., Oct. 13, 1994), modified, 880 F.Supp. 1226 (N.D.Ill., 1995); <u>Moore v. Fidelity Financial Services, Inc.,</u> 884 F. Supp. 288 (N.D.Ill. 1995).

        **e.**     Improper obligation of cosigners. <u>Lee v. Nationwide Cassell,</u> 174 Ill.2d 540, 675 N.E.2d 599 (1996); <u>Taylor v. Trans Acceptance Corp.,</u> 267 Ill.App.3d 562, 641 N.E.2d 907 (1st Dist. 1994), leave to appeal denied, 159 Ill.2d 581, 647 N.E.2d 1017 (1995).

        **f.**     Evasion of FTC holder rule. <u>Brown v. LaSalle Northwest Nat'l Bank,</u> 148 F.R.D. 584 (N.D.Ill. 1993), 820 F.Supp. 1078 (N.D.Ill. 1993), and 1993 U.S.Dist. LEXIS 11419 (N.D.Ill., Aug. 13, 1993).

        **16.**     These cases also had a substantial effect on industry practices. The warranty cases, such as <u>Grimaldi</u>, <u>Gibson</u>, <u>Slawson</u>, <u>Cirone-Shadow</u>, <u>Chandler</u>, and <u>Shields</u>, resulted in the Federal Reserve Board's revision of applicable disclosure requirements, so as to prevent car dealers from representing that the charge for an extended warranty was being disbursed to a third party when that was not in fact the case.

        **17.**     **Predatory lending practices:** The firm has brought numerous cases challenging predatory mortgage and "payday" lending practices, mostly as class actions. <u>Livingston v. Fast Cash USA, Inc.,</u> 753 N.E.2d 572 (Ind. Sup. Ct. 2001); <u>Williams v. Chartwell Fin. Servs.,</u> 204 F.3d 748 (7th Cir. 2000); <u>Parker v. 1-800 Bar None, a Financial Corp., Inc.,</u> 01 C

4488, 2002 WL 215530 (N.D.Ill., Feb 12, 2002); Gilkey v. Central Clearing Co., 202 F.R.D. 515 (E.D.Mich. 2001); Van Jackson v. Check 'N Go of Ill., Inc., 114 F.Supp.2d 731 (N.D.Ill. 2000), later opinion, 193 F.R.D. 544 (N.D.Ill. 2000), 123 F.Supp. 2d 1079 (N.D.Ill. 2000), later opinion, 123 F.Supp. 2d 1085 (N.D.Ill. 2000); Henry v. Cash Today, Inc., 199 F.R.D. 566 (S.D.Tex. 2000); Donnelly v. Illini Cash Advance, Inc., 00 C 94, 2000 WL 1161076, 2000 U.S. Dist. LEXIS 11906 (N.D.Ill., Aug. 14, 2000); Jones v. Kunin, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000); Davis v. Cash for Payday, 193 F.R.D. 518 (N.D.Ill. 2000); Reese v. Hammer Fin. Corp., 99 C 716, 1999 U.S. Dist. LEXIS 18812, 1999 WL 1101677 (N.D.Ill., Nov. 29, 1999); Pinkett v. Moolah Loan Co., 1999 U.S. Dist. LEXIS 17276 (N.D.Ill., Nov. 1, 1999); Gutierrez v. Devon Fin. Servs., 1999 U.S. Dist. LEXIS 18696 (N.D.Ill., Oct. 6, 1999); Vance v. National Benefit Ass'n, 99 C 2627, 1999 WL 731764, 1999 U.S. Dist. LEXIS 13846 (N.D.Ill., Aug. 26, 1999).

      18.    **Other consumer credit issues:**  The firm has also brought a number of other Truth in Lending and consumer credit cases, mostly as class actions, involving such issues as:

      **a.**    Phony nonfiling insurance.  Edwards v. Your Credit Inc., 148 F.3d 427, 1998 U.S. App. LEXIS 16818 (5th Cir. 1998); Adams v. Plaza Finance Co., 1999 U.S. App. LEXIS 1052 (7th Cir., January 27, 1999); Johnson v. Aronson Furniture Co., 1997 U.S. Dist. LEXIS 3979 (N.D. Ill., March 31, 1997).

      **b.**    The McCarran Ferguson Act exemption.  Autry v. Northwest Premium Services, Inc., 144 F.3d 1037, 1998 U.S. App. LEXIS 9564 (7th Cir. 1998).

      **c.**    Loan flipping.  Emery v. American General, 71 F.3d 1343 (7th Cir. 1995).  Emery limited the pernicious practice of "loan flipping," in which consumers are solicited for new loans and are then refinanced, with "short" credits for unearned finance charges and insurance premiums being given through use of the "Rule of 78s."

      **d.**    Home improvement financing practices.  Fidelity Financial Services, Inc. v. Hicks, 214 Ill.App.3d 398, 574 N.E.2d 15 (1st Dist. 1991), leave to appeal denied, 141 Ill.2d 539, 580 N.E.2d 112; Heastie v. Community Bank of Greater Peoria, 690 F.Supp. 716 (N.D.Ill. 1989), later opinion, 125 F.R.D. 669 (N.D.Ill. 1990), later opinions, 727 F.Supp. 1133 (N.D.Ill. 1990), and 727 F.Supp. 1140 (N.D.Ill. 1990).  Heastie granted certification of a class of over 6,000 in a home improvement fraud case.

      **e.**    Arbitration clauses.  Wrightson v. ITT Financial Services, 617 So.2d 334 (Fla. 1st DCA 1993).

      **f.**    Insurance packing.  Elliott v. ITT Corp., 764 F.Supp. 102 (N.D.Ill. 1990), later opinion, 150 B.R. 36 (N.D.Ill. 1992).

19.    **Automobile leases:** The firm has brought a number of a cases alleging illegal charges and improper disclosures on automobile leases, mainly as class actions. Decisions in these cases include Lundquist v. Security Pacific Automotive Financial Services Corp., Civ. No. 5:91-754 (TGFD) (D.Conn.), aff'd, 993 F.2d 11 (2d Cir. 1993); Kedziora v. Citicorp Nat'l Services, Inc., 780 F.Supp. 516 (N.D.Ill. 1991), later opinion, 844 F.Supp. 1289 (N.D.Ill. 1994), later opinion, 883 F.Supp. 1144 (N.D.Ill. 1995), later opinion, 1995 U.S.Dist. LEXIS 12137 (N.D.Ill., Aug. 18, 1995), later opinion, 1995 U.S.Dist. LEXIS 14054 (N.D.Ill., Sept. 25, 1995); Johnson v. Steven Sims Subaru and Subaru Leasing, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill., June 9, 1993), and 1993 U.S.Dist. LEXIS 11694 (N.D.Ill., August 20, 1993); McCarthy v. PNC Credit Corp., 1992 U.S.Dist. LEXIS 21719 (D.Conn., May 27, 1992); Kinsella v. Midland Credit Mgmt., Inc., 1992 U.S.Dist. LEXIS 1405, 1992 WL 26908 (N.D.Ill. 1992); Highsmith v. Chrysler Credit Corp., 18 F.3d 434 (7th Cir. 1994); Black v. Mitsubishi Motors Credit of America, Inc., 1994 U.S.Dist. LEXIS 11158 (N.D.Ill., August 10, 1994); Simon v. World Omni Leasing Inc., 146 F.R.D. 197 (S.D.Ala. 1992). Settlements in such cases include Shepherd v. Volvo Finance North America, Inc., 1-93-CV-971 (N.D.Ga.)($8 million benefit); McCarthy v. PNC Credit Corp., 291 CV 00854 PCD (D.Conn.); Lynch Leasing Co. v. Moore, 90 CH 876 (Circuit Court of Cook County, Illinois) (class in auto lease case was certified for litigation purposes, partial summary judgment was entered, and case was then settled); Blank v. Nissan Motor Acceptance Corp., 91 L 8516 (Circuit Court of Cook County, Illinois); Mortimer v. Toyota Motor Credit Co., 91 L 18043 (Circuit Court of Cook County, Illinois); Duffy v. Security Pacific Automotive Financial Services, Inc., 93-729 IEG (BTM) (S.D.Cal., April 28, 1994).

20.    Lundquist and Highsmith are leading cases; both held that commonly-used lease forms violated the Consumer Leasing Act. As a result of the Lundquist case, the Federal Reserve Board completely revamped the disclosure requirements applicable to auto leases, resulting in vastly improved disclosures to consumers.

21.    **Collection practices:** The firm has brought a number of cases under the Fair Debt Collection Practices Act, both class and individual. Decisions in these cases include: Jenkins v. Heintz, 25 F.3d 536 (7th Cir. 1994), aff'd 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995); Johnson v. Revenue Management Corp., 169 F.3d 1057, 1999 U.S. App. LEXIS 3142 (7th Cir. 1999); Keele v. Wexler & Wexler, 1996 U.S.Dist. LEXIS 3253 (N.D.Ill., March 18, 1996) (class), 1995 U.S.Dist. LEXIS 13215 (N.D.Ill. 1995) (merits), aff'd, 149 F.3d 589, 1998 U.S.App. LEXIS 15029 (7th Cir. 1998); Mace v. Van Ru Credit Corp., 109 F.3d 338, 1997 U.S.App. LEXIS 5000 (7th Cir., Mar. 17, 1997); Maguire v. Citicorp Retail Services, Inc., 147 F.3d 232, 1998 U.S.App. LEXIS 16112 (2d Cir. 1998); Young v. Citicorp Retail Services, Inc., 1998 U.S.App. LEXIS 20268 (2d Cir. 1998); Charles v. Lundgren & Assocs., P.C., 119 F.3d 739, 1997 U.S. App. LEXIS 16786 (9th Cir. 1997); Avila v. Rubin, 84 F.3d 222 (7th Cir. 1996), aff'g Avila v. Van Ru Credit Corp., 1995 U.S.Dist. LEXIS 461 (N.D.Ill., Jan. 10, 1995), later opinion, 1995 U.S.Dist. LEXIS 1502 (N.D.Ill., Feb. 6, 1995), later opinion, 1995 U.S.Dist. LEXIS 17117 (N.D.Ill., Nov. 14, 1995); Tolentino v. Friedman, 833 F.Supp. 697 (N.D.Ill. 1993), aff'd in part and rev'd in part, 46 F.3d 645 (7th Cir. 1995); Blakemore v. Pekay, 895 F.Supp.972 (N.D.Ill. 1995); Oglesby v. Rotche, 1993 U.S.Dist. LEXIS 15687 (N.D.Ill., Nov. 4,

1993), later opinion, 1994 U.S.Dist. LEXIS 4866 (N.D.Ill., April 15, 1994); Laws v. Cheslock, 1999 U.S.Dist. LEXIS 3416 (N.D.Ill., Mar. 8, 1999);Davis v. Commercial Check Control, Inc., 1999 U.S. Dist. LEXIS 1682 (N.D.Ill., Feb. 12, 1999); Hoffman v. Partners in Collections, Inc., 1993 U.S.Dist. LEXIS 12702 (N.D.Ill., Sept. 15, 1993); Vaughn v. CSC Credit Services, Inc., 1994 U.S.Dist. LEXIS 2172 (N.D.Ill., March 1, 1994), adopted, 1995 U.S.Dist. LEXIS 1358 (N.D.Ill., Feb. 3, 1995); Beasley v. Blatt, 1994 U.S.Dist. LEXIS 9383 (N.D.Ill., July 14, 1994); Taylor v. Fink, 1994 U.S.Dist. LEXIS 16821 (N.D.Ill., Nov. 23, 1994); Gordon v. Fink, 1995 U.S.Dist. LEXIS 1509 (N.D.Ill., Feb. 7, 1995); Brujis v. Shaw, 876 F.Supp. 198 (N.D.Ill. 1995). Settlements in such cases include Boddie v. Meyer, 93 C 2975 (N.D.Ill.); and Cramer v. First of America Bank Corporation, 93 C 3189 (N.D.Ill.).

**22.**    Jenkins v. Heintz is a leading decision regarding the liability of attorneys under the Fair Debt Collection Practices Act. I argued it before the Supreme Court and Seventh Circuit. Avila v. Rubin is a leading decision on phony "attorney letters."

**23.    Fair Credit Reporting Act:** The firm has filed numerous cases under the Fair Credit Reporting Act, primarily as class actions, alleging that lenders and automotive dealers, among others, improperly accessed consumers' credit information, without their consent and without having a purpose for doing so permitted by the FCRA. Important decisions in this area include: Cole v. U.S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004), Murray v. GMAC Mortgage Corp., 434 F.3d 948 (7th Cir. 2006); Perry v. First National Bank, 459 F.3d 816 (7th Cir. 2006); Murray v. Sunrise Chevrolet, Inc., 441 F. Supp.2d 940 (N.D. Ill. 2006); Kudlicki v. Capital One Auto Finance, Inc., 2006 U.S. Dist. LEXIS 81103 (N.D. Ill., Nov. 2, 2006); Thomas v. Capital One Auto Finance, Inc., 2006 U.S. Dist. LEXIS 81358 (N.D. Ill., Oct. 24, 2006); Pavone v. Aegis Lending Corp., 2006 U.S. Dist. LEXIS 62157 (N.D. Ill., Aug. 31, 2006); Murray v. E*Trade Financial Corp., 2006 U.S. Dist. LEXIS 53945 (N.D. Ill., July 19, 2006); Bonner v. Home 123 Corp., 2006 U.S. Dist. LEXIS 37922 (N.D. Ind., May 25, 2006); Murray v. Sunrise Chevrolet , Inc., 2006 U.S. Dist. LEXIS 19626 (N.D. Ill., Mar. 30, 2006); and Murray v. Finance America, LLC, 2006 U.S. Dist. LEXIS 7349 (N.D. Ill., Jan 5, 2006).

**24.    Class action procedure:** Important decisions include Crawford v. Equifax Payment Services, Inc., 201 F.3d 877 (7th Cir. 2000); Blair v. Equifax Check Services, Inc., 181 F.3d 832 (7th Cir. 1999); Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997); and Gordon v. Boden, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991).

**25.    Landlord-tenant:** The firm has brought a number of class actions against landlords for failing to pay interest on security deposits or commingling security deposits.

**26.**    Some of the other reported decisions in our cases include: Elder v. Coronet Ins. Co., 201 Ill.App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990); Smith v. Keycorp Mtge., Inc., 151 Bankr. 870 (N.D.Ill. 1992); Gordon v. Boden, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991), leave to appeal denied, 144 Ill.2d 633, 591 N.E.2d 21, cert. denied, U.S. (1992); Armstrong v. Edelson, 718 F.Supp. 1372 (N.D.Ill. 1989); Newman v. 1st 1440 Investment, Inc.,

1993 U.S.Dist. LEXIS 354 (N.D.Ill. 1993); <u>Mountain States Tel. & Tel. Co. v. District Court</u>,
778 P.2d 667 (Colo. 1989); <u>Disher v. Fulgoni</u>, 124 Ill.App.3d 257, 464 N.E.2d 639, 643 (1st
Dist. 1984); <u>Harman v. Lyphomed, Inc.</u>, 122 F.R.D. 522 (N.D.Ill. 1988); <u>Haslam v. Lefta, Inc.</u>,
1992 U.S.Dist. LEXIS 3623 (N.D.Ill., March 25, 1994); <u>Source One Mortgage Services Corp. v.
Jones</u>, 1994 U.S.Dist. LEXIS 333 (N.D.Ill., Jan. 13, 1994).

   **27.**  Gordon v. Boden is the first decision approving "fluid recovery" in an
Illinois class action. <u>Elder v. Coronet Insurance</u> held that an insurance company's reliance on lie
detectors to process claims was an unfair and deceptive trade practice.

   **28.**  The majority of our practice is contingent fee litigation on the plaintiff's
side. We I regularly represent plaintiffs in contingent fee cases in Federal Court in Illinois and
Indiana, and in Illinois state courts. We frequently work with other plaintiff's lawyers who
handle cases on a contingent fee basis. We are generally familiar with the range of contingent fee
percentages charged by plaintiff's lawyers.

   **29.**  The hourly rates for the attorneys set forth below, are the same as the
regular current rates charged for their services in other contingent matters in class action
litigation. They are also consistent with fees charged to occasional paying clients. The firm
adjusts them annually to account for inflation and increasing experience and they are consistent
with the rates charged by attorneys of comparable experience and expertise in the Chicago area.
The rates listed and used in this case represent rates previously approved in a number of cases
plus an annual adjustment.

   **30.**  Examples of the approval of counsel's rates include:

   **a.**  Rates of $385 for Daniel A. Edelman, Cathleen M. Combs and
James O. Latturner, $190 for Thomas Soule, and $100-$105 for legal assistants were approved
in <u>Smith v. American Revenue Corp.</u>, 2:04-cv-199-PRC (N.D.Ind., Oct. 24, 2005).

   **b.**  Rates of $425 for James O. Latturner, $190/ hour for Alex Burke
were approved in <u>Schulz v. Oxford Management</u>, 05 C 3133 (N.D.Ill., Oct. 21, 2005), by Judge
Leinenweber. His order is attached as <u>Appendix A</u>.

   **c.**  Rates of $400/hour for Daniel A. Edelman, Cathleen M.
Combs and James O. Latturner, a rate of $335/hour for Tara L. Goodwin, and a rate of
$190/hour for Francis R. Greene, were approved by Judge Darrah in <u>Levin v. Kluever & Platt
LLC</u>, No. 03 C 2160 (N.D.Ill September 15, 2004)(Darrah, J.). A transcript is attached as
<u>Appendix B</u>.

   **d.**  Rates of $370/hour for Daniel A. Edelman and James O. Latturner,
and a rate of $210/hour for Michelle R. Teggelaar, were approved by Judge Holderman in <u>Payton
v. New Century Mortgage Co.</u>, 2004 WL 524693 (N.D. Ill. 2004).

     **e.**    Rates of $360/hour for Daniel A. Edelman, Cathleen M. Combs, and James O. Latturner, a rate of $310 for Tara L. Goodwin, and a rate of $200/hour for Michelle R. Teggelaar, were approved by Judge Lefkow in Johnson v. Fast Cash Advance, Inc., No. 00 C 1875 (United States District Court, Northern District of Illinois, February 25, 2003).

     **f.**    Rates of $350/hour for Daniel A. Edelman, Cathleen M. Combs, and James O. Latturner, a rate of $300/hour for Tara L. Goodwin, and a rate of $200/hour for Michelle R. Teggelaar and Keith J. Keogh, were approved by Judge Billik in Rentas v. Vacation Break U.S.A., No. 98 CH 02782 (Circuit Court of Cook County, May 9, 2002).

     **g.**    Rates of $300/hour were approved by Judge Kennelly for Daniel A. Edelman and James O. Latturner, and a rate of $275/hour for Cathleen M. Combs in Hobson v. Lincoln Insurance Agency, Inc., 2002 WL 338161 (N.D. Ill. 2002). Judge Kennelly also approved rates of $150/hour for associates James S. Harkness and Charles H. Lee and $135/hour for associate Francis R. Greene.

     **h.**    Rates of $275 were approved by the Seventh Circuit Court of Appeals in Tolentino v. Friedman, 46 F.3d 645 (1995) for Mr. Edelman.

     **i.**    Rates of $330 for Mr. Edelman and $170 for Charles H. Lee were approved in Clay v. Johnson, 97 C 6007 (N.D.Ill.), for work done in 1997-1999.

     **(1)**    $330/ hour for Mr. Edelman and Mr. Latturner were approved by Judge Boharic in Johnson v. Thomas, 97 CH 10793 (Cir. Ct. Cook Co., April 24, 2001), a mortgage foreclosure action in which the borrower successfully prosecuted a Truth in Lending counterclaim through trial and rescinded the mortgage.

     **(2)**    Rates were approved in Avila v. Van Ru Credit Corp., 1995 U.S. Dist. LEXIS 17117 (N.D.Ill., Nov. 14, 1995), aff'd, 84 F.3d 222 (7th Cir. 1996), as follows: Daniel A. Edelman, $275.00; Cathleen M. Combs, $235.00; James O. Latturner, $275.00.

     **(3)**    Edelman, Combs & Latturner was paid in excess of $25,000 by an estate in connection with a usury case using the same rates as were approved in Avila. Stob v. F.G.L.M. Enterprises, 91 L 17357 (Cir.Ct. of Cook County). All of our bills were reviewed by principal counsel for the estate, who hired us, and found unobjectionable.

     **31.**    In determining the rates charged by the firm charges and requests, Counsel consults surveys of rates charged by other Chicago law firms. Such surveys have been relied upon by courts in awarding fees. E.g., FDIC v. Morris, 1992 U.S. Dist. LEXIS 9439 (N.D. Ill., June 29, 1992); Alliance to End Repression v. City of Chicago, 1993 U.S. Dist. LEXIS 1972 (N.D. Ill., Feb. 22, 1993).

**32.**     I am reasonably confident that the rates are accurate, based on my personal knowledge of large firm rates when I was at Kirkland & Ellis and Reuben & Proctor, my general awareness of rates in the legal community, court awards, negotiations with defendants, and discussions with other attorneys.

**33.**     The rates we used are also consistent with fee awards by courts in this or other comparable areas for comparable work:

**a.**     For example, in Covington v. District of Columbia, 839 F. Supp. 894 (D.D.C., December 13, 1993), Judge Lamberth found, on the basis of court-approved surveys of rates in the Washington, D.C., area, that it was appropriate to award $260 per hour to attorneys with between 11 and 19 years experience for the time period 1992-93. He further found that it was appropriate to have an annual increment of $10 per year or, alternatively, to multiply by 103.4% in accordance with the Consumer Price Index (the result is approximately the same). He also noted that it had been relied upon by six other District Judges in the District of Columbia and the Court of Appeals for the District of Columbia Circuit. Judge Lamberth awarded current rates for all work done in the past, in lieu of making the award at the then-current rate and awarding interest on it.

**b.**     The figures used in the Covington case have been updated each year by the office of the U. S. Attorney for the District of Columbia. The updated figures (through 2006) are in the chart attached as Appendix C, available on the Internet site of the U. S Attorney's office ("Laffey Matrix", after Laffey v. Northwest Airlines, Inc., 572 F.Supp. 354 (D.D.C. 1983).

**c.**     The use of the Laffey Matrix has been either expressly or implicitly approved by the courts in the Northern District and within the Seventh Circuit, at a minimum as a guide for adjusting attorney fee rates based on experience and cost of living increases. See Arch v. Glendale Nissan, 2005 WL 1421140, *1 (N.D. Ill. 2005); Samuel v. Barnhart, 316 F.Supp.2d 768, 781-82 (E.D. Wis. 2004); Sadler v. Barnhart, 2004 WL 419908, *3 (N.D. Ill. 2004); Covington-McIntosh v. Mount Glenwood Memory Gardens South, Inc., 2004 WL 2700482, *4 (N.D. Ill. 2004); Embry v. Barnhart, 2003 WL 22478769, *2 (N.D. Ill. 2003). See also In re HPL Technologies, Inc. Securities Litigation, 366 F.Supp.2d 912, 921 (N.D. Call. 2005) (adjusting the Laffey Matrix rates higher, to account for a higher cost of living in the San Francisco Bay area).

**d.**     The last case is instructive insofar it shows that the Laffey Matrix\ is applicable to the Chicago area. As explained in HPL Technologies, one must compare market rates to comparable market rates. The issue becomes, whether market rates in the D.C. area, which, in part, are based on the cost of living, are comparable to the market rates in Chicago. Based on the locality pay differentials within the federal courts, which may be found at http://www.opm.gov/oca/05tables/indexGS.asp (Office of Personnel Management webpage), the court in HPL Technologies increased the rates for the San Francisco by 9%, because the locality pay differentials were +15.98% for the Washington-Baltimore area, and +26.39% for the San

Francisco-Oakland-San Jose area.

       **e.**     The locality pay differential for Chicago is +19.70%, versus +15.98% for the D.C. area. See **Appendices D and E** (relevant pages from the Office of Personnel Management locality pay differentials). Thus, to account for a higher cost of living in Chicago, as compared to Washington, D.C., the Laffey Matrix rates should be adjusted upward 4%.

       **f.**     In <u>Alliance to End Repression v. City of Chicago</u>, 1993 U.S.Dist. LEXIS 1972 (N.D.Ill., Feb. 22, 1993), then-Magistrate Judge Gottschall approved rates for experienced litigators in a civil rights case of $225 in 1991 and $250 in 1992.

       **g.**     In <u>Lewis v. General Employment Enterprises, Inc.</u>, 1992 U.S.Dist. LEXIS 5464 (N.D.Ill., April 14, 1992), Judge Rovner approved rates for experienced litigators of $195, $200 and $300 for work done in 1991-92, in a case that was "not particularly difficult or risky".

       **h.**     In <u>Spicer v. Chicago Board Options Exchange</u>, 844 F.Supp. 122 (N.D.Ill. 1993), Judge Will found appropriate rates of $275 and $240 to the partners in a small firm with a practice somewhat comparable to our own, $100-120 for junior associates, $140 and $150 for associates with some experience, and $65 and $70 for legal assistants.

       **34.**     The usual rates which I and the others in my firm charge fee-paying clients are as follows:

       **a.**     Daniel Edelman, Cathleen Combs, and James Latturner (partners): $485 an hour;

       **b.**     Tara Goodwin`(partner): $385 an hour;

       **c.**     Michelle R. Teggelaar (partner): $310 an hour;

       **d.**     Associates: $190-250 an hour (based on experience); and

       **e.**     Paralegals: $100-$105 an hour (based upon experience).

       **35.**     All attorneys and legal assistants in my firm are required to and do in fact keep track of their time on a contemporaneous basis, on computer. Everyone enters their time into a computer program, by case number. The computer system automatically sorts the entries by case and generates totals. Expenses are entered into the same computer program as they are incurred. The printouts for this case are attached as <u>Appendix F</u>.

_____
Daniel A. Edelman

EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

K:\general\daefee declaration with associates 12 20 05 wpd

14

# APPENDIX A

Order Form (01/2005)    Case 1:05-cv-03133    Document 17    Filed 10/21/2005    Page 1 of 3

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 05 C 3133 | **DATE** | October 21, 2005 |
| **CASE TITLE** | Daniel Schultz vs. Oxford Mgmt. Servs., Inc. | | |

DOCKET ENTRY TEXT:

```
Plaintiff's Motion for Attorneys' Fees and Costs [14-1] is granted.  The
Court awards Plaintiff $2427.07, which includes $2108.00 in attorneys'
fees and $319.07 in costs.
```

☑[ For further details see text below ]                    Docketing to mail notices

---

### STATEMENT

On July 12, 2005, the Court entered judgment in favor of Plaintiff

pursuant to Defendant's Rule 68 Offer of Judgment in this Fair Debt

Collection Practices Act ("FDCPA") case.  Thereafter, the parties engaged

in discussions to determine the amount of Plaintiff's reasonable

attorneys' fees and costs.  The discussions broke down over a few

discrete points of contention -- such as $9.07 in postage and $40.00 for

a process server -- and Plaintiff filed the present Motion for Attorneys'

Fees and Costs on August 31, 2005.  The Court gave Defendant until

September 28, 20005 to respond to Plaintiff's motion [16-1].  Defendant

failed to file a response or other objection.  For the following reasons,

Plaintiff's motion is granted.

District courts have discretion in determining to what extent

prevailing parties may be awarded costs.  *See Weeks v. Samsung Heavy*

**STATEMENT**

*Indus. Co., Ltd.,* 126 F.3d 926, 945 (7th Cir. 1997) (citing 28 U.S.C. §
1920; Fed. R. Civ. P. 54(d)). Under the FDCPA, a prevailing party is
also entitled to reasonable attorney's fees as part of costs. *Zagorski
v. Midwest Billing Servs., Inc.,* 128 F.3d 1164, 1165-66 (7th Cir. 1997)
(citing 15 U.S.C. § 1692k(a)(3); 42 U.S.C. § 1988(b)). For Plaintiff to
recover its costs, the Court must find that the expenses are reasonable.
*See Deimer v. Cincinnati Sub-Zero Products, Inc.,* 58 F.3d 341, 345 (7th
Cir. 1995).

Plaintiff seeks $2108.00 in attorneys' fees and $319.07 in costs.
These fees and costs include the time spent on the case prior to the
Court's entry of judgment and the additional time spent negotiating and
filing the present motion for fees and costs. The Court finds the
request for fees and costs wholly reasonable in light of Plaintiff's
demonstrated good faith attempts to come to an agreement over the
appropriate amount for fees and costs. (*See* Mtn., Exhs.) Plaintiff's
fee request is reasonable both in the time frame and hourly rate, which
was calculated using the accepted "lodestar" method. (*Id.,* Appx. A).
The costs are reasonable both in content and in scope, which is limited
to only reimbursement requests for the time frame prior to the Court's
entry of judgment.

Defendant's unwillingness to come to an agreement because of their
objections over postage, process server, and photocopying charges
totaling less than $100.00 is patently unreasonable. Plaintiff even
offered to cut their photocopying charges by more than half, from $43.54
to $20.00, and informed Defendant that if the parties could not reach an
agreement, then Plaintiff would seek additional fees for time spent on

Case 1:05-cv-03133    Document 17    Filed 10/21/2005    Page 3 of 3

## STATEMENT

the present motion. (*Id.*, Exh. B). Further, Defendant's suggestion during the negotiations "that the Court should refuse to award any costs because the complaint was frivolous" is wholly unwarranted and contradicts Defendant's Offer of Judgment to pay reasonable fees and costs. (*Id.* ¶ 9 & Exh. B).

Accordingly, the Court **grants** Plaintiff's motion and awards Plaintiff $2427.07, which includes $2108.00 in attorneys' fees and $319.07 in costs (which discounts the photocopying charges by more than half, from $341.32 to $319.17 total costs).

# APPENDIX B

1

1     IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF ILLINOIS
2                 EASTERN DIVISION

3

ALLEN LEVIN,                          )  No. 03 C 2160
4                                     )
                Plaintiff,            )  Chicago, Illinois
5                                     )  September 15, 2004
        v.                            )  9:45 a.m.
6                                     )
KLUEVER & PLATT, LLC,                 )  Fairness Hearing
7                                     )
                Defendant.            )
8                                     )
                                      )
9

10             TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE JOHN W. DARRAH
11
APPEARANCES:
12
For the Plaintiff:     EDELMAN, COMBS, LATTURNER
13                     & GOODWIN, LLC, by
                       MR. FRANCIS RICHARD GREENE
14                     120 South LaSalle Street - 18th Floor
                       Chicago, Illinois 60603
15
For the Defendant:     HINSHAW & CULBERTSON, by
16                     MR. DAVID MATTHEW SCHULTZ
                       222 North LaSalle Street - Suite 300
17                     Chicago, Illinois 60601

18

19      Valarie Harris Ramsey - Official Court Reporter
            219 South Dearborn Street - Room 1212
20               Chicago, Illinois 60604
                    (312) 435-6891
21

22

23

24

25

1          THE CLERK:  03 C 2160, Levin versus Kluever & Platt.

2          MR. GREENE:  Good morning, Your Honor.  Francis

3     Greene for the plaintiff.

4          THE COURT:  Good morning, Mr. Greene.

5          MR. SCHULTZ:  David Schultz for defendant.

6          THE COURT:  Good morning, Mr. Schultz.

7          I'm sorry for the delay, counsel.

8          I had looked at this.  I reviewed the -- I read the

9     memorandum in support of the settlement agreement.  I looked

10    at the settlement agreement itself.  And you've also attached

11    a proposed order and additional material supporting the prayed

12    for relief as to attorney's fees and the like.

13         The final order I find is fair and reasonable, and I

14    find that the appropriate notice has been provided.  I find

15    that the class is appropriate pursuant to Rule 23.  I will

16    approve the terms and conditions of the settlement agreement,

17    and I find that the agreement was made in good faith and is a

18    fair resolution of the dispute between the parties.

19         Specifically as to the issue of attorney's fees, I

20    find that the amount prayed for, that's $19,500, is fairly

21    supported by the material attached in support of the prayer

22    for fees.  I find that the amount of fees as well as the

23    proposed hourly rate is fair and reasonable and is consistent

24    with a matter of this nature in this community.  And,

25    therefore, I will enter an order of final approval.

1        You've prepared a proposed order and attached it to

2    an exhibit.  Shall I just use this order, or do you have a

3    clean one?

4        MR. GREENE:  There are actually kind of two small

5    points that Your Honor needs to decide and then -- because the

6    final order that I submitted kind of gives two different

7    options.  One issue is we -- under the settlement agreement,

8    Mr. Levin, the plaintiff, is going to get a thousand dollars.

9    We've asked for an additional 500 hundred dollars for his

10   services as a class representative.

11       THE COURT:  I see.  And I'm going to award 1500.

12   I'll award the additional 500.

13       MR. SCHULTZ:  Can I comment to that, Your Honor?

14       THE COURT:  Sure.  Lets hear an argument on $500.  Go

15   ahead.  No, go ahead.

16       MR. SCHULTZ:  Either the class will get 6,000 or will

17   get 5500, so it's taking something from the class, and the

18   statute says that what the court can award is a thousand, 69

19   2K.

20       THE COURT:  Is that right, Mr. Greene, that I don't

21   have the authority to award in excess of a thousand?

22       MR. GREENE:  For his statutory damages.

23       THE COURT:  What's the authority, then, for the

24   additional 500 bucks?

25       MR. GREENE:  The authority is this is just something

4

1 | that's done, I mean.

2 | THE COURT:  Then I will amend what I said a moment

3 | ago and award one thousand dollars.

4 | What's the other difficulty in the order?

5 | MR. GREENE:  259 claim forms were received on a

6 | timely basis.  There were 21 that were received after the due

7 | date, and we're requesting that those 21 claim forms that were

8 | received that were untimely be deemed timely and that they --

9 | THE COURT:  Any objection to that?

10 | MR. SCHULTZ:  No objection.

11 | THE COURT:  I think that's fair and will deem the

12 | additional 21 claims to be deemed as having been received in a

13 | timely fashion.

14 | MR. GREENE:  In light of Your Honor's rulings, maybe

15 | what I'll do is just bring a revised order later in the day.

16 | THE COURT:  Okay.  Thanks.

17 | MR. GREENE:  Thank you.

18 | MR. SCHULTZ:  Thank you.

19 | *     *     *     *     *     *     *

20 | C E R T I F I C A T E

21 |

22 | I hereby certify that the foregoing is a true and

23 | correct transcript of the above-entitled matter.

24 |

25 | _____        _____
Official Court Reporter                    Date

# APPENDIX C

Civil Division - United States Attorney's Office for the District of Columbia                      Page 1 of 2



## UNITED STATES ATTORNEY'S OFFICE
### FOR THE DISTRICT OF COLUMBIA

555 4TH STREET, NW
WASHINGTON, DC 20530
(202) 514-7566

HOME

U.S. ATTORNEY

ABOUT US

DIVISIONS

COMMUNITY
PROSECUTION

PROGRAMS
FOR YOUTH

VICTIM WITNESS
ASSISTANCE

PARTNERSHIPS

PRESS RELEASES

EMPLOYMENT

ESPAÑOL

CONTACT US

LINKS

SITE MAP

### LAFFEY MATRIX 2003 - 2006

Years (Rate for June 1 - May 31, based on prior year's CPI-U)

| Experience | 03-04 | 04-05 | 05-06 |
|---|---|---|---|
| 20+ years | 380 | 390 | 405 |
| 11-19 years | 335 | 345 | 360 |
| 8-10 years | 270 | 280 | 290 |
| 4-7 years | 220 | 225 | 235 |
| 1-3 years | 180 | 185 | 195 |
| Paralegals & | 105 | 110 | 115 |
| Law Clerks | | | |

### Explanatory Notes

1   This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. The matrix is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable" attorney's fees  See, e g , 42 U S C  § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U S C  § 552(a)(4)(E) (Freedom of Information Act); 28 U S C  § 2412 (b) (Equal Access to Justice Act)  The matrix does not apply in cases in which the hourly rate is limited by statute  See 28 U S C  § 2412(d)

2   This matrix is based on the hourly rates allowed by the District Court in Laffey v  Northwest Airlines, Inc , 572 F  Supp  354 (D D C  1983), aff'd in part, rev'd in part on other grounds, 746 F 2d 4 (D C  Cir  1984), cert  denied, 472 U S  1021 (1985)  It is commonly referred to by attorneys and federal judges in the District of Columbia as the "Laffey Matrix" or the "United States Attorney's Office Matrix " The column headed "Experience" refers to the years following the attorney's graduation from law school  The various "brackets" are intended to correspond to "junior associates" (1-3 years after law school graduation), "senior associates" (4-7 years), "experienced federal court litigators" (8-10 and 11-19 years), and "very experienced federal court litigators" (20 years or more)  See Laffey, 572 F  Supp  at 371

3   The hourly rates approved by the District Court in Laffey were for work done principally in 1981-82. The Matrix begins with those rates  See Laffey, 572 F  Supp  at 371 (attorney rates) & 386 n 74 (paralegal and law clerk rate)  The rates for subsequent yearly periods were determined by adding the change in the cost of living for the Washington, D C  area to the applicable rate for the prior year, and then rounding to the nearest multiple of $5 (up if within $: of the next multiple of $5)  The result is subject to adjustment if appropriate to ensure that the relationship between the highest rate and the lower rates remains reasonably constant Changes in the cost of living are measured by the Consumer Price Index for All Urban Consumers (CPI-U) for Washington-Baltimore, DC-MD-VA-WV, as announced by the Bureau of Labor Statistics for May of each year

4   Use of an updated Laffey Matrix was implicitly endorsed by the Court of Appeals in Save Our Cumberland Mountains v  Hodel, 857 F 2d 1516, 1525 (D C  Cir  1988) (en banc)  The Court o

Civil Division - United States Attorney's Office for the District of Columbia    Page 2 of 2



Appeals subsequently stated that parties may rely on the updated *Laffey* Matrix prepared by the United States Attorney's Office as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area  See *Covington v. District of Columbia*, 57 F 3d 1101, 1105 & n 14, 1109 (D C  Cir  1995), *cert. denied*, 516 U S. 1115 (1996)  Lower federal courts in the District of Columbia have used this updated *Laffey* Matrix when determining whether fee awards under fee-shifting statutes are reasonable  *See, e g , Blackman v  District of Columbia*, 59 F  Supp  2d 37, 43 (D.D C  1999); *Jefferson v  Milvets System Technology, Inc.*, 986 F  Supp  6, 11 (D D C  1997); *Ralph Hoar & Associates v  Nat'l Highway Transportation Safety Admin* , 985 F. Supp  1, 9-10 n 3 (D D C  1997); *Martini v. Fed  Nat'l Mtg Ass'n*, 977 F  Supp  482, 485 n 2 (D D C  1997); *Park v  Howard University*, 881 F  Supp  653, 654 (D D C  1995)

Home  |  DOJ  |  EOUSA  |  DOJ For Kids  |  Privacy Policy

# APPENDIX D

## SALARY TABLE 2005-CHI
### INCORPORATING THE 2.50% GENERAL SCHEDULE INCREASE AND A LOCALITY PAYMENT OF 19.70%
### FOR THE LOCALITY PAY AREA OF CHICAGO-NAPERVILLE-MICHIGAN CITY, IL-IN-WI
### (TOTAL INCREASE: 3.75%)

(See http://www.opm.gov/oca/05tables/locdef.asp for definitions of locality pay areas.)

**EFFECTIVE JANUARY 2005**

Hourly Basic (B) Rates by Grade and Step
Hourly Overtime (O) Rates by Grade and Step

| GRADE | B/O | STEP 1 | STEP 2 | STEP 3 | STEP 4 | STEP 5 | STEP 6 | STEP 7 | STEP 8 | STEP 9 | STEP 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GS-1 | B | $ 9.19 | $ 9.49 | $ 9.80 | $ 10.10 | $ 10.41 | $ 10.59 | $ 10.89 | $ 11.19 | $ 11.21 | $ 11.49 |
|  | O | 13.79 | 14.24 | 14.70 | 15.15 | 15.62 | 15.89 | 16.34 | 16.79 | 16.82 | 17.24 |
| 2 | B | 10.33 | 10.57 | 10.92 | 11.21 | 11.33 | 11.66 | 12.00 | 12.33 | 12.66 | 13.00 |
|  | O | 15.50 | 15.86 | 16.38 | 16.82 | 17.00 | 17.49 | 18.00 | 18.50 | 18.99 | 19.50 |
| 3 | B | 11.27 | 11.64 | 12.02 | 12.40 | 12.77 | 13.15 | 13.52 | 13.90 | 14.27 | 14.65 |
|  | O | 16.91 | 17.46 | 18.03 | 18.60 | 19.16 | 19.73 | 20.28 | 20.85 | 21.41 | 21.98 |
| 4 | B | 12.65 | 13.07 | 13.49 | 13.91 | 14.34 | 14.76 | 15.18 | 15.60 | 16.02 | 16.44 |
|  | O | 18.98 | 19.61 | 20.24 | 20.87 | 21.51 | 22.14 | 22.77 | 23.40 | 24.03 | 24.66 |
| 5 | B | 14.15 | 14.63 | 15.10 | 15.57 | 16.04 | 16.51 | 16.99 | 17.46 | 17.93 | 18.40 |
|  | O | 21.23 | 21.95 | 22.65 | 23.36 | 24.06 | 24.77 | 25.49 | 26.19 | 26.90 | 27.60 |
| 6 | B | 15.78 | 16.30 | 16.83 | 17.35 | 17.88 | 18.40 | 18.93 | 19.46 | 19.98 | 20.51 |
|  | O | 23.67 | 24.45 | 25.25 | 26.03 | 26.82 | 27.60 | 28.40 | 29.19 | 29.97 | 30.77 |
| 7 | B | 17.53 | 18.12 | 18.70 | 19.29 | 19.87 | 20.45 | 21.04 | 21.62 | 22.21 | 22.79 |
|  | O | 26.30 | 27.18 | 28.05 | 28.94 | 29.81 | 30.68 | 31.56 | 32.43 | 33.32 | 34.19 |
| 8 | B | 19.42 | 20.06 | 20.71 | 21.36 | 22.00 | 22.65 | 23.30 | 23.94 | 24.59 | 25.24 |
|  | O | 29.13 | 30.09 | 31.07 | 32.04 | 33.00 | 33.98 | 34.95 | 35.43 | 35.43 | 35.43 |
| 9 | B | 21.45 | 22.16 | 22.87 | 23.59 | 24.30 | 25.02 | 25.73 | 26.45 | 27.16 | 27.88 |
|  | O | 32.18 | 33.24 | 34.31 | 35.39 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 |
| 10 | B | 23.62 | 24.40 | 25.19 | 25.98 | 26.77 | 27.55 | 28.34 | 29.13 | 29.92 | 30.70 |
|  | O | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 |
| 11 | B | 25.95 | 26.81 | 27.66 | 28.54 | 29.40 | 30.27 | 31.14 | 32.00 | 32.87 | 33.73 |
|  | O | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 |
| 12 | B | 31.10 | 32.14 | 33.17 | 34.21 | 35.24 | 36.28 | 37.32 | 38.35 | 39.39 | 40.43 |
|  | O | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 |
| 13 | B | 36.98 | 38.21 | 39.45 | 40.68 | 41.91 | 43.14 | 44.38 | 45.61 | 46.84 | 48.07 |
|  | O | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 |
| 14 | B | 43.70 | 45.16 | 46.61 | 48.07 | 49.53 | 50.98 | 52.44 | 53.90 | 55.36 | 56.81 |
|  | O | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 | 35.43 |
| 15 | B | 51.40 | 53.12 | 54.83 | 56.55 | 58.26 | 59.97 | 61.69 | 63.40 | 65.11 | 66.83 |
|  | O | 51.40 | 53.12 | 54.83 | 56.55 | 58.26 | 59.97 | 61.69 | 63.40 | 65.11 | 66.83 |

NOTE: Locality rates of pay are base pay only for certain purposes—see "Salary Tables for 2005" cover sheet.

# APPENDIX E

## SALARY TABLE 2005-DCB

INCORPORATING THE 2.50% GENERAL SCHEDULE INCREASE AND A LOCALITY PAYMENT OF 15.98%

FOR THE LOCALITY PAY AREA OF WASHINGTON-BALTIMORE-NORTHERN VIRGINIA, DC-MD-PA-VA-WV

(See http://www.opm.gov/oca/05tables/locdef.asp for definitions of locality pay areas.)

(TOTAL INCREASE: 2.71%)

EFFECTIVE JANUARY 2005

Hourly Basic (B) Rates by Grade and Step

Hourly Overtime (O) Rates by Grade and Step

| GRADE | B/O | STEP 1 | STEP 2 | STEP 3 | STEP 4 | STEP 5 | STEP 6 | STEP 7 | STEP 8 | STEP 9 | STEP 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GS-1 | B | $ 8.90 | 9.20 | 9.49 | 9.79 | 10.08 | 10.25 | 10.54 | 10.83 | 10.85 | $ 11.12 |
|  | O | 13.35 | 13.80 | 14.24 | 14.69 | 15.12 | 15.38 | 15.81 | 16.25 | 16.28 | 16.68 |
| 2 | B | 10.01 | 10.24 | 10.58 | 10.85 | 10.97 | 11.30 | 11.62 | 11.94 | 12.26 | 12.59 |
|  | O | 15.02 | 15.36 | 15.87 | 16.28 | 16.46 | 16.95 | 17.43 | 17.91 | 18.39 | 18.89 |
| 3 | B | 10.92 | 11.28 | 11.65 | 12.01 | 12.37 | 12.74 | 13.10 | 13.47 | 13.83 | 14.19 |
|  | O | 16.38 | 16.92 | 17.48 | 18.02 | 18.56 | 19.11 | 19.65 | 20.21 | 20.75 | 21.29 |
| 4 | B | 12.26 | 12.67 | 13.07 | 13.48 | 13.89 | 14.30 | 14.71 | 15.12 | 15.52 | 15.93 |
|  | O | 18.39 | 19.01 | 19.61 | 20.22 | 20.84 | 21.45 | 22.07 | 22.68 | 23.28 | 23.90 |
| 5 | B | 13.71 | 14.17 | 14.63 | 15.08 | 15.54 | 16.00 | 16.45 | 16.91 | 17.37 | 17.82 |
|  | O | 20.57 | 21.26 | 21.95 | 22.62 | 23.31 | 24.00 | 24.68 | 25.37 | 26.06 | 26.73 |
| 6 | B | 15.29 | 15.80 | 16.31 | 16.82 | 17.32 | 17.83 | 18.34 | 18.85 | 19.36 | 19.87 |
|  | O | 22.94 | 23.70 | 24.47 | 25.23 | 25.98 | 26.75 | 27.51 | 28.28 | 29.04 | 29.81 |
| 7 | B | 16.99 | 17.55 | 18.12 | 18.69 | 19.25 | 19.82 | 20.38 | 20.95 | 21.52 | 22.08 |
|  | O | 25.49 | 26.33 | 27.18 | 28.04 | 28.88 | 29.73 | 30.57 | 31.43 | 32.28 | 33.12 |
| 8 | B | 18.81 | 19.44 | 20.07 | 20.69 | 21.32 | 21.95 | 22.57 | 23.20 | 23.83 | 24.45 |
|  | O | 28.22 | 29.16 | 30.11 | 31.04 | 31.98 | 32.93 | 33.86 | 34.32 | 34.32 | 34.32 |
| 9 | B | 20.78 | 21.47 | 22.16 | 22.86 | 23.55 | 24.24 | 24.93 | 25.63 | 26.32 | 27.01 |
|  | O | 31.17 | 32.21 | 33.24 | 34.29 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 |
| 10 | B | 22.88 | 23.64 | 24.41 | 25.17 | 25.93 | 26.70 | 27.46 | 28.22 | 28.99 | 29.75 |
|  | O | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 |
| 11 | B | 25.14 | 25.98 | 26.82 | 27.65 | 28.49 | 29.33 | 30.17 | 31.01 | 31.84 | 32.68 |
|  | O | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 |
| 12 | B | 30.13 | 31.14 | 32.14 | 33.14 | 34.15 | 35.15 | 36.16 | 37.16 | 38.17 | 39.17 |
|  | O | 34.32 | 34.32 | 34.32 | 34.32 | 34.32 | 35.15 | 36.16 | 37.16 | 38.17 | 39.17 |
| 13 | B | 35.83 | 37.03 | 38.22 | 39.41 | 40.61 | 41.80 | 43.00 | 44.19 | 45.39 | 46.58 |
|  | O | 35.83 | 37.03 | 38.22 | 39.41 | 40.61 | 41.80 | 43.00 | 44.19 | 45.39 | 46.58 |
| 14 | B | 42.34 | 43.75 | 45.17 | 46.58 | 47.99 | 49.40 | 50.81 | 52.22 | 53.63 | 55.05 |
|  | O | 42.34 | 43.75 | 45.17 | 46.58 | 47.99 | 49.40 | 50.81 | 52.22 | 53.63 | 55.05 |
| 15 | B | 49.81 | 51.47 | 53.13 | 54.79 | 56.45 | 58.11 | 59.77 | 61.43 | 63.09 | 64.75 |
|  | O | 49.81 | 51.47 | 53.13 | 54.79 | 56.45 | 58.11 | 59.77 | 61.43 | 63.09 | 64.75 |

NOTE: Locality rates of pay are basic pay only for certain purposes—see "Salary Tables for 2005" cover sheet.

# APPENDIX F

Edelman, Combs, Latturner & Goodwin LLC
120 S. LaSalle St, 18th Floor
Chicago, IL 60603-3403

163 Gerry Rd                                            Date: 11/30/2006
Chestnut Hill, MA 02467-3185

Regarding: NATIONAL FINANCIAL SYSTEMS V. TIMOTHY BROWD
Invoice No: 6

## Services Rendered

| Date | Staff | Description | Hours | Rate | Charges |
|------|-------|-------------|-------|------|---------|
| 8/06/2004 | DAE | prepare complaint | 2 00 | $480 00 | $960 00 |
| 9/01/2004 | FRG | conf. MRT, HAP re: filing a case in Mass | 0 40 | $250 00 | $100 00 |
| 9/01/2004 | MRT | rev and assign | 0 30 | $310 00 | $93 00 |
| 9/02/2004 | FRG | chapter 93 a letter | 0 30 | $250 00 | $75 00 |
| 9/02/2004 | FRG | conf. MRT, DAE re: Yvonne Rosmarin's participation in case; looked for Rosmarin's letterhead | 0 60 | $250 00 | $150 00 |
| 9/02/2004 | FRG | conf. HAP re: Chapter 93a letter | 0 20 | $250 00 | $50 00 |
| 9/02/2004 | XKP2 | research MA District Cout Online, download forms, conf Clerk, HAP1 | 0 60 | $100 00 | $60 00 |
| 9/03/2004 | XKP2 | prep docs for filing, | 0 50 | $100 00 | $50 00 |
| 9/08/2004 | XKP2 | research process servers, re:serving summons | 0 40 | $100 00 | $40 00 |
| 9/08/2004 | XKP2 | draft client letter, mail docs | 0 30 | $100 00 | $30 00 |
| 9/08/2004 | XKP2 | organize docs and complaint for filing, assemble and locate exhibits | 0 50 | $100 00 | $50 00 |
| 9/09/2004 | FRG | reviewed client letter | 0 10 | $250 00 | $25 00 |
| 9/10/2004 | FRG | revised 93 a letter; mailed to local counsel | 0 30 | $250 00 | $75 00 |
| 9/13/2004 | FRG | t/c client; local counsel re: complaint, 93a | 0 30 | $250 00 | $75 00 |

Edelman, Combs, Latturner & Goodwin LLC
Page No :     2

letter

| 9/13/2004 | FRG | tc local counsel re: 93a letter | 0 50 | $250 00 | $125 00 |
|---|---|---|---|---|---|
| 9/13/2004 | FRG | t/c Y Rosmarin re: letter received by client | 0 10 | $250 00 | $25 00 |
| 9/13/2004 | XKP2 | fax docs to cc, conf call | 0 10 | $100 00 | $10 00 |
| 9/14/2004 | FRG | accessed Mass  Div. Of Banks; printed revised regs re: debt collectors | 0 30 | $250 00 | $75 00 |
| 9/14/2004 | FRG | e-mailed Y Rosmarin re: client's info | 0 20 | $250 00 | $50 00 |
| 9/15/2004 | FRG | chapter 93a letter | 0 40 | $250 00 | $100 00 |
| 9/15/2004 | FRG | chapter 93a letter | 0 50 | $250 00 | $125 00 |
| 9/16/2004 | FRG | t/c client re: complaint | 0 10 | $250 00 | $25 00 |
| 9/16/2004 | FRG | memo to file re: conversation w/ client | 0 10 | $250 00 | $25 00 |
| 9/17/2004 | FRG | conf. TLG re: 93a letter | 0 10 | $250 00 | $25 00 |
| 9/23/2004 | XKP2 | mail docs to cc and client, draft letter | 0 30 | $100 00 | $30 00 |
| 9/27/2004 | FRG | revised complaint | 0 30 | $250 00 | $75 00 |
| 9/27/2004 | FRG | revisions to the complaint | 0 10 | $250 00 | $25 00 |
| 9/27/2004 | JOL | work on complaint; jconf cmc; conf dae OK | 0 40 | $480 00 | $192 00 |
| 9/28/2004 | FRG | conf. KP2 re: filing complaint; t/c local counsel re: same | 0 10 | $250 00 | $25 00 |
| 9/28/2004 | FRG | conf. KP2 re: filing complaint | 0 10 | $250 00 | $25 00 |
| 9/28/2004 | FRG | pro hac motions | 0 50 | $250 00 | $125 00 |
| 9/28/2004 | FRG | got pro hac motions signed, notarized | 0 30 | $250 00 | $75 00 |
| 9/28/2004 | FRG | conf. KP2 re: various issues relating to filing complaint in Massachusetts | 0 30 | $250.00 | $75 00 |
| 9/28/2004 | FRG | downloaded local rules for District of Mass | 0 10 | $250 00 | $25 00 |
| 9/28/2004 | FRG | t/c W. Oney re: filing complaint | 0 10 | $250 00 | $25 00 |

| 9/28/2004 | XKP2 | organize docs and prepare for filing | 0 30 | $100 00 | $30 00 |
| 9/28/2004 | XKP2 | download new forms and fill out, reseach on website, conf ct clerk few times | 0 80 | $100 00 | $80 00 |
| 9/28/2004 | XKP2 | type out new forms | 0 60 | $100 00 | $60 00 |
| 9/29/2004 | FRG | t/c oc re: 93a letter | 0 10 | $250 00 | $25 00 |
| 9/29/2004 | XKP2 | copies, mail docs via ups | 0 30 | $100 00 | $30 00 |
| 9/29/2004 | XKP2 | prep letter for cc in MA, organize docs | 0 90 | $100 00 | $90 00 |
| 9/30/2004 | FRG | conf. DAE re: local counsel | 0 10 | $250 00 | $25 00 |
| 9/30/2004 | FRG | conf KP2, DAE re: exhibits | 0 10 | $250 00 | $25 00 |
| 9/30/2004 | JB | Conf KP2 re: scanned doc | 0 10 | $105 00 | $10 50 |
| 9/30/2004 | XKP2 | locate and research exhibits | 0 90 | $100 00 | $90 00 |
| 10/05/2004 | FRG | conf DAE re: conversation w/ Millard Johnson re: 93a letter | 0 10 | $250 00 | $25 00 |
| 10/05/2004 | FRG | t/c Millard Johnson re: 93a letter | 0 20 | $250 00 | $50 00 |
| 10/08/2004 | FRG | e-mailed W. Oney re: indemnification | 0 10 | $250 00 | $25 00 |
| 10/08/2004 | FRG | conf. DAE re: indeminfying Walter Oney | 0 10 | $250 00 | $25 00 |
| 10/11/2004 | FRG | conf DC1 re: letter from client; t/c client | 0 10 | $250 00 | $25 00 |
| 10/18/2004 | FRG | t/c Susan Reed re: settlement | 0 30 | $250 00 | $75 00 |
| 10/20/2004 | XAB | change docket | 0 10 | $100 00 | $10 00 |
| 2/18/2005 | FRG | reviewed complaint | 0 10 | $250 00 | $25 00 |
| 2/22/2005 | FRG | letter to client w/ complaint | 0 20 | $250 00 | $50 00 |
| 2/22/2005 | XKP2 | prep docs for mailing, sort exhibits to the complaint, read DAE memos, make changes, copies | 0 40 | $100 00 | $40 00 |
| 2/23/2005 | JOL | work on complaint   conf frg  OK | 0 30 | $480 00 | $144 00 |
| 2/25/2005 | XKP2 | make changes to the complaint | 0 20 | $100 00 | $20 00 |
| 2/28/2005 | FRG | t/c client re: approval of complaint | 0 10 | $250 00 | $25 00 |

| 3/07/2005 | XKP2 | prep pro hac motions | 0.40 | $100.00 | $40.00 |
|---|---|---|---|---|---|
| 3/09/2005 | FRG | conf, KP2 re: whether complaint had been filed | 0.10 | $250.00 | $25.00 |
| 3/09/2005 | XKP2 | research on pacer online | 0.20 | $100.00 | $20.00 |
| 3/10/2005 | XKP2 | draft letter for cc, UPS docs | 0.30 | $100.00 | $30.00 |
| 3/15/2005 | XKP2 | mail letter to cc | 0.10 | $100.00 | $10.00 |
| 3/19/2005 | DAE | prepare discovery for MA case | 1.00 | $480.00 | $480.00 |
| 3/22/2005 | JA | drft ltr; call proc serv; prep/send to proc serv for service | 0.50 | $100.00 | $50.00 |
| 3/24/2005 | JA | orgnz docs for binder; dct | 0.60 | $100.00 | $60.00 |
| 3/30/2005 | FRG | conf. JA5 re: sending 93a letter | 0.20 | $250.00 | $50.00 |
| 3/30/2005 | JA | drft ltr; serv docs to def; counsl; clnt; dct | 0.50 | $100.00 | $50.00 |
| 4/07/2005 | FRG | t/c Al Fowerbaugh re: extension | 0.10 | $250.00 | $25.00 |
| 4/07/2005 | SW | Docket Notice of Electronic Filing | 0.10 | $100.00 | $10.00 |
| 4/25/2005 | SW | Docket Collection Notice | 0.10 | $100.00 | $10.00 |
| 5/02/2005 | SW | Docket D's Ans & Aff defense to to P's class action comp | 0.10 | $100.00 | $10.00 |
| 5/03/2005 | JB | Conf EH2; call to Mass Courts | 0.20 | $105.00 | $21.00 |
| 5/04/2005 | FRG | reviewed status of case; conf. DAE re: filing motion for leave to file amended complaint | 0.10 | $250.00 | $25.00 |
| 5/04/2005 | SW | Copy exhibits for Amended complaint | 0.20 | $100.00 | $20.00 |
| 5/05/2005 | FRG | t/c Al Fowerbaugh; conf HAP re: Rule 7.1 conf | 0.10 | $250.00 | $25.00 |
| 5/05/2005 | FRG | conf. HAP re Rule 7.1 conf  Conf  JB2 re service of 93a letter; tc oc; faxed 93a letter to oc; | 0.40 | $250.00 | $100.00 |
| 5/06/2005 | FRG | t/c M. Salemi re: motion for leave to file amended complaint | 0.10 | $250.00 | $25.00 |

| Date | | | | | |
|------|------|------|------|------|------|
| 5/06/2005 | FRG | reviewed motion for leave to file amended complaint | 0 20 | $250 00 | $50 00 |
| 5/06/2005 | JB | Conf FRG; do certified letter search on USPS for FRG | 0 20 | $105 00 | $21 00 |
| 5/06/2005 | SW | Draft Motion Leave File Amend Comp; edit cert serv same | 0 70 | $100 00 | $70 00 |
| 5/10/2005 | FRG | conf. HAP, SW re: e-filing | 0 30 | $250.00 | $75 00 |
| 5/10/2005 | FRG | conf  SW re: filing amended complaint | 0 10 | $250 00 | $25 00 |
| 5/10/2005 | FRG | conf  SW re: filing motion for leave to file amended complaint | 0 20 | $250 00 | $50 00 |
| 5/10/2005 | FRG | reviewed d's answer to the complaint | 0 10 | $250 00 | $25 00 |
| 5/10/2005 | HAK | Conf FRG re MA procedure | 0 10 | $225 00 | $22 50 |
| 5/10/2005 | HAK | Conf CML re amd cmplt | 0 10 | $225 00 | $22 50 |
| 5/10/2005 | SW | Docket mtn leave file amend comp; edit service list same; e-file same; | 1 50 | $100 00 | $150 00 |
| 5/10/2005 | SW | Edit mot file amend comp | 0 70 | $100 00 | $70 00 |
| 5/11/2005 | FRG | reviewed ocs e-mail re: Rule 26f conf | 0 10 | $250 00 | $25 00 |
| 5/11/2005 | FRG | letter to oc re: Rule 26f conf | 0 20 | $250 00 | $50 00 |
| 5/11/2005 | JA | assist/train para to e-file docs | 0 30 | $100 00 | $30 00 |
| 5/12/2005 | FRG | e-mailed ocs re: Rule 26f conf | 0 10 | $250 00 | $25 00 |
| 5/13/2005 | SW | research appearance by OC online | 0 30 | $100 00 | $30 00 |
| 5/17/2005 | FRG | prepared for, participated in Rule 26f conf | 1 00 | $250 00 | $250 00 |
| 5/18/2005 | SW | Draft 26f report & Local rule 16 1 (d) cert | 1 20 | $100 00 | $120 00 |
| 5/19/2005 | FRG | reviewed Local Rule 16 1; t/c client re: same; letter to client re: L.R  16 1 Certification | 0 60 | $250.00 | $150 00 |
| 5/23/2005 | FRG | reviewed corrected complaint | 0 10 | $250 00 | $25 00 |
| 5/23/2005 | FRG | reviewed motion to file corrected complaint | 0 10 | $250 00 | $25 00 |

| 5/23/2005 | SW | Edit amend comp; draft mot leav file amend comp; e-file both and serve mail, conf JB2 & MA Ct. same | 1.90 | $100.00 | $190.00 |
|---|---|---|---|---|---|
| 5/24/2005 | FRG | drafted Report of Planning Conference | 0.90 | $250.00 | $225.00 |
| 5/24/2005 | JB | Confs SW | 0.10 | $105.00 | $10.50 |
| 5/24/2005 | SW | research dates of filing of ret of service of summons | 0.20 | $100.00 | $20.00 |
| 5/24/2005 | SW | Letter Client re: amend comp; e-file ret serv summ docket same call MA Ct same; update case info | 0.90 | $100.00 | $90.00 |
| 5/26/2005 | SW | Research & e-file ret of serv summons | 0.50 | $100.00 | $50.00 |
| 5/27/2005 | SW | Docket P's unopp mot file amend complaint & notice of elect filing & amended complaint | 0.20 | $100.00 | $20.00 |
| 6/01/2005 | SW | Docket 16.1 d certification | 0.10 | $100.00 | $10.00 |
| 6/10/2005 | FRG | t/c M. Salemi re: filing parties joint statement | 0.10 | $250.00 | $25.00 |
| 6/10/2005 | FRG | dealing with filing and service issues | 0.70 | $250.00 | $175.00 |
| 6/10/2005 | FRG | reviewed d's changes to parties joint status report | 0.30 | $250.00 | $75.00 |
| 6/10/2005 | FRG | t/c M. Salemi re: parties status report | 0.10 | $250.00 | $25.00 |
| 6/10/2005 | FRG | conf. DAE re: settlement demand | 0.10 | $250.00 | $25.00 |
| 6/10/2005 | FRG | t/c M. Salemi re: filing parties joint status report | 0.10 | $250.00 | $25.00 |
| 6/10/2005 | FRG | t/c C. Lefebvre re: review of parties joint status report, settlement demand etc. | 0.10 | $250.00 | $25.00 |
| 6/10/2005 | FRG | e-mailed dox to C. Lebebvre for review | 0.20 | $250.00 | $50.00 |
| 6/10/2005 | FRG | drafted settlement demand | 0.30 | $250.00 | $75.00 |
| 6/10/2005 | SW | File via ovnight in MA & serve mail & fax-16.1d Cert and Rep of Rule 26f; scan same; conf FRG same | 0.90 | $100.00 | $90.00 |

| 6/13/2005 | FRG | t/c M. Salemi re: electronic filing of joint status report | 0 10 | $250 00 | $25 00 |
| 6/13/2005 | SW | lett client re: filing of rule 26f conf & 16 1 D cert; docket same; docket sett demand to Broadley | 0 50 | $100 00 | $50 00 |
| 6/14/2005 | SW | Docket Not elec filing D's pro hac vice | 0 10 | $100 00 | $10 00 |
| 6/15/2005 | FRG | e-mailed Lefeb. Re filing Rule 16.1 certification | 0 10 | $250.00 | $25 00 |
| 6/15/2005 | SW | Prep 16.1d cert for e-filing; conf FRG re: Lefebve needs to e-file this | 0 40 | $100.00 | $40 00 |
| 6/21/2005 | FRG | reviewed answer to amended complaint | 0 10 | $250 00 | $25 00 |
| 6/21/2005 | SW | Docket order ADR, D ans to Correc amend comp & lefebve e-mail; research J Saris' stand order | 0 60 | $100 00 | $60 00 |
| 6/22/2005 | FRG | reviewed Rules 26a1 disclosures | 0 10 | $250 00 | $25 00 |
| 6/22/2005 | SW | Draft 26(a)(1) disclosure; conf FRG same; collect copy and attach exhibits same | 1 20 | $100 00 | $120 00 |
| 6/29/2005 | SW | Dft 26a1 disc; e-file, Docket, serve same, conf OC re: efil; dft lett lefebv re: 16 1, conf FRG same | 1 60 | $100 00 | $160 00 |
| 6/30/2005 | FRG | t/c M. Salemi re: NFS's overdue Rule 26a1 disclosures | 0 10 | $250 00 | $25 00 |
| 6/30/2005 | SW | Edit & fax letter to Lefebve re: 16 1 | 0 20 | $100 00 | $20 00 |
| 7/05/2005 | SW | Edit lett to Lefebvre; copy 16.1 cert; conf FRG same; mail lett & 16 1 to Lefebvre | 0 30 | $100.00 | $30 00 |
| 7/07/2005 | FRG | reviewed Rule 26a1 disclosures | 0.10 | $250 00 | $25 00 |
| 7/07/2005 | SW | Docket cert of consultation and National Fin's 26a1 | 0 10 | $100 00 | $10 00 |
| 7/12/2005 | FRG | conf. CMC; e-mailed Chris L re: choosing mediators | 0 20 | $250 00 | $50 00 |
| 7/12/2005 | FRG | t/c M Salemi re: settlement demand; dox referred to in Rule 26a1 disclosures | 0 10 | $250 00 | $25 00 |

| 7/13/2005 | SW | Docket ADR e-mail | 0 10 | $100 00 | $10 00 |
| 7/14/2005 | SW | Make sure disc drafted for FRG | 0 20 | $100 00 | $20 00 |
| 7/15/2005 | FRG | conf SW re: 16 1 certification; e-mailed, faxed Rule 16 1 Certification to C Lefebvre | 0 20 | $250 00 | $50 00 |
| 7/15/2005 | FRG | reviewed proposed discovery | 0 30 | $250 00 | $75 00 |
| 7/15/2005 | FRG | reviewed e-mail from C Lefebvre re: Rule 16 1 certification | 0 10 | $250 00 | $25 00 |
| 7/15/2005 | SW | Edit RFA sign line & tombstone; resear & fax 16 1 to lefebvre; Conf FRG same; collect exhs for disc | 0 70 | $100 00 | $70 00 |
| 7/18/2005 | SW | Edit cert serve on P's Disc Reqs; research OCS fax #' serve same fax & mail; docket same | 0 50 | $100 00 | $50 00 |
| 7/20/2005 | FRG | t/c M Salemi re: choosing mediator | 0 10 | $250 00 | $25 00 |
| 7/20/2005 | FRG | e-mailed client re: availability for mediation | 0 10 | $250 00 | $25 00 |
| 7/21/2005 | FRG | reviewed website re: mediation; reviewed list of mediators | 0 30 | $250 00 | $75 00 |
| 7/22/2005 | FRG | reviewed list of mediators; e-mailed oc re: same | 0 20 | $250 00 | $50 00 |
| 7/22/2005 | FRG | t/c M Salmei re: choice of mediator | 0 10 | $250 00 | $25 00 |
| 7/26/2005 | SW | Docket Docs produced in 26a1 & ADR Panel E-mail | 0 10 | $100 00 | $10 00 |
| 8/02/2005 | SW | Docket Confirmation of Mediator | 0 10 | $100 00 | $10 00 |
| 8/04/2005 | FRG | e-mailed client re: mediation | 0 10 | $250 00 | $25 00 |
| 9/01/2005 | FRG | reviewed d's answers to p's discovery requests; letter to oc re: same | 0 60 | $250 00 | $150 00 |
| 9/01/2005 | SW | Conf EK re: ECF Notice not docketed; conf FRG same | 0 30 | $100 00 | $30 00 |
| 9/07/2005 | FRG | conf HAP, SW, EK re: deadline to answer discovery in Massachusetts | 0 10 | $250 00 | $25 00 |

Edelman, Combs, Latturner & Goodwin LLC
Page No.:    9

| | | | | | |
|---|---|---|---|---|---|
| 9/07/2005 | SW | Fix Docket to reflect deadline for our response to disc, conf EK same | 0 20 | $100 00 | $20 00 |
| 9/08/2005 | FRG | rule 37 conference | 0 20 | $250 00 | $50 00 |
| 9/09/2005 | FRG | letter to oc confirming Rule 37 conversation | 0 10 | $250 00 | $25 00 |
| 9/12/2005 | SW | Docket electronic order | 0 10 | $100 00 | $10 00 |
| 9/14/2005 | SW | Call MA dist ct re: file 16 1 cert; edit 16 1 cert and send to client for sign | 0 50 | $100 00 | $50 00 |
| 9/15/2005 | FRG | e-mailed ocs re: net worth | 0 10 | $250 00 | $25 00 |
| 9/15/2005 | FRG | reviewed defendant's answers to document requests | 0 50 | $250 00 | $125 00 |
| 9/16/2005 | SW | Begin to enter disc responses on network & dfat letter client re: discovery responses | 0 80 | $100 00 | $80 00 |
| 9/20/2005 | FRG | t/c client re: answering discovery | 0 20 | $250 00 | $50 00 |
| 9/20/2005 | FRG | t/c M. Salemi re: info re: numerosity, net worth | 0 10 | $250 00 | $25 00 |
| 9/20/2005 | FRG | letter to M Salemi re: net worth, numerosity info | 0 20 | $250 00 | $50 00 |
| 9/22/2005 | FRG | t/c client re: answers to defendant's discovery responses | 1 10 | $250 00 | $275 00 |
| 9/26/2005 | FRG | letter to ocs re: discovery extension | 0 30 | $250 00 | $75 00 |
| 9/27/2005 | FRG | reviewed, responded to e-mail re: discovery answer extension | 0 10 | $250 00 | $25 00 |
| 9/28/2005 | SW | Docket FRG corresp to OC re: extend disc deadline | 0 10 | $100 00 | $10 00 |
| 9/29/2005 | FRG | t/c client's bankruptcy attorney | 0 20 | $250 00 | $50 00 |
| 9/29/2005 | FRG | drafted language for client's bankruptcy schedule | 0 40 | $250 00 | $100 00 |
| 10/06/2005 | FRG | t/c M. Salemi re: settlement offer | 0 10 | $250 00 | $25 00 |
| 10/12/2005 | FRG | e-mailed C. Lefebvre re time and expenses | 0 10 | $250 00 | $25 00 |

| 10/12/2005 | SW | research court dates on ECF website | 0.10 | $100.00 | $10.00 |
|---|---|---|---|---|---|
| 10/13/2005 | FRG | reviewed time; e-mailed oc re: same | 0.40 | $250.00 | $100.00 |
| 10/21/2005 | SW | Check Mass ECF website for newe case activity | 0.10 | $100.00 | $10.00 |
| 10/25/2005 | FRG | e-mailed Chris L re: mediation | 0.10 | $250.00 | $25.00 |
| 10/25/2005 | FRG | e-mailed T. Browder re: mediation on 11/9 | 0.10 | $250.00 | $25.00 |
| 10/25/2005 | FRG | tc M. Salemi re: mediation and settlement | 0.10 | $250.00 | $25.00 |
| 10/25/2005 | SW | Research date of mediation; Conf EK re: change date of memorandum due date | 0.20 | $100.00 | $20.00 |
| 10/25/2005 | SW | Reasearch fax # for mediator & update case info | 0.20 | $100.00 | $20.00 |
| 10/25/2005 | SW | docket letter re: date of mediation to Noc 2 | 0.10 | $100.00 | $10.00 |
| 10/26/2005 | FRG | tc M. Salemi re: extension to file mediation memorandum | 0.10 | $250.00 | $25.00 |
| 10/26/2005 | FRG | mediation memorandum | 0.60 | $250.00 | $150.00 |
| 10/27/2005 | SW | check for activity in case on MASS ECF Website | 0.10 | $100.00 | $10.00 |
| 10/27/2005 | SW | Docket Client docs | 0.10 | $100.00 | $10.00 |
| 10/31/2005 | FRG | e-mailed Chris L  re: mediation | 0.10 | $250.00 | $25.00 |
| 10/31/2005 | FRG | e-mailed oc re: rescheduling mediation | 0.10 | $250.00 | $25.00 |
| 11/01/2005 | FRG | e-mailed mediator, client re: postponed mediation | 0.10 | $250.00 | $25.00 |
| 11/01/2005 | FRG | e-mailed mediator re: postponing mediation | 0.30 | $250.00 | $75.00 |
| 11/02/2005 | FRG | e-mailed ct  re: mediation postponement | 0.10 | $250.00 | $25.00 |
| 11/04/2005 | FRG | tc M. Salemi; e-mailed Chris L, mediator re: date for mediation | 0.20 | $250.00 | $50.00 |
| 11/11/2005 | FRG | rule 30b6 notices of dep | 0.50 | $250.00 | $125.00 |

| 11/11/2005 | FRG | reviewed d's discovery responses | 0.60 | $250.00 | $150.00 |
|---|---|---|---|---|---|
| 11/11/2005 | FRG | conf. DAE re: Rule 30b6 deps | 0.10 | $250.00 | $25.00 |
| 11/11/2005 | FRG | Rule 37 letter; notices of deposition | 1.20 | $250.00 | $300.00 |
| 11/11/2005 | SW | Check Mass ECF website for new case activity | 0.10 | $100.00 | $10.00 |
| 11/11/2005 | SW | Docket order cancel ADR meeting & order reschedule same | 0.10 | $100.00 | $10.00 |
| 11/11/2005 | SW | Dft 30b6 deps for 3 people  & regular dep for sanders; serve and docket same | 1.40 | $100.00 | $140.00 |
| 11/15/2005 | FRG | conf. DAE re: settlement | 0.20 | $250.00 | $50.00 |
| 11/15/2005 | FRG | Letter to defendant's counsel re: settlement | 0.70 | $250.00 | $175.00 |
| 11/15/2005 | FRG | reviewed defendant's settlement offer | 0.10 | $250.00 | $25.00 |
| 11/15/2005 | FRG | Rule 37 conf | 0.20 | $250.00 | $50.00 |
| 11/16/2005 | SW | dft memo to docket to strike Nov. 23 deps in docket | 0.20 | $100.00 | $20.00 |
| 11/16/2005 | SW | docket Nov 11 corresp & salemi email nov 14 | 0.10 | $100.00 | $10.00 |
| 11/18/2005 | FRG | reviewed d's settlement letter; drafted response; research on double recovery in Mass | 2.50 | $250.00 | $625.00 |
| 11/18/2005 | FRG | tc M. Salemi; e-mailed C. Lefeb re: mediation | 0.20 | $250.00 | $50.00 |
| 11/22/2005 | FRG | mediation memo | 1.20 | $250.00 | $300.00 |
| 11/22/2005 | FRG | letter to mediator; e-mailed C. Lefeb | 0.30 | $250.00 | $75.00 |
| 11/22/2005 | FRG | mediation memo | 0.30 | $250.00 | $75.00 |
| 11/22/2005 | FRG | letter to mediator | 0.20 | $250.00 | $50.00 |
| 11/22/2005 | FRG | mediation memo | 0.80 | $250.00 | $200.00 |
| 11/22/2005 | FRG | mediation memo | 0.50 | $250.00 | $125.00 |

Edelman, Combs, Latturner & Goodwin LLC
Page No :    12

| | | | | | |
|---|---|---|---|---|---|
| 11/22/2005 | FRG | conf  CMC re: attending mediation | 0 10 | $250 00 | $25 00 |
| 11/28/2005 | FRG | e-mailed mediator, client re: excusing client from participation in mediation | 0 60 | $250 00 | $150 00 |
| 11/28/2005 | FRG | e-mailed Chris re: mediation | 0.10 | $250 00 | $25 00 |
| 11/29/2005 | FRG | prepared to confer, did confer with Chris L re: the mediation; e-mailed him settlement correspondenc | 0.70 | $250 00 | $175.00 |
| 11/30/2005 | FRG | e-mailed Chris Lefebvre re: discovery extension in the event case does not settle | 0 10 | $250 00 | $25 00 |
| 12/02/2005 | FRG | conferred with Chris Lefebvre re: mediation | 0 10 | $250 00 | $25 00 |
| 12/02/2005 | FRG | tc Chris Lefebvre re: mediation | 0 20 | $250 00 | $50 00 |
| 12/05/2005 | FRG | e-mailed oc re: scheduling telephone conf ; reviewed, docketed oc's response | 0 10 | $250 00 | $25 00 |
| 12/06/2005 | FRG | tc Mike Salemi re: discovery issues | 0 20 | $250 00 | $50 00 |
| 12/09/2005 | FRG | e-mailed client re: mediation; status of case | 0 10 | $250 00 | $25 00 |
| 12/09/2005 | FRG | tc M  Salemi re: joint motion to extend discovery deadline | 0 10 | $250 00 | $25 00 |
| 12/12/2005 | FRG | answered def's discovery requests | 2 60 | $250 00 | $650 00 |
| 12/12/2005 | SW | Get Client docs for FRG from back | 0 10 | $100 00 | $10 00 |
| 12/13/2005 | FRG | Responded to NFS's Discovery Requests | 1 60 | $250 00 | $400 00 |
| 12/13/2005 | FRG | Reviewed Joint Motion to Take Discovery; e-mailed M  Salemi re: same | 0 30 | $250 00 | $75 00 |
| 12/13/2005 | SW | copy clients docs for our file | 0 50 | $100 00 | $50.00 |
| 12/13/2005 | SW | Draft lett client re: return of client docs | 0 20 | $100 00 | $20.00 |
| 12/13/2005 | SW | Docket Chris Lefebvre's Mediation Summary | 0 10 | $100 00 | $10 00 |
| 12/14/2005 | FRG | tc client re: answers to defendant's discovery requests | 0 50 | $250 00 | $125 00 |

| Date | Init | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 12/14/2005 | FRG | tc M  Salemi, C  Lefebvre re: mediator's belief that the case has settled | 0 10 | $250 00 | $25 00 |
| 12/14/2005 | FRG | tc M  Salemi re: joint motion to extend discovery | 0 10 | $250 00 | $25 00 |
| 12/15/2005 | FRG | tc M  Salemi; c  Lefebvre re: mediator's mistaken impression that the parties had settled | 0 20 | $250 00 | $50 00 |
| 12/15/2005 | SW | Update Case info | 1 10 | $100 00 | $110 00 |
| 12/16/2005 | FRG | Answers to NFS's document requests, interrogatories | 0 40 | $250 00 | $100 00 |
| 12/16/2005 | SW | Organize docs for product docs responses & bate stamp same; Edit our answers to Interr requests per FRG | 1 50 | $100 00 | $150 00 |
| 12/20/2005 | SW | docket Client's signed Verfication of answers to Interrogatories | 0 10 | $100 00 | $10 00 |
| 12/20/2005 | SW | Draft letter to OCs re: our Client's verification of Interrogatory responses | 0 20 | $100 00 | $20 00 |
| 12/20/2005 | SW | docket Parties' Joint Motion to Extend Discovery & 12 15 05 E-mail from Broadley & P's Answers to D's 1st Set of Interrogatories & P's Answers to D's 1st Set of Document Requests & Docs Produced in Discovery | 0 30 | $100 00 | $30 00 |
| 12/21/2005 | SW | draft email and Forward email re: Mediator's concerns to Local Counsel in MA per FRG's instructions | 0 20 | $100 00 | $20 00 |
| 12/27/2005 | SW | Docket Order of 12 19 05 | 0 10 | $100 00 | $10 00 |
| 12/30/2005 | SW | Draft letter to client re: return of client docs | 0 20 | $100 00 | $20 00 |
| 1/03/2006 | SW | Docket Report of Alternative dispute resolution by mediator | 0 10 | $100 00 | $10 00 |
| 1/03/2006 | SW | Draft letter to client re: deposition & contacting us for preparation | 0 20 | $100 00 | $20 00 |
| 1/04/2006 | FRG | e-mailed C  Lefebvre, client re: client's deposition | 0 30 | $250 00 | $75 00 |

| 1/04/2006 | FRG | reviewed status of discovery; began drafting a letter to oc re: same | 0 30 | $250 00 | $75 00 |
| 1/05/2006 | FRG | letter to opposing counsel re: discovery | 0 30 | $250 00 | $75 00 |
| 1/05/2006 | SW | Docket Notice of Dep for our client and e-mail response re: outcome of mediation | 0 10 | $100 00 | $10 00 |
| 1/06/2006 | FRG | tc client, Chris L re: client's deposition | 0 20 | $250 00 | $50 00 |
| 1/06/2006 | SW | Check Mass ECF for any new activity in case that we have not recieved | 0 10 | $100 00 | $10 00 |
| 1/09/2006 | FRG | tc oc re: any additional dox related to bona fide error defense | 0 10 | $250 00 | $25 00 |
| 1/09/2006 | FRG | Conference re: subpoena of A  Sanders for deposition and dox (w/ SW); reviewed subpoena and edited Rider | 0 30 | $250 00 | $75 00 |
| 1/09/2006 | JB | Conference re: subpoena for deposition in NY w/SW and rider for same | 0 20 | $105 00 | $21 00 |
| 1/09/2006 | SW | Draft letter to Rockland Cty Sheriff re: service of subpoena | 0 10 | $100 00 | $10 00 |
| 1/09/2006 | SW | Prepare subpoena for deposition & documents; call esquire for place of deposition; Call process server for rates of service; draft rider to subpoena | 0 60 | $100 00 | $60 00 |
| 1/09/2006 | SW | Conference re: w/ JB2 re: preparing subpoena for dep & docs | 0 20 | $100 00 | $20 00 |
| 1/09/2006 | SW | Conference re: get subpoena for prod & deposition out FRG & JB2 | 0 30 | $100 00 | $30 00 |
| 1/10/2006 | FRG | reviewed subpoena of Arthur Sanders | 0 10 | $250 00 | $25 00 |
| 1/10/2006 | JB | Conference re:  Subpoena for dep and docs w/SW | 0 10 | $105 00 | $10 50 |
| 1/10/2006 | SW | Conference re: preparing subpoena w/ JB2 | 0 30 | $100 00 | $30 00 |
| 1/10/2006 | SW | Finish drafting letter to Sheriff for service of subpoena; edit Sheriff letter | 0 30 | $100 00 | $30 00 |
| 1/10/2006 | SW | Overnight subpoena to NY sheriff for | 0 20 | $100 00 | $20 00 |

service

| 1/10/2006 | SW | Edit subpeona rider & subpoena, Edit same again per FRG & edit Notice of Subpoena | 1 60 | $100 00 | $160 00 |
|---|---|---|---|---|---|
| 1/11/2006 | SW | Docket FRG e-mail OC re: info about bona fide error defense | 0 10 | $100 00 | $10 00 |
| 1/17/2006 | SW | Check for new case activity on Mass ECF website | 0 10 | $100 00 | $10 00 |
| 1/17/2006 | SW | Docket OC Change of Address | 0 10 | $100 00 | $10 00 |
| 1/18/2006 | FRG | e-mailed client, oc, Chris L re: postponement of client's deposition | 0 20 | $250 00 | $50 00 |
| 1/18/2006 | FRG | reviewed Mass SC case; tc Chris Lefebvre re: settlemen | 0 30 | $250 00 | $75 00 |
| 1/18/2006 | FRG | e-mailed C  Lefebvre re: settlement on FDCPA basis only | 0 10 | $250 00 | $25 00 |
| 1/18/2006 | FRG | tc M  Salemi re: discovery issues | 0 10 | $250 00 | $25 00 |
| 1/18/2006 | SW | scan case for FRG & save into time matters | 0 10 | $100 00 | $10 00 |
| 1/19/2006 | FRG | motion for extension to file class cert motion | 0 50 | $250 00 | $125 00 |
| 1/19/2006 | FRG | reviewed deadline for class cert motion; e-mailed oc re: extension | 0 20 | $250 00 | $50 00 |
| 1/20/2006 | FRG | e-mailed C  Lefebvre re: settlement; settlement demand to ocs | 0 50 | $250 00 | $125 00 |
| 1/20/2006 | HAK | Conference FRG re: CML email; read CML email | 0 10 | $225 00 | $22 50 |
| 1/20/2006 | SW | E-file Motion ext file class cert motion | 0 30 | $100 00 | $30 00 |
| 1/20/2006 | SW | Draft 7 1 certification and cert of service for motion for extension to file class cert motion | 0 30 | $100 00 | $30 00 |
| 1/23/2006 | SW | Settl Agree w/ initialed changes & Notice of Change of address for Lord Bissel & 01/18/06 FRG e-mail to OC & 01/20/06 FRG letter to OC & P's Unopposed Mot | 0 40 | $100 00 | $40 00 |

for Ext of Time to File Class Cert Motion
& Salemi e-mail to FRG on Jan 19, 2006

| 1/23/2006 | SW | Draft letter to client re: filing Mot Extension file Class Cert Motion | 0 20 | $100 00 | $20.00 |
| 1/27/2006 | FRG | letter to opposing counsel re: Rule 30b6 deps | 0 40 | $250 00 | $100 00 |
| 1/31/2006 | FRG | tc M  Salemi, e-mailed Chris L re: scheduling Rule 30b6 deps | 0 20 | $250 00 | $50 00 |
| 2/01/2006 | SW | docket order of 1 25 06 | 0.10 | $100 00 | $10 00 |
| 2/02/2006 | FRG | tc C  Lefebvre re: taking defendant's dep | 0 10 | $250 00 | $25 00 |
| 2/02/2006 | SW | Docket Affidavit of service, not served of subpoena | 0 10 | $100 00 | $10 00 |
| 2/07/2006 | FRG | tc Chris Lefebvre re: taking dep of NFS | 0 10 | $250.00 | $25.00 |
| 2/08/2006 | FRG | conf DAE, CMC re: retaining expert | 0 20 | $250 00 | $50 00 |
| 2/08/2006 | FRG | tc Lefebvre re: discovery extension, dep dates | 0 30 | $250 00 | $75 00 |
| 2/08/2006 | FRG | tc M  Salemi re: defendant's dep; discovery extension | 0 20 | $250 00 | $50 00 |
| 2/09/2006 | SW | Begin draft of class cert motion and edit for formatting issues * begin draft of memo in support of Class cert motion | 0 80 | $100 00 | $80.00 |
| 2/10/2006 | SW | Continue draft Class cert motion and memo in support of motion | 2.00 | $100.00 | $200 00 |
| 2/13/2006 | FRG | reviewed draft of motion for class cert motion and memo | 0 30 | $250 00 | $75 00 |
| 2/13/2006 | SW | Continue to draft Class Cert Motion & Memo | 2 80 | $100 00 | $280 00 |
| 2/13/2006 | SW | Conf w/ FRG re: Class Cert Motion and memo | 0 10 | $100.00 | $10 00 |
| 2/14/2006 | CMC | work on class mot | 0 50 | $480 00 | $240.00 |
| 2/14/2006 | FRG | revisions to class cert motion, discovery extension motion,; motion to dismiss 93A Claim;  tc M  Salemi re: opposition to | 0 80 | $250 00 | $200.00 |

these motions

| | | | | | |
|---|---|---|---|---|---|
| 2/14/2006 | SW | recopy exhibits to class cert motion | 0 20 | $100 00 | $20 00 |
| 2/14/2006 | SW | Conf NA re: judge's courtesy copy | 0 20 | $100 00 | $20 00 |
| 2/14/2006 | SW | e-file mot ext disc & mot dissmiss 93A claim | 0 50 | $100 00 | $50 00 |
| 2/14/2006 | SW | Prep Class Cert motion for e-filing, make PDFs and scan exhibits | 0 50 | $100 00 | $50 00 |
| 2/15/2006 | SW | draft letter to client re: 3 filings | 0 30 | $100 00 | $30 00 |
| 2/15/2006 | SW | Clean up mess from e-filing, org pleadings | 0 30 | $100 00 | $30 00 |
| 2/24/2006 | FRG | e-mailed C  Lefebvre re: taking defendant's dep | 0 10 | $250 00 | $25 00 |
| 2/24/2006 | FRG | tc M. Salemi re: extension to file response to cc motion; scheduling 30b6 dep | 0 10 | $250 00 | $25 00 |
| 3/01/2006 | SW | docket date for P to file reply in supp of class cert | 0 10 | $100 00 | $10 00 |
| 3/01/2006 | SW | find out how long FRG has to file reply in support of class cert and look up when OC filed response in opp class cert | 0 20 | $100 00 | $20 00 |
| 3/01/2006 | SW | conf HAK re: rely in support of cert class in Mass | 0 20 | $100 00 | $20 00 |
| 3/01/2006 | SW | e-file notice of dismissal | 0 40 | $100 00 | $40 00 |
| 3/02/2006 | FRG | reviewed defendant's response to class cert | 0 10 | $250 00 | $25 00 |
| 3/03/2006 | FRG | tc M  Salemi re: reply in support of class cert | 0 10 | $250 00 | $25 00 |
| 3/03/2006 | FRG | reply in support of class cert | 2 30 | $250 00 | $575 00 |
| 3/03/2006 | FRG | motion for leave to file reply in support of class cert | 0 30 | $250 00 | $75 00 |
| 3/03/2006 | FRG | conf  DAE re: settlement | 0 20 | $250 00 | $50 00 |
| 3/05/2006 | FRG | Reply in Support of Motion for claass cert | 3 00 | $250 00 | $750 00 |

| 3/06/2006 | FRG | Class Reply | 0 50 | $250 00 | $125 00 |
|---|---|---|---|---|---|
| 3/06/2006 | FRG | e-mailed C  Lefebvre re: hearing on class cert and taking defendant's dep | 0 10 | $250 00 | $25 00 |
| 3/06/2006 | JB | Conf FRG re: filing in Mass of motion for leave to file reply | 0 10 | $105 00 | $10 50 |
| 3/06/2006 | JB | Prep docs for filing per FRG; file docs electronically in Mass | 0 50 | $105 00 | $52 50 |
| 3/08/2006 | FRG | tc Chris Lefebvre re: hearing on class certification | 0 20 | $250 00 | $50 00 |
| 3/08/2006 | JA | prep docs for filing and e-file | 0 60 | $100 00 | $60 00 |
| 3/09/2006 | JB | Log 14 docs | 0 30 | $105 00 | $31 50 |
| 3/10/2006 | FRG | drafted draft order certifying class | 0 40 | $250 00 | $100 00 |
| 3/14/2006 | FRG | revisions to order granting class cert | 0 50 | $250 00 | $125 00 |
| 3/14/2006 | FRG | made settlement demand | 0 40 | $250 00 | $100 00 |
| 3/14/2006 | TK | 1 doc | 0 10 | $100 00 | $10 00 |
| 3/15/2006 | FRG | tc M  Salemi, Chris Lefebvre re: proposed draft order | 0 20 | $250 00 | $50 00 |
| 3/15/2006 | SH | prep and file proposed order | 0 50 | $100 00 | $50 00 |
| 3/16/2006 | FRG | e-mailed client re: status of case | 0 10 | $250 00 | $25 00 |
| 3/16/2006 | TK | 1 doc | 0 10 | $100 00 | $10 00 |
| 3/20/2006 | FRG | reviewed NFS's latest settlement offer; conf  DAE, tc Chris L re: same | 0 40 | $250 00 | $100 00 |
| 3/20/2006 | TK | 1 doc | 0 10 | $100 00 | $10 00 |
| 3/21/2006 | FRG | tc Chris L re: settlement; tc M  Salemi re: report to the judge due on 3/22 | 0 40 | $250 00 | $100 00 |
| 3/21/2006 | TK | 2 doc | 0 10 | $100 00 | $10 00 |
| 3/21/2006 | TK | 1 doc | 0 10 | $100 00 | $10 00 |
| 3/22/2006 | FRG | reviewed draft letter to Judge Saris re: settlement, further discovery | 0 10 | $250 00 | $25 00 |

| | | | | | |
|---|---|---|---|---|---|
| 3/22/2006 | FRG | tc S. Broadley re: report to the court | 0.10 | $250.00 | $25.00 |
| 3/23/2006 | TK | 1 doc | 0.10 | $100.00 | $10.00 |
| 3/23/2006 | TK | 1 doc | 0.10 | $100.00 | $10.00 |
| 3/28/2006 | TK | 1 doc | 0.10 | $100.00 | $10.00 |
| 3/29/2006 | FRG | e-mailed oc, cc re: Rule 30b6 dep | 0.10 | $250.00 | $25.00 |
| 4/05/2006 | TK | 2 docs | 0.10 | $100.00 | $10.00 |
| 4/07/2006 | FRG | Plaintiff's Second Discovery Requests | 0.40 | $250.00 | $100.00 |
| 4/07/2006 | TK | MAILED AND faxes discovery | 0.40 | $100.00 | $40.00 |
| 4/07/2006 | TK | 1 doc | 0.10 | $100.00 | $10.00 |
| 4/11/2006 | FRG | e-mailed C. Lefebvre re: discovery | 0.10 | $250.00 | $25.00 |
| 4/19/2006 | FRG | e-mailed C. Lefebvre re: Rule 30b6 dep; 2nd discovery requests | 0.20 | $250.00 | $50.00 |
| 4/19/2006 | TK | docketed, printed, and logged disc requests | 0.40 | $100.00 | $40.00 |
| 4/20/2006 | FRG | tc, e-mailed S. Broadley, Chris L re: proposed mediation | 0.20 | $250.00 | $50.00 |
| 4/21/2006 | FRG | e-mailed, tc C. Lefebvre re: mediation | 0.10 | $250.00 | $25.00 |
| 4/26/2006 | TK | 1 doc | 0.10 | $100.00 | $10.00 |
| 5/04/2006 | FRG | e-mailed court re: excusing Browder from mediation; e-mailed Chris L re: settlement memo | 0.40 | $250.00 | $100.00 |
| 5/05/2006 | FRG | pre-mediation memorandum | 1.60 | $250.00 | $400.00 |
| 5/05/2006 | TK | premediation file sent under seal to Boston | 1.50 | $100.00 | $150.00 |
| 5/05/2006 | TK | sent to mass, confidential | 0.50 | $100.00 | $50.00 |
| 5/08/2006 | FRG | tc M. Salemi re: preserving confidentiality of financial dox | 0.10 | $250.00 | $25.00 |
| 5/08/2006 | FRG | reviewed, responded to e-mail from court | 0.20 | $250.00 | $50.00 |

|  |  | re: client's participation in the mediation; tc, e-mailed client re: same |  |  |  |
|---|---|---|---|---|---|
| 5/09/2006 | FRG | tc client re: mediation; e-mailed Chris Lefebvre re: same and mediation memo | 0 30 | $250 00 | $75 00 |
| 5/09/2006 | FRG | reviewed NFS's new net worth info | 0 30 | $250 00 | $75 00 |
| 5/10/2006 | FRG | e-mailed C Lefebvre re: defendant's net worth figures | 0 10 | $250 00 | $25 00 |
| 5/10/2006 | FRG | e-mailed court re: Browder's participation in mediation | 0 20 | $250 00 | $50 00 |
| 5/11/2006 | FRG | tc C Lefebvre (w/ DAE) re: settlement | 0 20 | $250 00 | $50 00 |
| 5/11/2006 | TK | 1 doc | 0 10 | $100 00 | $10 00 |
| 5/12/2006 | FRG | tc C Lefebvre re: settlement | 0 10 | $250 00 | $25 00 |
| 5/16/2006 | FRG | e-mailed client re: settlement | 0 10 | $250 00 | $25 00 |
| 5/16/2006 | FRG | tc M Salemi re: drafting settlement agreement | 0 10 | $250 00 | $25 00 |
| 5/18/2006 | FRG | settlement dox | 0 70 | $250 00 | $175 00 |
| 5/22/2006 | TK | 1 doc | 0 10 | $100 00 | $10 00 |
| 5/23/2006 | FRG | worked on settlement dox | 1 00 | $250 00 | $250 00 |
| 5/23/2006 | TK | pre approval order, SA, final approval order, and claim forms | 1 00 | $100 00 | $100 00 |
| 5/23/2006 | TK | EDIT settlement docs | 1 50 | $100 00 | $150 00 |
| 5/24/2006 | CMC | work on settlement docs | 0 20 | $480 00 | $96 00 |
| 5/24/2006 | FRG | revised settlement dox; e-mailed to oc, cc | 0 60 | $250 00 | $150 00 |
| 5/26/2006 | TK | 1 doc | 0 10 | $100 00 | $10 00 |
| 6/05/2006 | FRG | e-mailed client re: settlement | 0 10 | $250 00 | $25 00 |
| 6/07/2006 | FRG | reviewed defendant's revisions to settlement dox; made changes | 1 00 | $250 00 | $250 00 |
| 6/07/2006 | TK | edited doc | 1 00 | $100 00 | $100 00 |

| 6/08/2006 | FRG | reviewed defendant's revisions to final approval order, settlement agreement | 0.60 | $250.00 | $150.00 |
|---|---|---|---|---|---|
| 6/09/2006 | FRG | revisions to the settlement agreement | 0.90 | $250.00 | $225.00 |
| 6/09/2006 | MRT | review/comment on draft settlement from FRG | 1.00 | $310.00 | $310.00 |
| 6/09/2006 | TK | 1 doc | 0.10 | $100.00 | $10.00 |
| 6/12/2006 | TK | 1 doc | 0.10 | $100.00 | $10.00 |
| 6/15/2006 | TK | 1 doc | 0.10 | $100.00 | $10.00 |
| 6/19/2006 | FRG | revised class notice, final approval order; e-mailed oc re: same | 0.90 | $250.00 | $225.00 |
| 6/20/2006 | FRG | revisions to the class notice | 0.10 | $250.00 | $25.00 |
| 6/21/2006 | FRG | e-mailed s/a to client for signature | 0.10 | $250.00 | $25.00 |
| 6/29/2006 | FRG | revisions to settlement dox | 0.70 | $250.00 | $175.00 |
| 6/29/2006 | FRG | tc, e-mailed M. Salemi re: motion for preliminary approval | 0.20 | $250.00 | $50.00 |
| 6/30/2006 | FRG | reviewed dox for motion for preliminary approval; e-mailed M. Salemi re: same; conf JA re: filing motion for preliminary approval | 0.50 | $250.00 | $125.00 |
| 7/26/2006 | FRG | tc M Salemi, Chris Lefebre re: preliminary approval hearing | 0.30 | $250.00 | $75.00 |
| 7/31/2006 | FRG | DAE's Declaration | 1.60 | $250.00 | $400.00 |
| 8/01/2006 | FRG | tc M. Salemi re: declaration | 0.10 | $250.00 | $25.00 |
| 8/02/2006 | FRG | revisions to DAE's declaration and to preliminary approval order | 0.40 | $250.00 | $100.00 |
| 8/04/2006 | FRG | reviewed e-mail from M. Salemi re: revised preliminary approval order; | 0.10 | $250.00 | $25.00 |
| 8/06/2006 | JA | prep not of filing; dae dec and prilim order and e-file | 0.60 | $105.00 | $63.00 |
| 8/14/2006 | FRG | reviewed defendant's motion to modify preliminary approval order; e-mailed oc re: | 0.10 | $250.00 | $25.00 |

same

| 8/30/2006 | BM | docketing Order | 0 10 | $90 00 | $9 00 |
|-----------|-----|-----------------|------|--------|-------|
| 9/07/2006 | BM | docketing modified prelim order | 0 10 | $90 00 | $9 00 |
| 9/08/2006 | BM | drafted memo for paralegals | 0 50 | $90 00 | $45 00 |
| 9/18/2006 | BM | editing memo to paralegals | 0 20 | $90 00 | $18 00 |
| 9/18/2006 | FRG | reviewed, edited memo to paralegals re: nature of case | 0 20 | $250 00 | $50 00 |
| 9/19/2006 | BM | final editing of memo to paralegals | 0 10 | $90 00 | $9 00 |
| 10/02/2006 | BM | pc from class member | 0 20 | $90 00 | $18 00 |
| 10/02/2006 | BM | pc from class member | 0 10 | $90 00 | $9 00 |
| 10/02/2006 | BM | intake call from class member | 0 10 | $90 00 | $9 00 |
| 10/02/2006 | MM | class member called re settlement | 0 20 | $90 00 | $18 00 |
| 10/02/2006 | MM | PC from class member | 0 10 | $90 00 | $9 00 |
| 10/03/2006 | EZ | call class mem | 0 10 | $90 00 | $9 00 |
| 10/04/2006 | BM | pc from class member | 0 10 | $90 00 | $9 00 |
| 10/04/2006 | BM | returning pc from potential class member | 0 10 | $0 00 | $0 00 |
| 10/04/2006 | BM | pc from potential class member | 0 20 | $90 00 | $18 00 |
| 10/05/2006 | BM | pc from potential class member | 0 10 | $90 00 | $9 00 |
| 10/05/2006 | MB | pc w/ class member re ntc | 0 10 | $90 00 | $9 00 |
| 10/11/2006 | MI | class member calls | 0 50 | $100 00 | $50 00 |
| 10/12/2006 | BM | pc from potential class member | 0 10 | $90 00 | $9 00 |
| 10/12/2006 | BM | pc from potential class member | 0 20 | $90 00 | $18 00 |
| 10/13/2006 | MI | class member call re settlement | 0 20 | $100 00 | $20 00 |
| 10/16/2006 | BM | pc from class member | 0 10 | $90 00 | $9 00 |
| 10/24/2006 | BM | pc from potential class member | 0 10 | $90 00 | $9 00 |

Edelman, Combs, Latturner & Goodwin LLC
Page No : 23

| Date | | Description | | | |
|---|---|---|---|---|---|
| 10/27/2006 | BM | docketing notice of class action and proposed settlement | 0.10 | $90.00 | $9.00 |
| 10/30/2006 | BM | updating docekting file | 0.10 | $90.00 | $9.00 |
| 11/03/2006 | BM | docketing claim form sent here erroneously | 0.10 | $90.00 | $9.00 |
| 11/03/2006 | BM | sending claim form to printers inc | 0.10 | $90.00 | $9.00 |
| 11/07/2006 | FRG | e-mailed C. Lefebvre re: date of fariness hearing | 0.10 | $250.00 | $25.00 |
| 11/10/2006 | BM | pc from potential class member | 0.10 | $90.00 | $9.00 |
| 11/10/2006 | BM | docketing opt out | 0.10 | $90.00 | $9.00 |
| 11/14/2006 | FRG | tc objector | 0.40 | $280.00 | $112.00 |
| 11/15/2006 | BM | docketing opt out | 0.10 | $90.00 | $9.00 |
| 11/22/2006 | BM | docketing opt out filed with the court | 0.10 | $100.00 | $10.00 |
| 11/27/2006 | FRG | final approval memo | 0.10 | $280.00 | $28.00 |
| 11/27/2006 | FRG | final approval memo | 0.70 | $280.00 | $196.00 |
| 11/28/2006 | FRG | tc M. Salemi re: results of mailing of notice to the class | 0.10 | $280.00 | $28.00 |
| 11/28/2006 | FRG | final approval memo | 0.60 | $280.00 | $168.00 |
| 11/29/2006 | BM | preparing Fee Declaration for DAE | 0.20 | $100.00 | $20.00 |
| 11/29/2006 | FRG | final approval memo | 1.70 | $280.00 | $476.00 |
| 11/30/2006 | BM | preparing exhibits for DAE's fee declaration | 0.10 | $100.00 | $10.00 |

Total Fees   $28,407.50

**Expenses**

| Start Date | Description | Charges |
|---|---|---|
| 8/06/2004 | Copying | $2.25 |
| 8/10/2004 | Facsimile | $7.00 |

| | | |
|---|---|---|
| 9/10/2004 | Postage | $1 06 |
| 9/10/2004 | Copying | $3 25 |
| 9/13/2004 | Facsimile | $3 00 |
| 9/16/2004 | Postage | $4.42 |
| 9/23/2004 | Postage | $0.74 |
| 9/23/2004 | Copying | $1 75 |
| 9/23/2004 | Copying | $0 75 |
| 9/29/2004 | Copying | $5 75 |
| 9/30/2004 | Copying | $12 75 |
| 10/16/2004 | UPS | $1 18 |
| 2/04/2005 | Copying | $0 50 |
| 2/04/2005 | Postage | $0 37 |
| 2/12/2005 | UPS | $15 36 |
| 2/22/2005 | Postage | $1 52 |
| 2/22/2005 | Copying | $14 25 |
| 2/28/2005 | Filing fee | $250.00 |
| 3/04/2005 | Copying | $1.75 |
| 3/07/2005 | Pro hac vice | $150 00 |
| 3/10/2005 | Copying | $0 75 |
| 3/11/2005 | Postage | $0 37 |
| 3/11/2005 | Copying | $0 50 |
| 3/22/2005 | Serve summons | $59 00 |
| 3/22/2005 | Copying | $7 75 |
| 3/22/2005 | Postage | $1 52 |

| | | |
|---|---|---|
| 3/26/2005 | UPS | $13 90 |
| 3/29/2005 | Postage | $0 83 |
| 3/29/2005 | Postage | $4 88 |
| 3/30/2005 | Copying | $3 25 |
| 3/30/2005 | Copying | $7 00 |
| 5/03/2005 | Copying | $2 00 |
| 5/03/2005 | Copying | $0 25 |
| 5/04/2005 | Copying | $5 25 |
| 5/05/2005 | Copying | $2 00 |
| 5/05/2005 | Facsimile | $11 00 |
| 5/06/2005 | Copying | $0 75 |
| 5/11/2005 | Facsimile | $2 00 |
| 5/11/2005 | Copying | $0 50 |
| 5/11/2005 | Copying | $8 75 |
| 5/11/2005 | Copying | $22 25 |
| 5/18/2005 | Postage | $0 60 |
| 5/19/2005 | Copying | $7 50 |
| 5/19/2005 | Copying | $1 00 |
| 5/23/2005 | Postage | $3 04 |
| 5/23/2005 | Postage | $1 75 |
| 5/23/2005 | Copying | $34 00 |
| 5/24/2005 | Copying | $0 25 |
| 6/10/2005 | Facsimile | $9 00 |

| 6/10/2005 | Facsimile | $9 00 |
| 6/10/2005 | Facsimile | $3 00 |
| 6/10/2005 | Facsimile | $3 00 |
| 6/10/2005 | Postage | $1 20 |
| 6/13/2005 | Postage | $0 83 |
| 6/13/2005 | Copying | $0 25 |
| 6/13/2005 | Copying | $4 00 |
| 6/18/2005 | UPS | $13 90 |
| 6/21/2005 | Copying | $0 25 |
| 6/21/2005 | Copying | $0 25 |
| 6/22/2005 | Copying | $5.00 |
| 6/22/2005 | Copying | $0 50 |
| 6/29/2005 | Postage | $1 06 |
| 6/29/2005 | Copying | $0 25 |
| 6/29/2005 | Copying | $4 25 |
| 7/05/2005 | Copying | $0 75 |
| 7/13/2005 | Copying | $0 50 |
| 7/15/2005 | Copying | $0 50 |
| 7/15/2005 | Copying | $0 50 |
| 7/18/2005 | Copying | $23 75 |
| 7/18/2005 | Facsimile | $19 00 |
| 7/18/2005 | Facsimile | $19 00 |
| 8/02/2005 | Copying | $0 75 |

Edelman, Combs, Latturner & Goodwin LLC
Page No :   27

| | | |
|---|---|---|
| 8/22/2005 | Copying | $0 25 |
| 8/22/2005 | Copying | $2 25 |
| 8/22/2005 | Copying | $2 25 |
| 8/22/2005 | Copying | $0 25 |
| 8/26/2005 | Copying | $0 25 |
| 9/02/2005 | Copying | $1 50 |
| 9/02/2005 | Copying | $1.75 |
| 9/02/2005 | Copying | $0 25 |
| 9/16/2005 | Postage | $0 83 |
| 9/16/2005 | Copying | $3 50 |
| 9/20/2005 | Facsimile | $2 00 |
| 9/20/2005 | Copying | $0 25 |
| 9/20/2005 | Copying | $0 25 |
| 9/21/2005 | Copying | $3 00 |
| 9/27/2005 | Copying | $7 75 |
| 11/03/2005 | Copying | $0 25 |
| 11/09/2005 | Copying | $0 25 |
| 11/11/2005 | Postage | $0 74 |
| 11/11/2005 | Facsimile | $4 00 |
| 11/11/2005 | Facsimile | $3 00 |
| 11/11/2005 | Facsimile | $3.00 |
| 11/11/2005 | Copying | $3 75 |
| 11/11/2005 | Facsimile | $4 00 |
| 11/22/2005 | Facsimile | $2 00 |

| 11/22/2005 | Copying | $2 00 |
| 11/22/2005 | Facsimile | $2 00 |
| 11/23/2005 | Copying | $0 25 |
| 11/23/2005 | Postage | $0 60 |
| 12/02/2005 | Lexis | $11.61 |
| 12/12/2005 | Copy | $11.25 |
| 12/13/2005 | Copy | $14 50 |
| 12/13/2005 | Postage | $1 75 |
| 12/16/2005 | Copy | $4.75 |
| 12/16/2005 | Copy | $1 50 |
| 12/16/2005 | Copy | $5 25 |
| 12/16/2005 | Copy | $24 50 |
| 12/16/2005 | Copy | $0 50 |
| 12/16/2005 | Copy | $11 75 |
| 12/16/2005 | Copy | $16 00 |
| 12/16/2005 | Copy | $8 75 |
| 12/16/2005 | Copy | $86 00 |
| 12/16/2005 | Copy | $8.00 |
| 12/16/2005 | Postage | $3 95 |
| 12/16/2005 | Postage | $4 90 |
| 12/20/2005 | Copy | $1 00 |
| 12/20/2005 | Copy | $1 25 |
| 12/20/2005 | Copy | $0 50 |

| 12/20/2005 | Copy | $0.75 |
| 12/20/2005 | Postage | $0 74 |
| 12/21/2005 | Copy | $0 25 |
| 12/27/2005 | Copy | $1 25 |
| 12/30/2005 | Copy | $35 50 |
| 12/30/2005 | Copy | $0 25 |
| 12/30/2005 | Postage | $4 90 |
| 1/03/2006 | Copy | $1 25 |
| 1/03/2006 | Postage | $0 37 |
| 1/09/2006 | Copy | $0 75 |
| 1/09/2006 | Copy | $0 75 |
| 1/09/2006 | Process server fee | $16 38 |
| 1/09/2006 | Subpoena | $67 00 |
| 1/10/2006 | Copy | $0 75 |
| 1/10/2006 | Copy | $0 50 |
| 1/10/2006 | Copy | $1 50 |
| 1/10/2006 | Copy | $0 25 |
| 1/10/2006 | Copy | $0 75 |
| 1/10/2006 | Copy | $0 75 |
| 1/10/2006 | Copy | $0 50 |
| 1/10/2006 | Copy | $22 50 |
| 1/10/2006 | Copy | $0 25 |
| 1/10/2006 | Fax | $9 00 |

Edelman, Combs, Latturner & Goodwin LLC
Page No :   30

| Date | Description | Amount |
|---|---|---|
| 1/10/2006 | Fax | $9 00 |
| 1/10/2006 | Fax | $5 00 |
| 1/10/2006 | Postage | $1 89 |
| 1/10/2006 | Postage | $0 63 |
| 1/18/2006 | Copy | $0 50 |
| 1/18/2006 | Copy | $0 75 |
| 1/18/2006 | Phone charge (Sprint) | $0 48 |
| 1/19/2006 | Overnight Delivery Charge | $15 22 |
| 1/23/2006 | Copy | $1 75 |
| 1/23/2006 | Postage | $0 39 |
| 1/26/2006 | Copy | $0 25 |
| 2/10/2006 | Copy | $10 00 |
| 2/13/2006 | Copy | $2 00 |
| 2/14/2006 | Copy | $56 00 |
| 2/15/2006 | Copy | $1 00 |
| 2/15/2006 | Postage | $2 31 |
| 2/16/2006 | Copy | $3 00 |
| 2/21/2006 | Copy | $4 00 |
| 2/27/2006 | Copy | $9 00 |
| 2/27/2006 | Copy | $8 00 |
| 3/01/2006 | Copy | $92 00 |
| 3/02/2006 | Copy | $90 00 |
| 3/02/2006 | Copy | $1 00 |
| 3/06/2006 | Copy | $10 00 |

| | | |
|---|---|---|
| 3/08/2006 | Copy | $1 00 |
| 3/08/2006 | Copy | $7 00 |
| 3/09/2006 | Copy | $1 00 |
| 3/17/2006 | Phone charge | $0 33 |
| 3/28/2006 | Copy | $0 75 |
| 3/29/2006 | Copy | $0.50 |
| 3/29/2006 | Copy | $0 25 |
| 4/07/2006 | Copy | $0 25 |
| 4/07/2006 | Copy | $2 00 |
| 4/07/2006 | Fax | $6.00 |
| 4/07/2006 | Postage | $0 78 |
| 4/18/2006 | Phone charge( Sprint) | $0 10 |
| 5/01/2006 | Copy | $0 50 |
| 5/10/2006 | Copy | $7 50 |
| 5/18/2006 | Phone charge | $0 57 |
| 6/09/2006 | Fax | $0 75 |
| 6/14/2006 | Fax | $0 25 |
| 6/27/2006 | Postage | $0 87 |
| 6/27/2006 | Fax | $3 00 |
| 6/30/2006 | Fax | $0 75 |
| 7/10/2006 | Fax | $0 75 |
| 7/26/2006 | Fax | $0 50 |
| 8/18/2006 | Phone charge | $0 32 |

Edelman, Combs, Latturner & Goodwin LLC
Page No :    32

| 8/29/2006 | Copy | $0 25 |
|---|---|---|
| 9/06/2006 | Copy | $1 50 |
| 10/18/2006 | Phone charge | $1 57 |
| 11/03/2006 | Postage | $0 63 |
| 11/03/2006 | Copy | $0 50 |
| 11/06/2006 | Copy | $1 50 |

Total Expenses    $1,603 39

Total New Charges    $30,019.89

### Staff Summary

| Name | Position | Hours | Rate | Fees |
|---|---|---|---|---|
| Blake Mensing | Paralegal | 3.10 | $90.00 | $279 00 |
| Blake Mensing | Paralegal | 0.40 | $100.00 | $40 00 |
| Cathleen M. Combs | Partner | 0 70 | $480.00 | $336 00 |
| Daniel A. Edelman | Partner | 3 00 | $480.00 | $1,440 00 |
| Emily Louise Zimbrick | Paralegal | 0.10 | $90.00 | $9 00 |
| Francis R. Greene | Associate | 3.60 | $280.00 | $1,008 00 |
| Francis R. Greene | Associate | 72.80 | $250.00 | $18,200 00 |
| Heather A. Kolbus | Associate | 0 30 | $225.00 | $67 50 |
| Jared Andersen | Paralegal Supervisor | 2 50 | $100.00 | $250 00 |
| Jared Andersen | Paralegal Supervisor | 0 60 | $105.00 | $63 00 |
| Jeff Becker | Paralegal Supervisor | 1 80 | $105 00 | $189 00 |
| James O. Latturner | Partner | 0 70 | $480.00 | $336 00 |
| Michelle Borman | Paralegal | 0 10 | $90.00 | $9 00 |
| Jonathan Miner | Paralegal | 0 70 | $100.00 | $70 00 |
| Mihaela Muresan | Paralegal | 0 30 | $90.00 | $27 00 |
| Michelle R. Teggelaar | Partner | 1 30 | $310.00 | $403 00 |
| Sara Hunter | Paralegal | 0 50 | $100.00 | $50 00 |
| Scott Whittemore | Paralegal | 40 20 | $100.00 | $4,020 00 |
| Theresa Kinkley | Paralegal | 8 00 | $100.00 | $800 00 |
| Andrea Burrell | Paralegal | 0 10 | $100.00 | $10 00 |
| Katarina Pamucar | Paralegal | 8 10 | $100.00 | $810 00 |

Tot Hrs: 148 90

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | | |
|---|---|---|
| TIMOTHY M. BROWDER, | ) | |
| | ) | |
| Plaintiff, | ) | 1:05cv10464 |
| | ) | |
| v. | ) | Judge Saris |
| | ) | |
| NATIONAL FINANCIAL SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## FINAL APPROVAL ORDER

This cause comes before the Court for final approval of the class-action Settlement Agreement and for dismissal of this action pursuant to the terms of the class-action Settlement Agreement, due notice having been given. On December 7, 2006, the Court held a fairness hearing to which Class members, including any with objections, were invited. The Court being fully advised in the premises, HEREBY FINDS THAT:

1.    Plaintiff Timothy M. Browder ("Plaintiff") and Defendant National Financial Systems, Inc., ("NFS") have entered into a class-action Settlement Agreement ("Agreement") dated June 21, 2006.

2.    On March 17, 2006 pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court certified a class in this action consisting of (i) all natural persons with Massachusetts addresses, (ii) to whom National Financial Systems, Inc. sent a letter stating "Any indebtedness fo $600.00 or more may be reported to the IRS as taxable income pursuant to Internal Revenue Code 6050(p) and related federal law," (iii) on or after March 10, 2004, (iv) and prior to March 30, 2005 (the "Class").

1

3.     On August 8, 2006, this Court preliminarily approved the Class Settlement

Agreement ("Agreement") reached between Plaintiff and Defendant. The Court approved a form

of notice for mailing to the class. The Court is informed that actual notice was sent by first-class

mail to 3,460  class members (counting couples and other joint persons as a single class

member). A total of 456 envelopes were returned by the United States Postal Service marked not

deliverable with no forwarding addresses available, and 21 envelopes were returned and re-

mailed to a forwarding address. Two class members requested exclusion and no objections were

filed or received. A total of 188 class members timely returned the proof of claim form and are

therefore entitled to a share in the monetary benefits of the settlement. As of November 30,

2006, 1 late claim form was returned by class members.

4.     The Complaint in this action alleges that Defendant violated the Fair Debt

Collection Practices Act, 15 U.S.C. § 1692k of the ("FDCPA"). Under 15 U.S.C. § 1692k, the

maximum statutory damages recoverable by an individual plaintiff is $1,000 and the maximum

statutory damages recoverable by a class is the lesser of 1% of the defendant's net worth or

$500,000.

5.     On December 7, 2006, the Court held a fairness hearing to which class

members, including any with objections, were invited.

6.     The Court finds that the provisions for notice to the Class satisfy the

requirements of Fed. R. Civ. P. 23 and due process.

7.     The Court finds that the settlement is fair and reasonable, and hereby

approves the Agreement submitted by the parties, including the release and the payment by

Defendant of $6,000 to those Class members who did not opt out and who returned claim forms

2

provided, however, that each Class member will receive their pro rata share of the settlement fund or $1,000, whichever is less to settle the claims of the Class; $1,000 to settle Plaintiff's claims, and $13,000 as attorney's fees and costs.

(a)    Pursuant to the Agreement, the $6,000 class settlement fund shall be distributed by First Class, Inc., the Class Administrator, pro rata or $1,000, whichever is less, to the class members who did not opt-out and who returned claim forms. The Class Administrator shall, within 35 days of the final approval of the settlement, mail checks to Class members meeting these criteria. Any portion of the settlement fund that is unclaimed by the Class, because the settlement check was returned as undeliverable or without a forwarding address, or because the check remains uncashed 90 days after distribution, or because any funds otherwise remain after the distribution was calculated, shall be paid to the Massachusetts Bar Foundation as a *cy pres* remedy on behalf of the Class. Pursuant to the Agreement, within 150 days after effective date, First Class, Inc. shall provide the Court and Class counsel with a report regarding the unclaimed/undistributed portion of the settlement fund.

(b)    Pursuant to the Agreement Defendant shall pay $13,000 to Class counsel for attorney's fees and costs. Class counsel have submitted to the Court a detailed affidavit of their fees and expenses, including their current hourly rates and the number of hours expended in this matter. Accordingly, payment by Defendant of $13,000 to Class counsel for attorney's fees and costs is hereby approved.

8.    The Court finds the settlement negotiations were conducted at arms-length and in good faith among all counsel and that the terms of the Agreement are fair, reasonable and adequate to plaintiff and all members of the Class. In addition to the other facts

3

stated herein, the Court finds the Agreement to be particularly fair, adequate and reasonable in

light of the risk of establishing liability and the expense of further litigation.

**THE COURT, BEING FULLY ADVISED IN THE PREMISES, HEREBY ORDERS:**

        1.     The Agreement is hereby approved.

        2.     Plaintiff and every member of the Class who has not timely excluded

himself or herself, and each of them, shall be forever barred and enjoined from instituting or

further prosecuting any action, in any forum whatsoever, including but not limited to, any state,

federal, or foreign court, against Defendant, as well as its present and former affiliates,

subsidiaries, insurers, clients with respect to the debt, officers, directors, agents, employees,

members, shareholders, general partners, limited partners, beneficiaries, representatives, heirs,

attorneys, successors and assigns in their individual as well as representative capacity

(collectively, the "Released Parties") any causes of action, suits, claims or demands whatsoever,

in law or in equity, known or unknown at this time, which Plaintiff and the Class now have or

ever had against the Released Parties, or any of them, under any legal theory, whether or not

alleged, arising out of the allegations in or subject matter of the action styled *Browder v.*

*National Financial Systems, Inc.,* 05v10464 (E.D. Mass.). Moreover, NFS shall be barred

identically from pursuing any claim for relief under 15 U.S.C. § 1692k(a)(3) of the FDCPA

against plaintiff or against any member of the Class arising out of the claims asserted against

defendant in this action. However, the underlying debts, which Defendant was attempting to

collect, via the letter at issue, are in no way affected by the Agreement, and nothing herein shall

prevent defendant from continuing to attempt to collect the debts allegedly owed by plaintiff or

any of the other Class members. Likewise, Class members do not release any claims they may

4

have against Defendant which relate to Defendant's processing of payments made to Defendant in connection with those debts, the application of those payments to Class members' accounts, or the proper reporting of those debts to credit reporting agencies.

3.    Within one hundred fifty (150) days after the Effective Date, First Class Inc. shall provide the Court and Class counsel with a report regarding the unclaimed/undistributed portion of the settlement fund and shall distribute any remaining funds to the Massachusetts Bar Foundation, as a cy pres remedy.

4.    The *cy pres* remedy is approved and payment shall be distributed to Massachusetts Bar Foundation.

5.    The following individuals are excluded from this action and the settlement: Robin D. Sund and Katherine Batts.

6.    The Court dismisses the claims of Plaintiff and the class against Defendant and the released parties with prejudice and without costs (other than what has been provided for in the Agreement).

7.    The Court retains jurisdiction over the interpretation, enforcement and implementation of the Agreement and of this Order.

8.    This Order resolves all claims against all parties in this action.


DATE: _____          ENTER: _____
                                         The Honorable Patti B. Saris
                                         United States District Court Judge